UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————— )
DANIEL E. CARPENTER,                            )
                          Plaintiff,            )
                                                )          CIVIL ACTION
v.                                              )          NO. 05-11012-MEL
                                                )
U.S. DEPARTMENT OF JUSTICE,                     )
and U.S. ATTORNEY FOR THE                       )
DISTRICT OF MASSACHUSETTS,                      )
                          Defendants.           )
———————————————————— )

## **GOVERNMENT'S OPPOSITION TO MOTION TO TRANSFER**

The government respectfully submits this brief opposition to plaintiff's motion to transfer this FOIA case to the Western Division of this Court and states:

1.     This case was recently transferred from the District of Connecticut.  See April 28, 2005 Order Transferring Venue (Thompson, J.),  Docket #10 (attached hereto as Exhibit A).

2.     In that Order, Judge Thompson expressly directed the Clerk to notify this District that this FOIA case "is related to a criminal matter pending there, i.e., United States v. Carpenter, Crim. No. 04-10029-GAO.  Id.

3.     Indeed, plaintiff's FOIA request is a thinly-veiled attempt to circumvent proper discovery in that criminal matter.

4.    The government objects to the transfer of venue because, as indicated in its Memorandum in Support of its Motion to Transfer Venue to the District of Massachusetts, the Boston seat of this District is where the criminal case against the plaintiff properly lies and where this matter should also be resolved.  See Docket #7 and its Attachment 1 (attached hereto as Exhibit B).

5.    There is no nexus in these matters to any other Division of this District Court.  The allegations and documents relevant to the criminal case are situated in eastern Massachusetts.  See Government's May 31, 2005 Opposition to Daniel E. Carpenter's Emergency Petition for Writ of Mandamus in United States v. Carpenter, Court of Appeals No. 05-1749 (attached hereto as Exhibit C); see also Government's Opposition to Motion for Transfer to Springfield Division, Crim. No. 04-10029-GAO, Docket #74 (attached hereto as Exhibit D).

6.    The undersigned counsel, who is handling this case for the government, works in the Boston U.S. Attorney's Office and would be inconvenienced by a transfer of this matter to Springfield.

7.      It is the government's view that this case should be transferred to the docket

of the Honorable George A. O'Toole, the judge handling the criminal

matter which apparently gave rise to plaintiff's FOIA request.[1]  Such a

transfer will avoid wasteful duplication of judicial effort, <u>see</u> L.R. 40.1(I),

and will reduce the likelihood of inconsistent rulings on any common

issues.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

/s/Eugenia M. Carris
Eugenia M. Carris
Assistant United States Attorney
U.S. Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
Dated: June 1, 2005                    (617) 748-3282

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing was sent by first class mail on
June 1, 2005, to plaintiff's counsel of record, Richard S. Order, Esq., Axinn, Veltrop &
Harkrider LLP, 90 State House Square, Hartford, CT 06103, and Jack E. Robinson, Esq.,
187 Atlantic Street, Stamford, CT 06902.

/s/Eugenia M. Carris
Eugenia M. Carris

---

[1] The government will send a courtesy copy of this pleading to Judge O'Toole.

# EXHIBIT A

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
DANIEL E. CARPENTER,                  :
                                      :
              Plaintiff,              :
                                      :
v.                                    :     3:05CV172(AWT)
                                      :
UNITED STATES DEPARTMENT OF           :
JUSTICE and THE UNITED STATES         :
ATTORNEY FOR THE DISTRICT OF          :
MASSACHUSETTS,                        :
                                      :
              Defendants.             :
```

ORDER TRANSFERRING VENUE

The defendants have moved pursuant to 28 U.S.C. § 1404(a) for transfer of venue of this case brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the District of Massachusetts.  For the reasons set forth below, the defendants' motion is being granted.

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C.A. § 1404(a) (West 1993 & Supp. 2004).  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).  A plaintiff's choice of forum is "presumptively entitled to

substantial deference." Gross v. British Broadcasting Corp., 386
F.3d 224, 230 (2d Cir. 2004) (citation omitted); see also Gulf
Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947) ("unless the
balance is strongly in favor of the defendant, the plaintiff's
choice of forum should rarely be disturbed"). However, "the
district court must weigh in the balance the convenience of the
witnesses and those public-interest factors of systemic integrity
and fairness that, in addition to private concerns, come under
the heading of 'the interest of justice.'" Stewart Org., Inc. 487
U.S. at 30.

The plaintiff resides in Simsbury, Connecticut and also has
his principal place of business in that town.  The plaintiff's
FOIA request is directed to the United States Attorney for the
District of Massachusetts, and it seeks any documents provided by
a certain third party to Assistant United States Attorney Michael
J. Pineault in the District of Massachusetts.  The documents
sought are directly connected to a pending criminal matter in the
District of Massachusetts in which the plaintiff is the sole
defendant and AUSA Pineault is the lead prosecutor.

The FOIA venue provision provides in relevant part:

> On complaint, the district court of the United
> States  in  the  district  in  which  the
> complainant  resides,  or  has  his  principal
> place  of  business,  or  in  which  the  agency
> records  are  located,  or  in  the  District  of
> Columbia,  has  jurisdiction  to  enjoin  the
> agency from withholding agency records and to

> order the production of any agency records
> improperly withheld from the complainant.

5 U.S.C. § 552(a)(4)(B).  Thus, venue is proper either in this
district or in the District of Massachusetts.

In terms of the convenience of the parties, the parties here
are already involved in a related litigation, i.e. the criminal
case, in the District of Massachusetts.  Thus, while it would
clearly be more convenient for the plaintiff to pursue this
action in the District of Connecticut because that is where he is
located, a transfer to the District of Massachusetts does not
result in his being sent off to some district with which he has
no connection.[1]  On the other hand, the United States Attorney
for the District of Massachusetts and Assistant United States
Attorney Pineault appear to have no connection with the District
of Connecticut other than the fact that they have been sued here.

In addition, it is very significant that here the plaintiff
is, in substance, seeking discovery in his criminal case in the
District of Massachusetts.  The Federal Rules of Criminal
Procedure, and frequently the local rules of each district court,
provide for what discovery is available to the defendant in a
criminal proceeding.  Because of the interplay between this case
and the pending criminal case, the court that is in the best

---

[1]The court notes that presumably the plaintiff has been
aware throughout the pendency of his criminal case of his rights
under Rule 21 of the Federal Rules of Criminal Procedure.

3

position to evaluate the plaintiff's FOIA request is the district court in the District of Massachusetts. Thus, this court concludes that a transfer to the District of Massachusetts is appropriate in light of public interest factors of systemic integrity and fairness, which in this case should be given substantially greater weight than the plaintiff's choice of forum.

The plaintiff argues that he has sought to access documents through the FOIA process in the hope of minimizing any inappropriate impact the information contained therein may have on the criminal case against him and that having the same judge who is presiding over the criminal case also preside over this action creates the risk of injecting those documents into the criminal case, thereby compounding the harm the documents have allegedly already caused the plaintiff in the context of the criminal investigation. The court finds this argument unpersuasive because the only reasonable conclusion is that if the plaintiff can find a way of using any such documents to his advantage, he will inject them into the criminal case himself.

Accordingly, Defendants' Motion for Transfer of Venue (Doc. No. 6) is hereby GRANTED, and this case is hereby transferred to the District of Massachusetts.

In transmitting the case file in this matter, the Clerk shall notify the District of Massachusetts that this case is

4

related to a criminal matter pending there, i.e. United States v.

Carpenter, Crim. No. 04-10029-GAO.

It is so ordered.

Dated this 28th of April 2005, in Hartford, Connecticut.


                                    _____/s/_____
                                       Alvin W. Thompson
                                    United States District Judge

5

# EXHIBIT B

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIEL E. CARPENTER, | : | |
| PLAINTIFF, | : | CIVIL ACTION NO. 3:05CV172(AWT) |
| v. | : | |
| | : | |
| UNITED STATES DEPARTMENT OF JUSTICE, and THE UNITED STATES ATTORNEY FOR THE DISTRICT OF MASSACHUSETTS, | : | |
| | : | MARCH 11, 2005 |
| DEFENDANTS. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR TRANSFER OF VENUE

The defendants–the United States Department of Justice and the United States Attorney for the District of Massachusetts–have moved pursuant to 28 U.S.C. § 1404(a) for transfer of venue of this Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, case to the District of Massachusetts. The defendants contend that the forum for resolution of this matter more conveniently lies in the District of Massachusetts, and that in the interest of justice the Court should transfer venue to that district.

For all of the reasons that follow, the defendants' motion should be granted.

### Background

Plaintiff filed suit on January 28, 2005, alleging improper withholding of agency records that had been requested under the FOIA in an August 18, 2004 letter from plaintiff's counsel to Michael J. Sullivan, the United States Attorney for the District of Massachusetts. *See* Complaint, *passim* & Exhibit A thereto. The records request comprised the following:

    1.      All documents, correspondence, records, or files provided by or obtained from John J. Koresko, V, Esq. that refer to, relate to, or reflect (a) Daniel E. Carpenter; (b) Benistar Property Exchange Trust Co. Inc.; (c) Benistar, Ltd.; (d) Benistar 419 Plan Services, Inc.; (e) Benistar 419 Plan; (f) Benistar Admin Services, Inc.; (g) the investigation leading to United States v. Carpenter, Criminal No. 04-10029-GAO; or (h) the case itself after the indictment issued.

    2.      All documents that refer to, relate to, or reflect any conversation with John J. Koresko, V, Esq.

*See* Complaint, ¶ 7 & Exhibit A. Plaintiff alleges that "[i]n unrelated civil litigation, John Koresko, V, Esq. has filed papers indicating communications he has had with Michael Pineault, Esq. an Assistant U.S. Attorney" in the District of Massachusetts "concerning United States v. Carpenter ..., the criminal case that Attorney Pineault investigated, in which he is serving as lead counsel in the prosecution of Mr. Carpenter, and which is scheduled to commence trial on April 4, 2005." *Id.* ¶ 17; *see also* Attachment 1 hereto, Affidavit of AUSA Michael J. Pineault ("Pineault Affidavit"), ¶¶ 3, 4 (stating that affiant is lead prosecutor in the Carpenter criminal case involving plaintiff, that the case is pending in the Boston seat of court in the District of Massachusetts, and that trial is scheduled to begin on April 4, 2005); Defendants' Answer and Affirmative Defenses ("Answer"), ¶ 17 (admitting plaintiff's allegations that AUSA Pineault is lead counsel in the prosecution of plaintiff in a District of Massachusetts criminal case scheduled to begin trial on April 4, 2005).

According to the plaintiff, he has a principal place of business in Simsbury, Connecticut. *See* Complaint, ¶ 3. Plaintiff alleges that the defendants did not promptly and properly process the FOIA request, and that they have failed to produce the requested records. *See* Complaint, *passim*. He asks the Court to enjoin the defendants from withholding the requested records and to produce the records promptly. *Id.,* ¶¶ 1, 27-28, 30.

**Argument**

The FOIA venue provision provides in relevant part:

> On complaint, the district court of the United States in the district
> in which the complainant resides, or has his principal place of
> business, or in which the agency records are located, or in the
> District of Columbia, has jurisdiction to enjoin the agency from
> withholding agency records and to order the production of any
> agency records improperly withheld from the complainant.

5 U.S.C. § 552(a)(4)(B). While principal place of business is one of the four independent bases for

venue under the FOIA, it is the only connection this matter has to the District of Connecticut,[1] and,

in the interest of justice, the case should be transferred pursuant to 28 U.S.C. § 1404(a) to the District

of Massachusetts for resolution.

Section 1404(a) provides in full that "[f]or the convenience of the parties and witnesses, in

the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought." 28 U.S.C. § 1404(a). When ruling on a § 1404(a) motion, a court

exercises its discretion "to adjudicate motions for transfer according to an 'individualized, case-by-

case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22,

29 (1988)(quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)). While a plaintiff's choice of

forum is typically accorded significant weight, *see Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508

(1947), "the district court must weigh in the balance the convenience of the witnesses and those

public-interest factors of systemic integrity and fairness that, in addition to private concerns, come

under the heading of 'the interest of justice.'" *Stewart Org., Inc.,* 487 U.S. at 30.

---

[1] The defendants have pleaded that they have insufficient knowledge as to the truth of
plaintiff's allegation that he has a principal place of business in Simsbury, Connecticut. *See*
Answer, ¶ 3. The defendants therefore leave plaintiff to his proof of this allegation.

3

_____Even a cursory review of the complaint, and the August 18, 2004 FOIA request itself, makes clear that the District of Massachusetts is the most convenient forum for this matter. Plaintiff's FOIA request was directed to the United States Attorney for the District of Massachusetts, seeking documents purportedly provided by or obtained from a third party–one "John J. Koresko, V, Esq."–to AUSA Michael J. Pineault in the District of Massachusetts. From the face of the FOIA request, the documents sought are directly connected to a pending criminal matter in the District of Massachusetts in which plaintiff is the sole criminal defendant and AUSA Pineault is the lead prosecutor. *See* Complaint, Exhibit A; *see also* Attachment 1, Pineault Affidavit, ¶ 3 (plaintiff is "the defendant" in pending United States v. Carpenter criminal matter, which is being "handl[ed]" by the affiant).

Moreover, the criminal matter has been pending in Boston since February of 2004, and has been assigned to U.S. District Judge George A. O'Toole, who has presided over the pre-trial proceedings in the case. *See* Attachment1, Pineault Affidavit, ¶ 4. Transfer of the case to the District of Massachusetts will not result in delay or prejudice to the plaintiff, especially if his FOIA suit is assigned to Judge O'Toole, who presumably could address all issues of fact and law that might be common to the criminal proceeding and plaintiff's FOIA suit. The presence of both cases on the docket of the same judicial officer would also reduce the likelihood of inconsistent rulings on any common issues that might exist.

Other than plaintiff's allegation that he has a principal place of business in Connecticut, there does not appear to be "any other connection or nexus to Connecticut underlying plaintiff's FOIA request...., *see id.* ¶ 6, and, in the interest of justice, this case should be transferred to the District of Massachusetts.

4

**Conclusion**

For all of the foregoing reasons, the defendants respectfully move the Court to grant their

motion and to transfer this case, pursuant to 28 U.S.C. § 1404(a), to the District of Massachusetts.


Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


WILLIAM A. COLLIER
ASSISTANT U.S. ATTORNEY
450 MAIN STREET, RM. 328
HARTFORD, CT 06103
(860) 947-1101
FEDERAL BAR NO. ct00986
william.collier@usdoj.gov


**CERTIFICATION OF SERVICE**

I certify that a copy of the foregoing was mailed by United States first-class mail on this

11th day of March, 2005, to:

    Richard S. Order, Esq.
    Erin M. Boggs, Esq.
    Axinn, Veltrop & Harkrider LLP
    90 State House Square, 11th Floor
    Hartford, CT 06103


_____
WILLIAM A. COLLIER
ASSISTANT U.S. ATTORNEY

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

DANIEL E. CARPENTER,                          :

      PLAINTIFF,                            :        CIVIL ACTION NO. 3:05CV172(AWT)

      v.                                    :

                                            :

UNITED STATES DEPARTMENT OF
JUSTICE, and THE UNITED STATES                :                                        :
ATTORNEY FOR THE DISTRICT OF
MASSACHUSETTS,                                :

      DEFENDANTS.                           :

### AFFIDAVIT OF AUSA MICHAEL J. PINEAULT

    I, Michael J. Pineault, state under oath as follows:

    1.    I am over the age of eighteen (18), and I know and understand the obligations of an

oath.

    2.    I am an Assistant United States Attorney ("AUSA") in the Boston, Massachusetts,

Office of the United States Attorney, District of Massachusetts.

    3.    I am the AUSA handling the prosecution of United States v. Carpenter, Criminal No.

04-10029-GAO, a case pending in the Boston seat of court for the District of Massachusetts, in

which Daniel E. Carpenter, the plaintiff in the above-captioned Freedom of Information Act

("FOIA") suit, is the defendant.

    4.    The indictment in the Carpenter criminal matter was returned on or about February

4, 2004. The case is assigned to U.S. District Judge George A. O'Toole, who has presided over the

**Attachment 1**

pre-trial proceedings that have taken place in the case. The case is presently scheduled to begin trial
on April 4, 2005.

5.     I am aware that plaintiff's counsel filed a FOIA request in August, 2004 directed to
Michael J. Sullivan, the United States Attorney for the District of Massachusetts. I have been
provided and have reviewed a copy of that request, which is attached to plaintiff's Complaint.

6.     Other than plaintiff's allegation that his principal place of business is in Connecticut,
I have not been informed nor am I aware of any other connection or nexus to Connecticut underlying
plaintiff's FOIA request that would support venue of the FOIA suit in the District of Connecticut.

Executed at Boston, Massachusetts, on this _10th_ day of March, 2005.

MICHAEL J. PINEAULT

Subscribed and sworn to
before me on this _10th_
day of March, 2005

NOTARY PUBLIC
My Commission Expires 27 March 2009

2

# EXHIBIT C

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

### Appeal Nos. 05-1749

### IN RE: DANIEL E. CARPENTER,

### Petitioner.

### Government's Opposition to Defendant Daniel E. Carpenter's
### Emergency Petition for a Writ of Mandamus
### to the United States District Court
### for the District of Massachusetts

MICHAEL J. SULLIVAN
United States Attorney

By:    MICHAEL J. PINEAULT
Assistant U.S. Attorney
One Courthouse Way
Suite 9200
Boston, MA 02210

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . 3

   A.   Procedural History . . . . . . . . . . . . . . . . . 3

   B.   The Relevant Facts . . . . . . . . . . . . . . . . . 5

   C.   Massachusetts-Related Allegations . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

   I.   The Availability of Mandamus Review . . . . . . . . 9

   II.  Mandamus Standards . . . . . . . . . . . . . . . . 11

  III. Carpenter Has Failed To Demonstrate A Patent
      Abuse of Discretion . . . . . . . . . . . . . . . . 14

     A.   Venue   Lies   Squarely   in   Eastern
         Massachusetts  . . . . . . . . . . . . . . . . 15

     B.   Carpenter Has Not Shown That the District
         Court Plainly Abused its Discretion in
         Declining to Find that Venue Was More
         Appropriate Elsewhere . . . . . . . . . . . . 17

        1.   Location of defendant . . . . . . . . . 18

        2.   Location of witnesses . . . . . . . . . 18

        3.   Location of events . . . . . . . . . . 20

        4.   Location of documents . . . . . . . . . 21

        5.   Disruption of the defendant's
           business . . . . . . . . . . . . . . . 21

        6.   Expense to the parties . . . . . . . . 22

        7.   Location of counsel . . . . . . . . . . 22

        8.   Relative Accessibility of Place
           of Trial . . . . . . . . . . . . . . . 23

            9.    Docket condition of each district . . . .  23

            10.   Other Elements  . . . . . . . . . . . .  24

       C.   It  Was  Within  the  District  Court's
            Discretion To Render Its Decision in the
            Form of a Briefly Worded Order . . . . . . .  26

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . .  28

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . .  29

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . .  30

ADDENDUM

## **TABLE OF AUTHORITIES**

### **Cases**

<u>All States Freight, Inc. v. Modarelli</u>,
   196 F.2d 1010
   (3rd Cir. 1952) . . . . . . . . . . . . . . . . . . . . . 12

<u>Blakely v. Washington</u>,
   124 S. Ct. 2531 (2004) . . . . . . . . . . . . . . . . . . . 3

<u>Chronicle Publishing Co. v. Hantzis</u>,
   902 F.2d 1028
   (1st Cir. 1990) . . . . . . . . . . . . . . . . . . . 11, 13

<u>Ford Motor Co. v. Ryan</u>,
   182 F.2d 329
   (2d Cir. 1950) . . . . . . . . . . . . . . . . . . . . . 11

<u>In re GAF Corp.</u>,
   416 F.2d 1252
   (1st Cir. 1969) . . . . . . . . . . . . . . . . . . . . . 11

<u>Holdsworth v. United States</u>,
   179 F.2d 933
   (1st Cir. 1950) . . . . . . . . . . . . . . . . . . . . 9, 15

<u>Hustler Magazine, Inc. v. United States District Court</u>,
   790 F.2d 69
   (10th Cir. 1986) . . . . . . . . . . . . . . . . . . . 11-12

<u>In re Josephson</u>,
   218 F.2d 174
   (1st Cir. 1954) . . . . . . . . . . . . . . . . . . . . 9-12

<u>La Buy v. Howes Leather Co.</u>,
   352 U.S. 249 (1957) . . . . . . . . . . . . . . . . . . 10-11

<u>In re National Presto Industries, Inc.</u>,
   347 F.3d 662
   (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . 11

<u>Olinick v. Dempster Brothers, Inc.</u>,
   365 F.2d 439
   (2d Cir. 1966) . . . . . . . . . . . . . . . . . . . 12, 14

Platt v. Minnesota Mining & Manufacturing Co.,
      376 U.S. 240 (1964) . . . . . . . . . . . 13-14, 17-18, 20

Roofing & Sheet Metal Services, Inc. v. La Quinta
Motor Inns, Inc.,
      689 F.2d 982
      (11th Cir. 1982) . . . . . . . . . . . . . . . . . . . 10, 12

Salinger v. United States,
      265 U.S. 224 (1924) . . . . . . . . . . . . . . . . . . . 15

In re Union Leader Corp.,
      292 F.2d 381
      (1st Cir. 1961) . . . . . . . . . . . . . . . . . . . . 10

In re United States,
      273 F.3d 380
      (3rd Cir. 2001) . . . . . . . . . . . . . . . . . . . 9, 13

United States v. Aronoff,
      463 F. Supp. 454
      (S.D.N.Y. 1978) . . . . . . . . . . . . . . . . . 18-19, 21

United States v. Bloom,
      78 F.R.D. 591
      (E.D. Pa. 1977) . . . . . . . . . . . . . . . . . . 20, 24

United States v. Bruckman,
      874 F.2d 57
      (1st Cir. 1989) . . . . . . . . . . . . . . . . . . . . 27

United States v. Green,
      2005 WL 1119791
      (1st Cir. 2005) . . . . . . . . . . . . . . . . . . . . 11

United States v. Guastella,
      90 F. Supp. 2d 335
      (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . 19, 21, 26

United States v. Kelly,
      467 F.2d 262
      (7th Cir. 1972) . . . . . . . . . . . . . . . . . . . . 19

United States v. Kim,
      246 F.3d 186
      (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . 17

iv

United States v. McGregor,
      503 F.2d 1167
      (8th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . 26

United States v. Mitchell,
      723 F.2d 1040
      (1st Cir. 1983) . . . . . . . . . . . . . . . . . . . . . 28

United States v. Pace,
      314 F.3d 344
      (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . 15

United States v. Perry,
      152 F.3d 900
      (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . 26

United States v. Peterson,
      357 F. Supp. 2d 748
      (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . 26

United States v. Rush,
      738 F.2d 497
      (1st Cir. 1984) . . . . . . . . . . . . . . . . . . . . . 28

United States v. Spy Factory, Inc.,
      951 F. Supp. 450
      (S.D.N.Y. 1997) . . . . . . . . . . . . . . . 19, 22, 24, 25

United States v. Weinstein,
      452 F.2d 704
      (2d Cir. 1971) . . . . . . . . . . . . . . . . . . . . . 11

## Significant Rules and Statutes

18 U.S.C. §§ 1341 and 1343 . . . . . . . . . . . . . . . . . 3, 15

28 U.S.C. § 1651(a)  . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. Crim. P. 21(b) . . . . . . . . . . . . . . . . . 13, 28

v

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

### No. 05-1749

### IN RE: DANIEL E. CARPENTER,
### Petitioner

### GOVERNMENT'S OPPOSITION TO DEFENDANT DANIEL E. CARPENTER'S
### EMERGENCY PETITION FOR A WRIT OF MANDAMUS
### TO THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

The United States opposes the defendant Daniel E. Carpenter's

("Carpenter's") emergency petition for a writ of mandamus. As a

threshold matter, a jurisdictional issue exists regarding the

availability of mandamus to review the *denial* of a motion for

transfer. Even if jurisdiction exists, mandamus relief requires a

showing that the district court (O'Toole, J.) committed a patent,

clear-cut abuse of discretion – i.e., a showing not just that the

district court erred, or even that it abused its discretion, but

rather that it committed such a patent abuse that the extraordinary

remedy of mandamus is warranted.  Carpenter has made no showing

that the district court committed such a patent abuse of

discretion, either substantively or procedurally, in denying the

defendant's motion to transfer this case.

Substantively, the deficiencies in Carpenter's venue arguments

are plain on the face of the pleadings.  The mail and wire fraud

counts contained in the superseding indictment allege criminal

conduct that occurred substantially in eastern Massachusetts.  With

one exception, the victims resided and did business in eastern
Massachusetts. The false representations that were made to them,
with Carpenter's knowledge, were made in eastern Massachusetts.
The mailings and wires through which the victims transmitted their
fraudulently induced funds to the defendant were sent from eastern
Massachusetts. Venue accordingly lies, most appropriately, in
eastern Massachusetts.

Procedurally, Carpenter cannot defensibly challenge the
brevity of the district court's ruling. Carpenter was delinquent
in requesting a change of venue; he filed his motion 15 months
after indictment. He sought an expedited decision, characterizing
his pleading as an "emergency motion" and filing it on the heels of
two other "emergency" pleadings that he submitted within the same
one week period.[1] Carpenter also filed the motion only after the
district court had denied the most recent of his three requests to
continue the trial date (currently set for July 11).[2] Given the
belated nature of the transfer request, the expedited consideration
that Carpenter sought, the timing of the motion, and the plain
deficiencies in the defendant's venue arguments, the district court
did not commit a clear-cut abuse of discretion in issuing a briefly

[1] See Docket 58 (Emergency Motion for Production of Discovery,
filed 4/29/05), Docket 59 (Emergency Motion for Further Trial
Continuance, filed 4/29/05), and Docket 66 (Emergency Motion to
Transfer Venue, filed 5/5/05).

[2] See Docket 63 (Order denying defendant's motion for further
continuance, dated 5/4/05).

worded Order rather than a more lengthy memorandum of decision.

For these reasons, and for the additional reasons set forth below, Carpenter has failed to demonstrate the type of "extraordinary" circumstances that might warrant mandamus relief. This case presents, simply, a district court's routine exercise of its authority to decline to transfer a case.    The government accordingly requests that the Court deny Carpenter's emergency petition.

**STATEMENT OF THE CASE**

A.    Procedural History

On February 4, 2004, a grand jury sitting in Boston returned an indictment charging Carpenter with 14 counts of wire fraud (18 U.S.C. § 1343) and five counts of mail fraud (18 U.S.C. § 1341). The indictment's allegations revolve around false representations made to induce clients to retain and escrow funds with Carpenter's company, Benistar Property Exchange Trust Company, Inc. ("BPE").

On September 22, 2004, the grand jury returned a superseding indictment (Docket 34) whose primary purpose, in the aftermath of Blakely v. Washington, 124 S. Ct. 2531 (2004), was to allege the factual enhancements relevant to computing the defendant's sentence under the Sentencing Guidelines.    The charges contained in the superseding indictment were the same as those set forth in the initial indictment.

On November 9, 2004, after hearing, the district court denied

3

Carpenter's motion to dismiss the indictment (on substantive grounds), as well as his motion to dismiss the indictment for lack of venue. (Docket 44). Trial was scheduled for April 4, 2005.[3]

On March 24, 2005, Carpenter's then-lead counsel orally moved to continue the April 4, 2005 trial date based on a court conflict that had arisen in another of his cases. On March 28, the district court granted the defendant's oral motion and continued the trial to May 9, 2005.

On March 31, 2005, another of Carpenter's attorneys filed an emergency motion (Docket 53) stating that Carpenter had just terminated the services of his lead defense counsel, that he was in the process of retaining successor counsel, and that he urgently required a further continuance in the trial date to permit time for successor counsel to be retained and to prepare for trial. At an emergency hearing held that same day, the court granted a further continuance of the trial, from May 9 to July 11, 2005.

On April 29, 2005, Carpenter filed another emergency motion (Docket 59) seeking a third continuance in the trial until November, 2005. The government opposed the motion, as it had the first two, due primarily to the advanced age and ill health of several of its witnesses. (Docket 62). By Order dated May 4, 2005

---

[3] There was a brief two-week period in mid-November 2004 when trial was tentatively scheduled for December 6, 2004, pending Carpenter's decision whether to agree to excludable time under the Speedy Trial Act.

4

(Docket 63), the district court denied Carpenter's motion.

On May 5, 2005, following the denial of his third continuance motion, Carpenter filed an emergency motion to transfer venue to the District of Connecticut. (Docket 66). Subsequently, on May 12, 2005, Carpenter filed an alternative emergency motion to transfer the case to the Western Division of the District of Massachusetts. (Docket 71).

On May 17, 2005, the district court denied Carpenter's two transfer motions, ruling that "the defendant has not shown that the balance of considerations bearing on either convenience or the interests of justice tips in favor of a transfer." (Petition at Exhibit 1).

B.   The Relevant Facts

As alleged in the indictment, Carpenter served as Chairman and co-directed the operations of Benistar Property Exchange Trust Company, Inc. ("BPE'), a Newton, Massachusetts company engaged in the business of performing property exchanges pursuant to Section 1031 of the Internal Revenue Code ("IRC"). (Indictment ¶¶ 1, 3, 14).[4]   BPE was a wholly owned subsidiary of Benistar, Ltd. ("Benistar"), a Delaware corporation headquartered in Simsbury, Connecticut. (Indictment ¶ 2). At all relevant times, Carpenter served as Chairman of Benistar.   He maintained an office at

---

[4] Citations are to the Superseding Indictment, in the form "Indictment ¶ __ ."

5

Benistar's headquarters in Simsbury. (Indictment ¶ 3).

Pursuant to IRC Section 1031, owners who sell investment property can defer the capital gains tax that would otherwise be owed upon the sale by rolling the proceeds over into the purchase of replacement property within 180 days. (Indictment ¶ 4). Because tax deferral is lost if the owner takes possession of the proceeds during the interim period between the sale of the initial property and the acquisition of the replacement property, a number of companies offer their services as short-term third party intermediaries, agreeing to hold the proceeds in escrow until the owner is ready to close on the replacement property transaction. BPE held itself out as such an intermediary. (Indictment ¶ 5).

BPE gave written and oral assurances to its clients that BPE would hold their money in escrow and return the principal to them, in full, for use in closing on the purchase of replacement property. (Indictment ¶¶ 17-24). The assurances included representations that BPE was trustworthy, that the money would be held in escrow in the designated account into which the clients were instructed to transmit the funds, that BPE would not transfer the money out of the account without the client's written authorization, and that BPE would return the funds in full, either to be disbursed for the client's use in closing on the purchase of replacement property or to be returned to the client if no replacement property transaction was to occur. Id.

6

As Chairman of BPE, Carpenter was aware of the representations that were being made to induce clients to retain and escrow their funds with his company. (Indictment ¶¶ 28, 100). The indictment charges him with having reviewed and assisted in drafting the exchange documents and promotional materials that contained those representations. (Indictment ¶¶ 14, 18-21, 100).

Contrary to the representations that were made to clients, however, Carpenter did not hold the escrow funds safe in the accounts into which they had been wired. Instead, without his clients' knowledge or authorization, Carpenter took the funds and used them to engage in aggressive, high stakes trading in the options market, transferring millions of dollars of BPE client money into trading accounts that Carpenter opened, first, at Merrill Lynch and, later, at PaineWebber. (Indictment ¶¶ 26-28, 30-33).

Beginning no later than April, 2000, Carpenter began sustaining heavy trading losses – losses that he covered by systematically transferring additional BPE client funds into his trading accounts. (Indictment ¶¶ 34, 39). By the close of December, 2000, Carpenter had lost in excess of $9 million in BPE client funds. (Indictment ¶¶ 37, 53).

## C.   Massachusetts-Related Allegations

The superseding indictment lists seven BPE clients who collectively lost just over $9 million in funds that Carpenter

7

misappropriated, gambled and lost through the above-described options trading. (Indictment ¶ 58). Six of the clients resided and did business in eastern Massachusetts. The seventh resided and did business in southeastern New Hampshire. Id.

All of the clients were induced to retain BPE and to entrust their money to the company based on representations and assurances that they received concerning the manner in which their funds would be held. (Indictment ¶¶ 59 - 95). These representations and assurances were contained, inter alia, in marketing presentations, exchange documentation, and other communications that the clients received from BPE, and that Carpenter had reviewed and approved. (Indictment ¶¶ 14, 18-21, 28, 100). The foregoing materials were disseminated to the predominantly Massachusetts victims by employees working out of BPE's Newton, Massachusetts office. (Indictment ¶¶ 11 - 12).

The real estate transactions that generated the funds that the clients entrusted to BPE took place, with one exception, in Massachusetts. Likewise, the mailings and wires pursuant to which the clients transmitted their money to Carpenter were sent from Massachusetts. (Indictment ¶¶ 60, 65-66, 73, 79-80, 85, 96-97, 103, 105). The funds were wired to banks in Pittsburgh and, later, New York City, and credited to accounts that Carpenter opened at Merrill Lynch and, subsequently, PaineWebber. (Indictment ¶ 8).

Although Carpenter conducted his trading activities out of an

8

office in Simsbury, Connecticut, neither BPE, nor any of the victims, nor any of the accounts was located in Connecticut.

## **ARGUMENT**

### I.    The Availability of Mandamus Review

A threshold issue exists regarding this Court's jurisdiction to review the district court's denial of Carpenter's motion for transfer.

As a general matter, an order transferring a case (or declining to do so) is not a final order and hence cannot serve as the proper basis for an interlocutory appeal. E.g., Holdsworth v. United States, 179 F.2d 933, 934-35 (1st Cir. 1950).

Several circuits, including this Court, have concluded that jurisdiction does exist under the All Writs Act, 28 U.S.C. § 1651(a), to grant mandamus relief from an order transferring a case to a district outside the circuit. In re Josephson, 218 F.2d 174, 181 (1st Cir. 1954); see also In re United States, 273 F.3d 380, 384 (3rd Cir. 2001) ("writ of mandamus may issue to compel a district court to vacate an order transferring a case to another district").

Some courts, however, have drawn a distinction between orders *granting* motions to transfer and orders *denying* motions to transfer.    In Josephson, this Court explained that mandamus authority existed with respect to the former category of decision - i.e., the *allowance* of motions to transfer - because the All

9

Writs Act granted the Court the power to take action "in aid of" its jurisdiction. Since the invalid transfer of a case outside the circuit would deprive the Court of its future ability to exercise appellate jurisdiction over the case, mandamus power exists to review such transfers. In re Josephson, 218 F.2d at 181.

The Court drew an express contrast, however, with orders *denying* a transfer. It stated:

> If the district court had held on to the case, i.e., had denied the motion for transfer, such action would have preserved, not frustrated, any potential appellate jurisdiction which we might have had; and we are at a loss to understand how we could properly review on mandamus an order denying a transfer, on the pretense that such a review would be in 'aid' of our appellate jurisdiction.

Id.; see also Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 988 (11th Cir. 1982) ("because mandamus properly issues in aid of appellate jurisdiction, cases involving transfers between circuits are distinguishable from those in which motions to transfer are denied or transfer is ordered within a single circuit . . .").

The continued viability of Josephson's reasoning regarding mandamus review of transfer denials was called into question by the Supreme Court's subsequent decision in La Buy v. Howes Leather Co., 352 U.S. 249 (1957), which adopted a broader interpretation of the power granted by the All Writs Act. See In re Union Leader Corp., 292 F.2d 381, 382 (1st Cir. 1961) (noting that as a result of La Buy, it seems clear that Josephson adopted too narrow a

10

construction of "in aid of" jurisdiction); see also <u>United States</u> <u>v. Weinstein</u>, 452 F.2d 704, 710-11 (2d Cir. 1971) (discussing <u>Josephson</u> and <u>La Buy</u>). However, the government has not been able to find any later decision by this Court squarely addressing and deciding the issue.[5]

## II. Mandamus Standards

Assuming, <u>arguendo</u>, that the Court possesses the authority, in the exercise of its supervisory mandamus powers, to review a district court's denial of a transfer decision, relief may be granted only in the rarest, most exceptional circumstances.

In <u>United States v. Green</u>, 2005 WL 1119791 (1st Cir. May 12, 2005), this Court recited its oft-repeated standard that mandamus petitioners bear the heavy burden of demonstrating a clear entitlement to relief and irreparable harm. <u>Id.</u> at *4; <u>see also</u> <u>Chronicle Publishing Co. v. Hantzis</u>, 902 F.2d 1028, 1031 (1st Cir. 1990) (same).

Given the discretion that is vested in district courts to

---

[5] In <u>In re GAF Corp.</u>, 416 F.2d 1252 (1st Cir. 1969), this Court issued a three-paragraph *per curiam* decision denying a mandamus petition that sought review of a transfer denial. The Court did not, however, address the jurisdictional issue raised in <u>Josephson</u>. In addition to <u>GAF</u>, there are several decisions from other circuits, both before and after <u>La Buy</u>, that have entertained mandamus petitions seeking review of transfer denials. Most, however, do not discuss the potential jurisdictional distinction between mandamus review of transfer grants versus transfer denials. E.g., <u>In re National Presto Industries, Inc.</u>, 347 F.3d 662 (7th Cir. 2003); <u>Hustler Magazine, Inc. v. United States District Court</u>, 790 F.2d 69, 70-71 (10th Cir. 1986); <u>Ford Motor Co. v. Ryan</u>, 182 F.2d 329 (2d Cir. 1950).

balance the factual considerations necessary to decide venue motions, the mandamus burden is even steeper in challenging transfer decisions. Hustler Magazine, Inc. v. United States District Court, 790 F.2d at 71 (observing, in concurrence, that "all the circuits have been 'extremely reluctant' to review [transfer] orders by mandamus"). Courts have decried the delay and expense associated with what they perceive to be the increasing frequency of ancillary litigation (and appeals) over the threshold question of where the litigation should take place. E.g., All States Freight, Inc. v. Modarelli, 196 F.2d 1010, 1011-12 (3rd Cir. 1952); Olinick v. Dempster Bros., Inc., 365 F.2d 439, 445-48 (2d Cir. 1966) (Friendly, J., concurring).

For these reasons, and because mandamus relief is only awarded in the most "exceptional" circumstances, courts have held that petitioners challenging transfer decisions must show that the district court committed a patent, clear-cut abuse of discretion. E.g., Olinick v. Dempster Bros., Inc., 365 F.2d at 445 (requiring "clear-cut" abuse of discretion); Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc., 689 F.2d at 988 ("clear abuse of discretion"); Hustler Magazine, Inc. v. United States District Court, 790 F.2d at 71 (same, and citing cases); see also In re Josephson, 218 F.2d at 183 ("[W]e serve notice that in the future, except in really extraordinary situations . . ., we shall stop such mandamus proceedings at the very threshold . . . .").

12

To make such a showing, it is not enough to establish that the district court erred, or even that it abused its discretion. Rather, because "mandamus is generally thought an inappropriate prism through which to inspect exercises of judicial discretion," the defendant must establish that the district court abused its discretion "to such an extreme and injurious degree that its actions comprise a judicial usurpation of power." See Chronicle Publishing Co. v. Hantzis, 902 F.2d 1028, 1031 (1st Cir. 1990)(non-venue case)(internal citations and quotations omitted).

In determining whether the district court committed such a patent abuse of discretion, this Court must look to the legal standards governing motions to transfer venue under Fed. R. Crim. P. 21(b).  In Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240 (1964), the Supreme Court listed ten factors that courts should consider and balance in deciding whether to transfer a case.  They are: (1) location of the defendant; (2) location of witnesses; (3) location of events at issue; (4) location of documents and records; (5) disruption of the defendant's business; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of the place of trial; (9) docket condition of each district involved; and (10) any other special elements that might affect transfer. Id. at 243-44.[6]

---

[6] Courts uniformly have held that the moving party bears the burden of demonstrating that application of the ten Platt factors supports the transfer of venue to the requested district.  E.g., In

13

In considering the foregoing factors, the Court's purpose is not to decide how it would come out were it conducting a Platt analysis itself, in the first instance. Rather, the focus of its inquiry must be on whether the district court's transfer decision was so patently deficient, substantively or procedurally, as to constitute a clear-cut abuse of discretion sufficient to warrant mandamus relief. E.g., Olinick v. Dempster Bros., Inc., 365 F.2d at 445 (2d Cir. 1966) ("We do not need to decide whether we would have decided the motion for a transfer differently . . . . Mandamus does not lie to review mere error . . . but only to redress a clearcut abuse of discretion.")

## III. Carpenter Has Failed To Demonstrate A Patent Abuse of Discretion

Carpenter has failed to meet his burden of establishing a patent abuse of discretion, for at least three principal reasons: (a) venue over the indictment's allegations lies squarely in eastern Massachusetts; (b) Carpenter cannot meet his threshold burden, under Platt, of showing that venue is more appropriate elsewhere, much less his ultimate burden, under mandamus principles, of demonstrating that the district court clearly abused its discretion in concluding otherwise; and (c) it was within the district court's discretion to issue its ruling in the form of a briefly worded Order rather than a more lengthy memorandum of

re United States, 273 F.3d at 388 (citing cases).

14

decision.

## A.   Venue Lies Squarely in Eastern Massachusetts

Venue under the mail and wire fraud statutes lies in any district where the defendant causes a mailing or wire communication to be sent or received. E.g., Salinger v. United States, 265 U.S. 224, 234 (1924) ("wrongful use of the mail may be dealt with in the district of the delivery as well as in that of the deposit"); Holdsworth v. United States, 179 F.2d 933, 936 (1st Cir. 1950)(same).[7] That is because it is the use of the mails (or the wires) in furtherance of a scheme to defraud that triggers federal criminal jurisdiction under 18 U.S.C. §§ 1341 and 1343. E.g., United States v. Pace, 314 F.3d at 349 ("gist and crux" of wire fraud offense is the misuse of wires).

All but one of the 19 counts charged in the indictment relate to mailings or wires transmitted from (or to) eastern Massachusetts. Seventeen of the counts specifically involve the mail or wire transmission of funds from Massachusetts accounts – transmissions that the indictment alleges were induced by false representations made to the Massachusetts victims who sent the money. (Indictment ¶¶ 103, 105).

---

[7] Some courts have stated more broadly that venue also can exist in a district through which a mailing or wire passes or from which it was orchestrated. United States v. Pace, 314 F.3d 344, 349 (9th Cir. 2002) ("venue is established in those locations where the wire transmission at issue originated, passed through, or was received, or from which it was 'orchestrated'.").

15

In addition, the indictment contains numerous allegations sufficient to establish that Carpenter knew or reasonably could have foreseen the existence of Massachusetts mailings and wires in connection with the fraudulent scheme with which he has been charged. He served as Chairman of BPE and co-directed its operations, which were based in Newton, Massachusetts. (Indictment ¶¶ 1, 3, 14). He reviewed and edited the promotional materials that BPE disseminated, primarily to Massachusetts-based clients, which described § 1031 property exchanges and contained assurances that any funds transmitted to BPE would be held safely and securely in escrow; that the funds would not be transferred without the client's written authorization; and that the funds would be disbursed only for the purpose of closing on the purchase of replacement property or to be returned directly to the client. (Indictment ¶¶ 14, 18-21). He reviewed and assisted in drafting the exchange documents utilized by BPE, which were disseminated to Massachusetts clients and whose provisions tracked the language of the promotional literature with respect to the handling of the client funds. (Indictment ¶¶ 14, 22-23). He opened the accounts at Merrill Lynch and PaineWebber into which the exchange documents specifically directed all BPE clients, most of whom were based in Massachusetts, to wire (or mail) their § 1031 proceeds for deposit. (Indictment ¶¶ 7-8, 15). He subsequently tracked and controlled the disposition of the funds maintained in those accounts.

16

(Indictment ¶¶ 15). And he is the one who is charged with having gambled and lost – in unauthorized, speculative options trading – approximately $9 million in BPE client money, almost all of which was transmitted to Carpenter-controlled accounts via Massachusetts wires and mailings. (Indictment ¶¶ 25-29, 99-101).

In short, the indictment charges Carpenter with: (a) co-directing the operations of a Massachusetts-based company; (b) that disseminated promotional literature and exchange documents to Massachusetts-based clients; (c) directing them to wire and/or mail funds from Massachusetts real estate transactions; (d) to out-of-state accounts that Carpenter opened and controlled; (e) based on false representations and assurances that their funds would be held in escrow and returned to them in full, with interest; (f) when in fact Carpenter was taking those funds, without the clients' knowledge or authorization, and losing millions of dollars in high risk, high stakes options trading.

On these facts, venue squarely lies in eastern Massachusetts. United States v. Kim, 246 F.3d 186, 191-93 (2d Cir. 2001) (venue proper in S.D.N.Y. based on defendant's knowledge that fraudulent invoices would be paid, via wire, from Manhattan banks).

B. Carpenter Has Not Shown That the District Court Plainly Abused its Discretion in Declining to Find that Venue Was More Appropriate Elsewhere

Carpenter has failed to meet his burden of establishing, pursuant to mandamus principles and the ten-factor test of Platt

17

, that the district court clearly abused its discretion in not finding that venue was more appropriate elsewhere. The government briefly discusses each of the Platt factors below:

### 1. Location of defendant

A defendant has no constitutional right to be tried in his home district. Platt, 376 U.S. at 245. Carpenter's district of residence is only relevant insofar as it affects the balance of conveniences and the interests of justice. United States v. Aronoff, 463 F. Supp. 454, 457 (S.D.N.Y. 1978). The government nonetheless acknowledges that Carpenter lives and works in Connecticut. This factor accordingly favored transfer.

### 2. Location of witnesses

The government has served its list of anticipated trial witnesses on defense counsel and filed it with the district court. (Docket 67, Exhibit A). A copy is reproduced at Tab 1 to this memorandum.

As the list indicates, the majority of the government's anticipated fact witnesses are based in eastern Massachusetts, including: (a) all but one of the victims, most of whom had direct dealings with BPE; (b) representatives (primarily lawyers) who also had dealings with BPE on behalf of their clients; and (c) the former employees of BPE's Newton office. By contrast, only three fact witnesses are based in Connecticut. Most of the remaining witnesses are New York-based brokers at Merrill Lynch and

18

PaineWebber, who will testify concerning their knowledge of Carpenter's options trading.

Carpenter asserts, in response, that he intends to call over a dozen additional witnesses from Connecticut. (Petition at A-3 n.2). Notably, however, he has proffered no names, no addresses, and little information concerning the anticipated subject matter of their testimony, other than a suggestion that many will be character witnesses. (Petition at A-37 n.4).

Carpenter's failure to submit more detailed information concerning his alleged witnesses constituted a threshold failure on his part to meet the burden of proof that he, as the moving party, bore. E.g., United States v. Guastella, 90 F.Supp.2d 335, 338-39 (S.D.N.Y. 2000) (defendant failed to identify the witnesses whom he would call); United States v. Spy Factory, Inc., 951 F. Supp. 450, 456 (S.D.N.Y. 1997)(same); United States v. Kelly, 467 F.2d 262, 264 (7th Cir. 1972) (same). Carpenter could not satisfy his burden through general averments claiming an intention to call unidentified individuals to testify on unspecified topics of unknown relevance.

Moreover, if it is true that most (if not all) of Carpenter's dozen or more Connecticut witnesses are character witnesses, as distinct from witnesses with firsthand knowledge regarding the events at issue, that weighed against his venue arguments as well. United States v. Aronoff, 463 F. Supp. at 458 (expressing doubt

19

that the defendant would be permitted to call 15 character witnesses); United States v. Bloom, 78 F.R.D. 591, 609 (E.D. Pa. 1977) (noting the court's discretion to limit the number of character witnesses).

Finally, consideration must be given to the health and ability of the witnesses to journey to each of the districts at issue. In that regard, Carpenter did not claim an inability on the part of any of his witnesses to travel to Boston to testify. By contrast, the government noted that several of the government's Massachusetts-based witnesses are aged and/or infirm, including three who are over the age of 70, a fourth who is younger but seriously ill and residing in a nursing home, and a fifth who is a paraplegic. Two of these five are presently incapable of getting themselves to the courthouse in Boston: door-to-door transportation needs to be provided for them. Relocating the trial to Hartford or to Springfield would impose a significantly greater burden on them. (Petition at A-27).

For the foregoing reasons, Platt's "location of witnesses" factor militated against transfer.

### 3.  Location of events

As alleged in the indictment, the misrepresentations, mailings, and wires took place substantially in Massachusetts, where BPE was based and where all but one of the victims reside. Carpenter responds that he, physically, maintained his office in

20

Connecticut, where he conducted his options trading. Given, however, that the gravamen of the charges involves mail and wire fraud, and the majority of those events (i.e., the mailings and the wires) occurred in Massachusetts, this factor weighed against transfer. E.g., United States v. Aronoff, 463 F. Supp. at 459 (defendant who used the mails or wires to acquire the money of victims based in the district of prosecution "should hardly be heard to complain" that he committed no physical acts in that district).

## 4.  Location of documents

All of the relevant documents are based in Massachusetts. That is a result of the fact that almost all of the victims reside in Massachusetts, BPE was based in Newton, any corporate records that existed in Connecticut were long ago produced to the government in Massachusetts, and all criminal discovery has taken place in Boston.  This factor therefore also weighed against transfer.

## 5.  Disruption of the defendant's business

Carpenter asserts that a trial in Boston will cause material disruption to his Connecticut businesses. (Petition at 24). Other than his generalized assertion, however, Carpenter submitted no specific facts in support of his claim. He therefore failed to meet his burden on this factor as well. United States v. Guastella, 90 F.Supp.2d at 340 ("Defendants have not supplied the

21

Court with any facts indicating how their businesses, jobs, or careers would be disrupted by trial in this district."); see also United States v. Spy Factory, Inc., 951 F. Supp. at 458-59 (claimed disruption to defendants' business weighed only "slightly" in their favor because of the ability of modern communications to minimize the impact of the defendants' absence).

### 6. Expense to the parties

Carpenter claims that transferring the case to Springfield will result in minimal additional expense to the government whereas conducting the trial in Boston will supposedly cost him at least $250,000 in additional lodging and travel costs. (Petition at 25, A-13).

Carpenter's first assertion is plainly incorrect. The government will have to pay the costs of transporting and lodging the Boston-based prosecutors and case agent and all of the eastern Massachusetts witnesses. Carpenter's second assertion appears grossly inflated, since it translates to a purported lodging, travel, and meal expense of over $15,000/day, based on the parties' projection of a three-week trial. Carpenter submitted no facts to support his claimed expense figures, thus failing, again, to meet his burden.

### 7. Location of counsel

The prosecutors are based in Boston. The victims' attorneys are based in Boston. The attorneys for the Merrill Lynch and

22

PaineWebber brokers are based in Boston. Carpenter's present defense team includes three Boston lawyers. In addition, his prior "lead" counsel, the one whom Carpenter terminated on the eve of trial, also was based in Boston. Carpenter has not yet designated new "lead" counsel. Even if he were to retain a Connecticut or Springfield attorney, given the number of Boston attorneys already involved in the case, this factor weighed against transfer.

## 8. Relative Accessibility of Place of Trial

Both Boston and Springfield are accessible by multiple forms of transportation. It is likely moderately easier for the New York-based witnesses to fly to Boston than to Springfield. On balance, therefore, this was predominantly a neutral factor, with a slight edge to Boston, given the number of fact witnesses who reside in the metropolitan Boston area.

## 9. Docket condition of each district

Carpenter cites general caseload statistics for the District of Massachusetts. (Petition at 27). Such statistics might be of interest if the defendant had filed his transfer motion at the outset of the case, on the theory that the condition of the respective dockets might shed some light on which district (or division) would be likely to resolve the case more quickly. General statistics are irrelevant, however, where, as here, the defendant filed his transfer motion after discovery was complete, after dispositive motions had been filed and decided, and after the

23

district court had set a firm trial date. Notably, no trial date exists in either district to which the defendant has requested transfer. Accordingly, if an absence of delay is the objective, this factor weighed strongly against transfer.[8]   E.g., United States v. Bloom, 78 F.R.D. at 610 (fact that trial was scheduled to begin in district of indictment in less than 45 days "weighs very heavily against any transfer"); United States v. Spy Factory, Inc., 951 F. Supp. at 463 (inevitable delay that transfer would cause in trial date was one of the factors "weighing most strongly" against transfer).

## 10. Other Elements

A significant "other" element is Carpenter's inexplicable delay in requesting a transfer of venue. The grand jury returned its indictment in February, 2004. Carpenter, and his multiple attorneys, vigorously litigated this case in Boston over the ensuing fifteen months without once claiming (until now) that the location created an undue burden.    Discovery is complete. Dispositive motions have been filed and decided.    The district court has invested time and resources in the case. Trial is set to commence on July 11.

In light of these facts, Carpenter's unexplained delay in

---

[8] Carpenter's suggestion that the Boston-based district judge relocate himself and his staff to Springfield for the duration of the trial (Petition at 28) ignores the expense and impracticalities of doing so.

24

filing his motion constituted a factor that weighed heavily against transfer, particularly given the virtual certainty that transferring the case would send it to a new judge and postpone the trial to an uncertain future date. United States v. Spy Factory, Inc., 951 F. Supp. at 461-63 (defendants' "inexcusable" delay in filing their transfer motion over one year after the commencement of prosecution, after discovery was nearly complete, and after a trial date was set, weighed "qualitatively and heavily" against transfer).

The government further notes that Carpenter did not file his transfer motion until after the district court had denied the defendant's third motion to continue the trial. The court previously had granted the defendant two successive continuances, which served to postpone the trial from April 4 to July 11, 2005. Carpenter, however, sought a lengthier continuance (until November). It was only after the district court denied that request that Carpenter filed his motion to transfer.[9]

The questionable timing of Carpenter's motion, coupled with the inevitable delay that it would cause in the trial date if it were granted, weighed heavily against transfer.

For all of the foregoing reasons, it did not constitute a patent abuse of discretion - or, indeed, an error of any kind - for

---

[9] Additional procedural details are set forth at pp. 3 - 5, infra.

25

the district court to conclude that Carpenter "has not shown that the balance of considerations bearing on either convenience or the interests of justice tips in favor of a transfer." (Petition at Exhibit 1). E.g., United States v. Perry, 152 F.3d 900, 904 (8th Cir. 1998) (defendant charged with mail/wire fraud not entitled to transfer of venue to his district of residence when most of witnesses, victims, and documents were located in district of indictment); United States v. McGregor, 503 F.2d 1167 (8th Cir. 1974) (affirming denial of transfer in mail fraud case where victim, witnesses and most of documents were located in district of indictment); see also United States v. Guastella, 90 F.Supp.2d at 342 (denying transfer); United States v. Peterson, 357 F.Supp.2d 748, 750-51 (S.D.N.Y. 2005) (same).

## C. It Was Within the District Court's Discretion To Render Its Decision in the Form of a Briefly Worded Order

Finally, it was within the district court's discretion to issue its transfer decision in the form of a briefly worded Order, as opposed to a lengthier memorandum of decision.

Several factors potentially explain the brevity of the Order. First, Carpenter was delinquent in filing the motion. Second, he sought an expedited decision, characterizing his pleading as an "emergency motion." Third, he filed it amongst a flurry of other "emergency" pleadings that he submitted at or about the same time. Fourth, Carpenter's venue arguments were plainly deficient on their

26

face.   Fifth, the timing of the motion - coming only after the district court had denied the latest of Carpenter's multiple requests to continue the trial date - suggested that Carpenter's true purpose was to achieve - through a transfer motion - the delay in the trial that the Boston-based district judge had just declined to grant.

Given the belated nature of the filing, the expedited consideration that Carpenter sought, the questionable timing of the motion, and the plain deficiencies in the defendant's venue arguments, the district court did not abuse its discretion in issuing a brief order rather than a more lengthy memorandum of decision.   The Order, as succinct as it was, nonetheless conveyed that the district court had balanced the competing considerations and concluded that Carpenter "has not shown that the balance of considerations bearing on either convenience or the interests of justice tips in favor of a transfer." (Petition at Exhibit 1).

Admittedly, a longer memorandum would have provided this Court with additional detail concerning the district court's reasoning. However, this Court has, in other contexts, stopped short of imposing specific length requirements, particularly where the pleadings, the procedural context, and the district court's ruling - however brief - provide an adequate basis to review the district court's decision. E.g., United States v. Bruckman, 874 F.2d 57, 62 (1st Cir. 1989) ("[w]here the motion sets forth the basic facts,

27

and they are obvious, it is not necessary for the court to articulate them.") (internal citations omitted); <u>United States v. Rush</u>, 738 F.2d 497, 507 (1st Cir. 1984) (same); <u>United States v. Mitchell</u>, 723 F.2d 1040, 1044 (1st Cir. 1983) (motion and court ruling read as complementary documents).[10]

That is true here. While, from the government's current vantage point, it might have been preferable for the district court to have provided greater detail, the fact that it didn't does not, in the factual and procedural context of this case, constitute the type of exceptional circumstance that warrants mandamus relief.

## CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that the defendant's emergency petition for a writ of mandamus be denied.

Respectfully submitted:

MICHAEL J. SULLIVAN
United States Attorney

By: _____

MICHAEL J. PINEAULT
Assistant United States Attorney
One Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3261

Dated: May 31, 2005

---

[10] The government has cited to decisions under the Speedy Trial Act because of the parallel that exists between the "interests of justice" language of that Act and the similar language that is set forth in Fed. R. Crim. P. 21(b).

## CERTIFICATE OF SERVICE

I, Dina Michael Chaitowitz, Assistant U.S. Attorney, certify that on May 31, 2005, that I caused two copies of this opposition to be served

By first-class mail upon the district court judge, and

By first class mail and electronic mail upon the following:

Jack E. Robinson, Esq.
2176 Atlantic Street
Stamford, CT 06902
robinsonesq@aol.com

Of counsel:
Arthur R.  Miller, Esq.
1563 Massachusetts Avenue
Cambridge, MA 02138
arthur@law.harvard.edu
swagner@law.harvard.edu


This 31st day of May, 2005.


                                    _____
                                    DINA MICHAEL CHAITOWITZ
                                    Chief of Appeals
                                    Assistant U.S. Attorney

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

————————

CERTIFICATE OF COMPLIANCE WITH
TYPEFACE AND LENGTH LIMITATIONS

————————

Appeals No.  05-1749

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

————————

CERTIFICATE OF COMPLIANCE WITH
TYPEFACE AND LENGTH LIMITATIONS

————————

## In Re: Daniel E.  Carpenter

TO BE INCLUDED IMMEDIATELY BEFORE THE
CERTIFICATE OF SERVICE FOR ALL BRIEFS FILED IN THIS COURT

1.    This brief has been prepared using (SELECT AND COMPLETE ONLY ONE):

   [  ]    14 point, proportionally spaced, serif typeface (such as CG Times or Times New Roman).  Specify software name and version, typeface name, and point size below (for example, Wordperfect 8, CG Times, 14 point):

   [✓]    10 ½ characters per inch, monospaced typeface (such as Courier or Courier New).  Specify software name and version, typeface name, and characters per inch below (for example, Wordperfect 8, Courier, 10 ½ CPI):

   Wordperfect 9, Courier New, 10 ½ CPI.

2.    EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; addendum; and the certificate of service, the brief contains (SELECT AND COMPLETE ONLY ONE):

   [  ]    _____ pages (give specific number of pages; may not exceed 30 pages for opening or answering brief or 15 pages for reply brief); OR

   [✓]    _____ words (give specific number of words; may not exceed 14,000 words for opening or answering brief or 7,000 for reply brief); OR

   [  ]    ____ lines of monospaced type (give specific number of lines; may not exceed 1,300 lines for opening or answering brief or 650 for reply brief; may be used ONLY for briefs prepared in monospaced type such as Courier or Courier New).

   I understand that a material misrepresentation can result in the Court striking the brief or imposing sanctions. If the Court so directs, I will provide a copy of the words or line print-out.

   _____
   Assistant U.S. Attorney DINA MICHAEL CHAITOWITZ

30

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

)
UNITED STATES OF AMERICA )
)
v. )    CRIMINAL NO. 04-10029-GAO
)
DANIEL E. CARPENTER, )
)
Defendant. )
)

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S ALTERNATIVE "EMERGENCY" MOTION TO TRANSFER VENUE TO THE WESTERN DIVISION OF MASSACHUSETTS

The United States opposes the defendant's alternative "emergency" transfer motion, which seeks to send this case to Springfield if the Court is disinclined to transfer it to Hartford. The government objects to Springfield for the same reasons that it objects to Hartford.

1.     This case has no connection to the Western Division of Massachusetts. None of the victims or witnesses reside there. None of the relevant events occurred there. No mailings or wires originated from or were sent there. None of the evidence is located there.

2.     Springfield is no more convenient than Hartford for the majority of the percipient fact witnesses. It is approximately 90 miles from Boston to Springfield, as compared to 100 miles from Boston to Hartford. As indicated on the Government's Witness List, the majority of the prosecution's witnesses are from Massachusetts and reside in the eastern part of the state. See Exhibit A. It will be equivalently burdensome for them to have to journey to Springfield as to Hartford. Most of the government's remaining witnesses will be flying to Boston from New York City.

3.     Springfield is likewise no more convenient or less expensive for the government.

The prosecutors assigned to this case work out of Boston, as does the case agent. They would need to relocate to Springfield for the duration of the trial, just as they would need to relocate to Hartford if the case were transferred there.

    4.    Judicial economy and efficiency also favor Boston over Springfield, just as they favor Boston over Hartford, and for the same reasons. This case was indicted in Boston, litigated in Boston, and has a firm July 11 trial date in Boston, before a judge who is familiar with the case. None of that is true for Springfield or for Hartford. The defendant's suggestion that the Court could rectify those problems by relocating itself and its staff to Springfield is wholly impracticable.

    5.    In short, the crimes charged in the indictment occurred substantially in eastern Massachusetts; the majority of the fact witnesses reside here; the case was investigated and indicted here; the prosecution team is based here; the evidence is here; the Court is here; and we have a July 11 trial date here. To ignore all of that, disregard the trial date, and relocate virtually everything either to Springfield or Hartford at this late date – based on the defendant's belated assertions of inconvenience – makes no sense.

## CONCLUSION

For all of the foregoing reasons, the government requests that the Court deny the defendant's "alternative" motion to transfer venue to the Western Division of Massachusetts.

2

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:

_/s/ **Michael J. Pineault**_ ___ ___
Michael J. Pineault
Assistant U.S. Attorney
U.S. Courthouse, Suite 9200
1 Courthouse Way
Dated: May 13, 2005                    Boston, MA 02210

3