UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————

)

DANIEL E. CARPENTER,                      )

                                          )

       Plaintiff,                         )

                                          )

       v.                                 )      No. 05-cv-11012-MEL

                                          )

UNITED STATES DEPARTMENT OF               )

JUSTICE and THE UNITED STATES             )

ATTORNEY FOR THE DISTRICT OF              )

MASSACHUSETTS,                            )

                                          )

       Defendants.                        )

———————————————————)

**PLAINTIFF'S MOTION FOR LEAVE TO FILE ADDITIONAL DOCUMENTS
AND REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO TRANSFER**

      Now comes plaintiff Daniel E. Carpenter ("Carpenter") and respectfully moves,

pursuant to L.R. 7.1(B)(3), for leave to file the following additional documents and reply

brief in further support of his motion to transfer this case to the Western Division in

Springfield:

      1.      Carpenter's Emergency Petition for a Writ of Mandamus filed in <u>In re</u>

             <u>Carpenter</u>, No. 05-1749 (1st Cir. May 20, 2005) (attached hereto as

             **Exhibit 1**); and

      2.      Carpenter's Reply filed in the same matter on May 31, 2005 (attached

             hereto as **Exhibit 2**).

      In further support hereof, Carpenter respectfully states that the Court will benefit

from having *all* of the briefs filed in the First Circuit on the issue of transfer – and not

just the government's brief that was attached to its opposition to Carpenter's motion to

transfer.

Carpenter further states that his briefs filed in the First Circuit make a clear and compelling showing why this case should be transferred to the Western Division in Springfield.[1]  In fact, after reviewing the relevant factors for transfer enunciated in Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240 (1964) (the "Platt Factors"), at least eight of the ten Platt Factors favor transfer to Springfield, two Factors are neutral and none favor keeping the case in Boston.  See Ex. 1, 2.

## LOCAL RULE 7.1(A)(2) STATEMENT

Plaintiff's counsel has conferred with AUSA Eugenia M. Carris in a good faith, but unsuccessful, attempt to resolve or narrow the issue.

## REPLY BRIEF

With respect to the government's argument that AUSA Carris is handling the case from the Boston office (Gov. Br. 2), the case was originally handled by an AUSA in the Hartford office of the U.S. Attorney for the District of Connecticut, where the case was initiated, who filed the government's Answer to the Complaint and motion to transfer to the District of Massachusetts.  AUSA Carris never filed an appearance during the short time that the case was pending in the District of Connecticut.  Consequently, AUSA Carris could not possibly have invested much time in this case, which has not advanced beyond the pleading stage, and can easily hand off responsibility for the government's

---

[1]  The government suggests that this case should be transferred to Judge O'Toole's docket pursuant to L.R. 40.1(I).  Gov. Br. 3.  While the plaintiff does not object to such a transfer as a first step to transferring the case to the Western Division, the better practice would be to have *both* this case and the criminal case pending before Judge O'Toole transferred to the Western Division in order to "further the efficient performance of the business of the court." L.R. 40.1(I).

defense to an AUSA in the Springfield office.  Likewise, any documents sought by

Carpenter's FOIA request can just as easily be shipped from Boston to Springfield.[2]

In any event, the government's complaint about the inconvenience to AUSA

Carris that a transfer to Springfield might cause does not trump and, in fact, is less

burdensome than the substantial inconvenience to be suffered by the plaintiff and his

attorneys, all of whom live and work in Connecticut, if the case is not transferred to

Springfield.


Dated:  June 2, 2005


                                PLAINTIFF,
                                DANIEL E. CARPENTER,
                                By his attorney,



                                **/s/ Jack E. Robinson**
                                Jack E. Robinson, Esq. (BBO # 559683)
                                2187 Atlantic Street
                                Stamford, CT 06902
                                Tel:  (203) 425-4500
                                Fax: (203) 425-4555
                                E-mail:  Robinsonesq@aol.com

---

[2]  In fact, the U.S. Attorney has an office in Room 310 of the Springfield courthouse.  Moreover, the government's own web site states that "[o]ccasionally, AUSAs in the Boston office will handle matters in Springfield."  http://www.usdoj.gov/usao/ma/crim/index.htm.

No. 05-1749

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

_____

### In re: DANIEL E. CARPENTER,

### Petitioner.

_____

**On Emergency Petition for a Writ of Mandamus to the United States
District Court for the District of Massachusetts
(Related to D. Mass. No. 04-cr-10029)**

_____

## EMERGENCY PETITION OF DANIEL E. CARPENTER

_____

**Jack E. Robinson, Esq.**
**(BBO #559683; 1st Cir. #38097)**
**2187 Atlantic Street**
**Stamford, CT 06902**
**(203) 425-4500**
**robinsonesq@aol.com**

*Attorney for Petitioner*

*Of Counsel:*

**Arthur R. Miller, Esq.**
**(BBO #554226; 1st Cir. #8098)**
**1563 Massachusetts Avenue**
**Cambridge, MA 02138**
**(617) 495-4111**

**Dated:  May 20, 2005**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES                                                          2

PRELIMINARY STATEMENT                                                    5

STATEMENT OF RELIEF SOUGHT                                          11

STATEMENT OF THE ISSUE PRESENTED                              12

STATEMENT OF THE FACTS                                                  13

REASONS WHY THE WRIT SHOULD ISSUE                          15

    1.   Appellate Jurisdiction and Suitability of Mandamus     15

    2.   The *Platt* Factors Clearly Favor Transfer                    17

        A.   Legal Standard                                                  17

        B.   *Platt* Factors                                                      18
            (i)     Location of Defendant                             20
            (ii)    Location of Possible Witnesses                22
            (iii)   Location of Events Likely To Be At Issue  23
            (iv)   Location of Documents                             24
            (v)    Disruption of Defendant's Business           24
            (vi)   Expense to the Parties                             25
            (vii)  Location of Counsel                                 25
            (viii) Relative Accessibility of Place of Trial     26
            (ix)   Docket Condition of Each District             27
            (x)    Special Factors                                        28
            (xi)   Weighing the *Platt* Factors                      29

CONCLUSION                                                                       29

CERTIFICATE OF SERVICE                                                   31

EXHIBITS (INCLUDING DISTRICT COURT ORDER & APPENDIX)

# <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                    **<u>Page</u>**

<u>Carpenter v. U.S. Dept. of Justice</u>,
   No. 05-cv-11012-MEL (D. Mass.)                          28

<u>In re Balsimo</u>,
   68 F.3d 185 (7th Cir. 1995)                                 20

<u>In re Hampers</u>,
   1990 U.S. App. LEXIS 23242 (1st Cir. Oct. 5, 1990)         16

<u>In re United States</u>,
   273 F.3d 380 (3d Cir. 2001)                            6, 16-18

<u>In re United States</u>,
   2005 WL 1119791 (1st Cir. May 12, 2005)                  5, 15

<u>Platt v. Minnesota Mining & Mfg. Co.</u>,
   376 U.S. 240 (1964)                                      passim

<u>Solomon v. Cont'l Am. Life Ins. Co.</u>,
   472 F.2d 1043 (3d Cir. 1972)                                15

<u>United States v. Alter</u>,
   81 F.R.D. 524 (S.D.N.Y. 1979)                               23

<u>United States v. Carpenter</u>,
   No. 04-cr-10029 (D. Mass.)                            13, 23, 26

<u>United States v. Cashin</u>,
   281 F.2d 669 (2d Cir. 1960)                                 20

<u>United States v. Clark</u>,
   360 F. Supp. 936 (S.D.N.Y. 1973)                            21

<u>United States v. Coffee</u>,
   113 F. Supp. 2d 751 (E.D. Pa. 2000)                    22-26, 29

**Cases**                                                                                    **Page**

    United States v. Forbes,
        No. 02-cr-00264 (D. Conn.)                                            10, 11

    United States v. Herold,
        309 F. Supp. 997 (E.D. Wis. 1970)                                  24, 25

    United States v. Kennedy,
        1986 U.S. Dist. LEXIS 24988 (E.D. Pa. May 28, 1986)     20, 21

    United States v. Maldonado-Rivera,
        922 F.2d 934 (2d Cir. 1990),
        cert. denied, 501 U.S. 1211 (1991)                                 17

    United States v. Martino,
        2000 U.S. Dist. LEXIS 17945 (S.D.N.Y. Dec. 14, 2000)     20

    United States v. Richardson,
        324 F. Supp. 2d 339 (D. Mass. 2004)                                27

    United States v. Russell,
        582 F. Supp. 660 (S.D.N.Y. 1984)                                   20

    United States v. Stephenson,
        895 F.2d 867 (2d Cir. 1990),
        cert. denied, 501 U.S. 1211 (1991)                                 19

**Statutes**

    5 U.S.C. § 552                                                                     11

    18 U.S.C. § 1341                                                                   7

    18 U.S.C. § 1343                                                                   7

    26 U.S.C. § 1031                                                                   7

    28 U.S.C. § 1651(a)                                                              15

**Rules**                                                    **Page**

    1st Cir. L.R. 30(e)                                    23

    1st Cir. L.R. 32.3(a)(3)                               16

    Fed. R. App. P. 21                                     15

    Fed. R. Crim. P. 21(b)                             5, 14, 17

    LR, D. Mass. 40.1(F)                             5, 14, 17, 18


**Treatises**

    16 Charles A. Wright, Arthur R. Miller and Edward H. Cooper,
        <u>Federal Practice & Procedure, Jurisdiction</u>
        <u>& Related Matters</u> (2d ed. 1996)                    15

**Publications**

    *2004 Federal Judicial Caseload Statistics*,
        Admin. Office of U.S. Courts (2004)                27


**Internet Web Sites**

    www.mapquest.com                                       26

# PRELIMINARY STATEMENT

This emergency petition for a writ of mandamus by defendant-petitioner Daniel E. Carpenter ("Carpenter") should be granted and this Court should issue the writ to the United States District Court for the District of Massachusetts, Eastern Division in Boston (O'Toole, J.), for clearly abusing its discretion and committing a plain error of law.  See In re United States, 2005 WL 1119791 (1st Cir. May 12, 2005) (granting mandamus).

Mandamus is sought on an emergency basis because trial is scheduled for **July 11, 2005** in Boston and appellate review after trial would come too late. Carpenter petitions this Court to reverse and vacate the District Court's *two-sentence* electronic order dated May 17, 2005 denying both of Carpenter's motions to transfer pursuant to Fed. R. Crim. P. 21(b).  Carpenter's first motion was to transfer this criminal case (involving 19 counts of mail and wire fraud) to the District of Connecticut in Hartford (where all of Carpenter's alleged criminal acts occurred, and where Carpenter, his family and most of the trial witnesses – including the government's sole immunized witness – live and work).  Carpenter's second motion, in the alternative, was to transfer the case pursuant to LR, D. Mass. 40.1(F) to the Western Division of the District of Massachusetts in Springfield – so that the trial can be held reasonably close to the Hartford area.

However, since Carpenter is willing to defend himself in Springfield, Carpenter seeks mandamus only with respect to the District Court's denial of his alternative motion to transfer to the Western Division of the District of Massachusetts.  Transfer to Springfield will save Carpenter at least $250,000 in travel, accommodation and related expenses for himself and his defense team, as well as save the other Hartford-based witnesses similar expenses, that otherwise would have to be borne if the trial is held in Boston.

The Supreme Court has required district courts to apply a 10-factor balancing test in resolving criminal transfer motions.  See Platt v. Minnesota Mining & Manufacturing Co., 376 U.S. 240, 243-44 (1964) (the "Platt Factors").  However, the District Court not only failed to analyze, weigh and balance each of the Platt Factors methodically as required, but the District Court's two-sentence electronic order does not even *mention* the Platt Factors or the Platt case itself.

The District Court's failure to consider, weigh and balance the Platt Factors is sufficient reason, in and of itself, for this Court to grant the writ because mandamus is appropriate when a district court has used unlawful procedures to resolve a criminal transfer motion.  See In re United States, 273 F.3d 380, 389 (3d Cir. 2001) (granting mandamus when the district court filed a one-line order which gave no reasons for the transfer).

Transfer to Springfield is clearly appropriate because Carpenter made a compelling showing that at least eight of the ten <u>Platt</u> Factors weigh heavily in favor of transfer *to Hartford* and the remaining two factors are neutral.  In other words, not a *single* factor supported the government's opposition to the transfer motions and, in fact, the government did not even bother to analyze the <u>Platt</u> Factors in its opposition papers – instead arguing primarily that transfer (whether to Hartford or Springfield) would be inconvenient for the Boston-based Assistant United States Attorneys and FBI agent assigned to the case.

The facts relating to the various <u>Platt</u> Factors that favor transfer include, but are not limited to, the following:

- Though the indictment is confusing and unclear with respect to its theory of fraud, it appears that Carpenter is being accused of committing two types of acts which the government alleges violate the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343.  The first type of alleged criminal act is that Carpenter, while acting as an investment adviser for a property exchange company that performed like-kind exchanges for real estate investors seeking to defer capital gains taxes pursuant to 26 U.S.C. § 1031, invested the funds of several exchangors in stock options and lost (but did not steal or embezzle) roughly $9 million of those funds in brokerage accounts at Merrill

Lynch or PaineWebber in New York.  The investments were directed by Carpenter from Connecticut and were performed by the brokerage firms in New York.  Carpenter is not alleged to have conducted any of these activities from Massachusetts.

- Carpenter's only other type of "criminal" act is that he allegedly reviewed and edited certain documents and promotional materials used by the property exchange company.  Similarly, any reviewing and editing of documents by Carpenter occurred, if at all, in his office in Connecticut.  Carpenter is not alleged to have conducted any of these activities from Massachusetts.

- Indeed, the sole alleged nexus of this case to Massachusetts is that six out of the seven exchangors whose funds were lost reside in Massachusetts and Massachusetts is where the government's investigation was conducted and Carpenter was indicted (neither of which is a <u>Platt</u> Factor).

- Carpenter and most of the witnesses – including the government's sole immunized witness – live and work in the Hartford area (and the case law recognizes that the defendant's home district and the location of witnesses are the preeminent <u>Platt</u> Factors).  Consequently, if trial is in Boston, Carpenter and most of the witnesses, as a practical

8

matter, would be obliged to stay in Boston hotels during the week and would be separated from their families on weekdays and nights during a trial estimated to last at least a month.  Transfer to Springfield would eliminate this burden because Carpenter and virtually all of the Connecticut-based witnesses live in the Hartford area – which is only a 45-minute commute to Springfield.

- If the trial is held in Boston, Carpenter will be forced to spend at least $250,000 to accommodate and house himself and his defense team. This expense would be eliminated if the case is transferred to Springfield.

- The docket in the District of Connecticut is up to *30% less crowded* than the docket in the District of Massachusetts, and the Springfield docket is far less busy than the Boston docket.

As for the other side of the Platt equation – the factors favoring Massachusetts (or Boston) – the government argued that Boston was more convenient for the prosecution team and for the majority of the exchangors whose funds were lost because most of them live in eastern Massachusetts (although one exchangor lives in the Worcester area and is basically equidistant between the Boston and Springfield federal courthouses).

Finally, Carpenter's transfer motion is similar to the situation in the ongoing case of United States v. Forbes.  Walter A. Forbes, a Connecticut resident, was the former Chairman of Cendant Corporation, a New Jersey-based Fortune 500 company.  Forbes was indicted in the District of New Jersey in 2002 for allegedly masterminding a massive securities fraud that caused Cendant shareholders to lose about $14 billion.  Forbes moved to transfer the case to the District of Connecticut – where he lived (even though the government showed that the federal courthouse in Newark was actually *closer* to Forbes' estate in New Canaan, Connecticut than the Hartford federal courthouse).

The New Jersey district court, after weighing and balancing the Platt Factors and finding that Forbes satisfied even fewer Factors than Carpenter has clearly satisfied in this case, nonetheless transferred the case to the District of Connecticut – placing primary emphasis on the fact that Forbes and his co-defendant both lived in Connecticut.  After transfer, and a trial which ended in a hung jury, the government moved to have the Connecticut district court *re-transfer* the case back to the District of New Jersey for the retrial of Forbes scheduled for September 2005 (primarily citing the inconvenience and cost to the government of having to prosecute the case and house the prosecution team in Hartford).  The Connecticut district court recently denied the government's motion.  See United States v. Forbes, No. 02-cr-00264 (D. Conn. Mar. 8, 2005) (oral order denying motion to re-

transfer) (Thompson, J.).  Unlike Walter Forbes, although Carpenter is entitled under the <u>Platt</u> Factors to be tried in Connecticut, Carpenter is willing to defend himself in the Western Division of the District Court in Springfield.

In fact, Carpenter was encouraged to resort to Criminal Rule 21(b) because the judge in the <u>Forbes</u> case is the same judge who recently transferred Carpenter's action against the U.S. Department of Justice under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), from Hartford to Boston – and Judge Thompson's rationale for doing so was that the criminal case was pending in Boston and Carpenter had not exercised his rights under the rule.  This exposition by Judge Thompson (instead of an intent by Carpenter to delay the July 11th trial as the government alleges) led Carpenter to file his transfer motions.

In light of all these and the other factors delineated below – particularly the District Court's failure to consider, weigh and balance the <u>Platt</u> Factors adequately – the emergency petition for mandamus should be granted.

## <u>STATEMENT OF RELIEF SOUGHT</u>

This petition seeks a writ of mandamus ordering the District Court to (i) **<u>vacate</u>** its May 17, 2005 two-sentence electronic order (Ex. 1)[1] denying Carpenter's motions to transfer this criminal case to the District of Connecticut or,

---

[1]  The District Court order (with the relevant portion highlighted) is annexed hereto as Exhibit 1.  Exhibit 2 contains the petitioner's Appendix ("A").

in the alternative, to the Western Division of the District of Massachusetts in Springfield; and (ii) **consider, weigh, balance and explain** its application of the <u>Platt</u> Factors with respect to a transfer to the Western Division in Springfield.

Relief is sought on an emergency basis because trial is scheduled to commence in the Eastern Division of the District Court in Boston on **July 11, 2005**.

Had the District Court discharged its obligations to consider, weigh, balance and explain its application of the <u>Platt</u> Factors, the case likely would have been transferred either to Hartford (12 miles from Carpenter's home in Simsbury, Connecticut and a 28-minute commute) or Springfield (31 miles, 47-minute commute).  A45.  Instead, absent a transfer to Springfield, Carpenter will be forced to defend himself in Boston (112 miles and, during rush hour, a three-hour commute *each way*), and the majority of the witnesses (most of whom hail from the Hartford area – including the government's sole immunized witness) will also be forced to travel to Boston.  A9, A45-A46.

## <u>STATEMENT OF THE ISSUE PRESENTED</u>

Whether the District Court committed a clear abuse of discretion and clear error of law by failing, in its two-sentence order, to consider, weigh, balance and explain its application of the <u>Platt</u> Factors in making its transfer determination.

## STATEMENT OF THE FACTS

On September 24, 2004, Carpenter was charged by a grand jury sitting in the
United States District Court for the District of Massachusetts, Eastern Division in
Boston, in a 19-count superseding indictment with mail and wire fraud.  See
United States v. Carpenter, No. 04-cr-10029, Dkt. No. 34 (D. Mass. Sep. 24, 2004)
("Carpenter").  Carpenter was born and raised in Connecticut and, at all times
material hereto, has lived and worked in Simsbury, Connecticut (a suburb of
Hartford).  A1, A6.  All of Carpenter's acts that are alleged to be criminal occurred
in or were directed from Connecticut; none of these acts are alleged to have
occurred in or were directed from Massachusetts.  A10-A12, A31-A33, A46.

Carpenter's former trial counsel (A. John Pappalardo, Esq. of the Boston
office of Greenberg Traurig, LLP) was allowed to withdraw – due to conflicting
commitments caused by the internationally prominent Khodorkovsky criminal trial
in Russia – on March 31, 2005.  See Carpenter, Dkt. No. 55.  On May 5, 2005, the
District Court denied Carpenter's emergency motion for a further trial continuance
to November 2005 in order to retain substitute counsel (the Law Offices of Martin
G. Weinberg, Esq.) and reconfirmed that trial would commence on July 11, 2005.
See id., Dkt. No. 63.

On May 6, 2005, Carpenter filed his emergency verified motion to transfer
venue to the District of Connecticut pursuant to Federal Rule of Criminal

Procedure 21(b).  A1-A25.  The government opposed the motion.  A26-A29.  After

submitting a verified reply brief (A30-A43), on May 12, 2005 Carpenter filed a

supplemental emergency motion, in the alternative, to transfer the case from the

Eastern Division (Boston) to the Western Division (Springfield) of the District of

Massachusetts pursuant to LR, D. Mass. 40.1(F).  A44-A49.  The government

opposed this alternative motion as well (A50-A52) – claiming primarily that

moving the trial to Springfield would be inconvenient for the prosecution team and

an FBI case agent.  A50-A51.  Carpenter replied on May 13, 2005.  A53-A56.

The primary purpose of the compromise alternative motion was to give the

District Court the opportunity to transfer the case within the district but to a locale

relatively close to Carpenter's home and place of employment in Simsbury,

Connecticut, without requiring the prosecution team to leave the District of

Massachusetts.  A45.  (Springfield is only 31 miles and a 47-minute commute from

Simsbury as opposed to Boston which, during rush hour, is a three-hour commute

*each way* from Simsbury.)  Id.

By its two-sentence electronic order dated May 17, 2005 (Ex. 1),[2] the

District Court denied both of Carpenter's motions, which has the effect of forcing

---

[2]  In light of the District Court's failure to explain its balancing and weighing of the
Platt Factors, it is impossible to determine to what extent (and whether) the Platt
Factors were taken into consideration.

Carpenter to defend himself in Boston at an increased cost of at least $250,000.

A36-A37, A46.

## <u>REASONS WHY THE WRIT SHOULD ISSUE</u>

### 1.    <u>Appellate Jurisdiction and Suitability of Mandamus</u>

This Court has jurisdiction over a petition for a writ of mandamus pursuant

to the All Writs Act, 28 U.S.C. § 1651(a), which states:

> The Supreme Court and all courts established by Act of Congress
> may issue all writs necessary or appropriate in aid of their
> respective jurisdictions and agreeable to the usages and principles
> of law.

<u>See also</u> Fed. R. App. P. 21.  It is widely accepted that mandamus is an

extraordinary remedy that is rarely invoked.  16 Charles A. Wright, Arthur R.

Miller & Edward H. Cooper, <u>Federal Practice & Procedure: Jurisdiction and

Related Matters</u> § 3936.2, at 667 (2d ed. 1996).  However, "rarely if ever d[oes]

not mean never."  <u>Solomon v. Cont'l Am. Life Ins. Co.</u>, 472 F.2d 1043, 1045 (3d

Cir. 1972).

"Broadly stated, there are two types of mandamus.  The more common is

supervisory mandamus.  That strain of mandamus generally is limited to situations

in which the party seeking the writ has a clear entitlement to relief, yet is

threatened with irreparable harm should that relief be delayed or deferred."  <u>In re

United States</u>, 2005 WL 1119791, at *4 (1st Cir. May 12, 2005).

Supervisory mandamus is appropriate in this case because at least eight out of the ten <u>Platt</u> Factors heavily favor transfer – meaning that Carpenter has a clear entitlement to relief – and if that relief is delayed or deferred past **July 11, 2005**, Carpenter will suffer irreparable harm by having to defend himself without the support of his wife and family (A2-A3, A7-A8) in a forum (Boston) that is both inconvenient and more expensive not only for him but for the majority of the witnesses in the case (A8-A10, A33-A34) at an increased cost to Carpenter of at least $250,000.  A36-A37, A46.

By failing to consider, weigh, balance and explain its application of the <u>Platt</u> Factors, the District Court committed a clear abuse of discretion and a clear error of law.  Consequently, this Court has appellate jurisdiction to issue a writ of supervisory mandamus to the District Court.  <u>See</u> <u>In re United States</u>, 273 F.3d 380, 389 (3d Cir. 2001) (granting mandamus regarding transfer of criminal case when "the district court has committed a clear abuse of discretion or clear error of law"); <u>In re Hampers</u>, 1990 U.S. App. LEXIS 23242, at *5 (1st Cir. Oct. 5, 1990) (granting mandamus reversing decision to *retransfer* criminal case) (unpublished opinion).[3]

---

[3]  Pursuant to 1st Cir. L.R. 32.3(a)(3), a copy of <u>Hampers</u> is provided in the Appendix.  A57-A58.

## 2.    The *Platt* Factors Clearly Favor Transfer

### A.    Legal Standard

Federal Rule of Criminal Procedure 21(b) states, in pertinent part:

**(b) For Convenience**.  Upon the defendant's motion, the court may transfer the proceeding . . . against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice.

Although "[d]isposition of a Rule 21(b) motion is vested in the sound discretion of the district court," United States v. Maldonado-Rivera, 922 F.2d 934, 966 (2d Cir. 1990), cert. denied, 501 U.S. 1211 (1991), a court's failure to follow "certain minimum procedures" in deciding a Criminal Rule 21(b) motion constitutes an abuse of discretion that may be reversed on mandamus.  In re United States, 273 F.3d at 387.[4]

Similarly, Rule 40.1(F) of the Local Rules of the United States District Court for the District of Massachusetts states:

---

[4]  The District Court's failure to make findings and give reasons for denying Carpenter's motions to transfer are the same errors that prompted the Third Circuit to issue a writ of mandamus regarding a criminal transfer motion.  See In re United States, 273 F.3d at 387 ("[I]t is helpful when the district court provides a statement of reasons for [denying] the motion to transfer so that the appellate court has a basis to determine whether the district court soundly exercised its discretion and considered the appropriate factors.").  The District Court's failure in this case to provide, in its two-sentence order, "a sufficient explanation of the factors considered, the weight accorded them, and the balancing performed," id., is sufficient cause for granting the writ.

**(F) Transfer Between Divisions**.  Any case may be transferred from one
division to another division on motion of any party for good cause shown
or sua sponte for good cause by the judge to whom the case is assigned.

However, since transfer between *divisions within the same district* is far simpler

(and much less disruptive to judicial administration) than a transfer from one

district to another, arguably the <u>Platt</u> Factors, if they apply at all, require less of a

showing for an intra-district transfer (although Carpenter has satisfied the <u>Platt</u>

Factors in any event).

## B.     *<u>Platt</u> Factors*

In <u>Platt</u>, a criminal antitrust case, the Supreme Court enumerated ten factors

that must be considered by a district court in deciding whether to transfer a

criminal case for convenience and in the interests of justice.  They are:

(1) location of [the] . . . defendant; (2) location of possible witnesses; (3)
location of events likely to be in issue; (4) location of documents and records
likely to be involved; (5) disruption of defendant's business unless the case
is transferred; (6) expense to the parties; (7) location of counsel; (8) relative
accessibility of [the] place of trial; (9) docket condition of each district . . .
involved; and (10) any other special elements which might affect the
transfer.

376 U.S. at 243-44.

Even though <u>Platt</u> involved a corporate defendant, "the ten <u>Platt</u> factors are

used in cases involving individual defendants as well."  <u>In re United States</u>, 273

F.3d at 388.  Although none of the ten factors is alone controlling, "it remains for

the court to try and strike a balance and determine which factors are of greatest

importance." <u>United States v. Stephenson</u>, 895 F.2d 867, 875 (2d Cir. 1990), <u>cert.</u>

<u>denied</u>, 501 U.S. 1211 (1991).  In this case, however, the District Court's two-

sentence order fails to indicate whether the District Court engaged in any balancing

at all.

Some courts maintain that there is a general rule that criminal prosecutions

should remain in the district in which they were initiated.  But any such rule

thwarts the intention of Criminal Rule 21(b), which is to provide a vehicle for a

criminal defendant to ensure he or she is tried in the appropriate place and not

simply where the government decides to investigate and indict.  The government

relied on this argument below, but, as Carpenter pointed out, the United States

Attorney for the District of Massachusetts should have referred any complaints it

received about the investment losses to his counterpart in the District of

Connecticut for investigation.  A54.  The government cannot now rely on its own

mistake as a bootstrap to argue that the trial should be conducted in Boston merely

because the investigation improperly proceeded there.

Furthermore, although the burden is on the defendant to show that transfer

would serve the purpose specified in the Rule, "[n]othing in Rule 21(b) or in the

cases interpreting it place on the defendant seeking a change of venue the burden

of establishing *truly compelling* circumstances for such a change.  It is enough if,

all relevant things considered, the case would be better off transferred to another

district." In re Balsimo, 68 F.3d 185, 187 (7th Cir. 1995) (Posner, C.J.) (emphasis added).

This case is clearly "better off transferred" to the Western Division of the District of Massachusetts in Springfield – particularly because venue provisions "should, whenever possible, be construed so to permit trial at [or near] the residence of the defendant." United States v. Cashin, 281 F.2d 669, 675 (2d Cir. 1960).

### (i)    Location of Defendant

Carpenter, who was born and raised in Connecticut, who currently lives and works in Connecticut, and who has at all relevant times lived and worked in Connecticut (A1), would suffer substantial inconvenience and additional expense (at least $250,000 (A36-A37)), absent a transfer to Springfield. Moreover, he would be unfairly prejudiced by a trial in Boston due to the strong interest of a criminal defendant to be tried in his home district or near his home. See, e.g., United States v. Martino, 2000 U.S. Dist. LEXIS 17945, at *19 (S.D.N.Y. Dec. 14, 2000) ("Most relevant here is the location of the defendant. Courts in this district have accorded greater weight to the defendant's interest in being tried in the district of his residence than to any other factor."); United States v. Russell, 582 F. Supp. 660, 662 (S.D.N.Y. 1984) ("wherever possible, defendants should be tried where they reside"); United States v. Kennedy, 1986 U.S. Dist. LEXIS 24988, at

*2 (E.D. Pa. May 28, 1986) ("it is preferable to try a defendant in the district where he resides").

Carpenter also would be severely prejudiced and inconvenienced absent a transfer to Springfield because a trial in Boston would cause an undue hardship to and burden on his wife and daughter (as well as his elderly parents), all of whom plan on attending each day of the trial if it is held in Springfield. A2-A3, A46. See Kennedy, 1986 U.S. Dist. LEXIS 24988, at *2-3 (granting transfer to defendant's home district because "the defendant's wife and children . . . could not otherwise attend the trial and offer emotional support to the defendant"); United States v. Clark, 360 F. Supp. 936, 944 (S.D.N.Y. 1973) (transferring case to defendant's home district, because the disruption to the defendant's family life and business occasioned by a criminal trial "is obviously increased by a long trial far away from home").

Carpenter and his family could not easily commute to Boston for trial from their home near Hartford, since the trip during the morning and evening rush hours would take at least *three hours each way*. A2, A7. Consequently, absent a transfer to Springfield, Carpenter would "be forced to choose between the burden of daily commuting or obtaining accommodations in [Boston] throughout the duration of the trial." Kennedy, 1986 U.S. Dist. LEXIS 24988, at *2-3.

Even though Carpenter has "absolutely no tie to this district," <u>United States v. Coffee</u>, 113 F. Supp. 2d 751, 754 (E.D. Pa. 2000), as a compromise Carpenter is willing to defend himself in the Western Division of the District of Massachusetts in Springfield, since all of the factors favoring transfer to Hartford also favor transfer to Springfield – which is only slightly farther from Carpenter's home and place of work than Hartford.  A45.

Consequently, it is clear that the first <u>Platt</u> Factor – generally considered to be the most important – weighs heavily in favor of transfer to Springfield.

### (ii)    <u>Location of Possible Witnesses</u>

The second factor, the location of possible witnesses, also favors transfer to Springfield.  Although perhaps the majority of the *government*'s witnesses are located in Massachusetts in general (A27), or eastern Massachusetts in particular (A50), the majority of *all* the witnesses are located outside Massachusetts (Connecticut, New York and New Jersey) (A33).  Indeed, most of them hail from the Hartford area (A54), including the government's sole immunized witness.  A9.

Clearly, a transfer to Springfield would be substantially more convenient not only for Carpenter, his family and the vast majority of the other witnesses in this case, but also for the government's sole immunized witness.  "Together, a head count of all the witnesses' inconvenience tips very much in favor of [Springfield],

and thus this factor weighs heavily in favor of transfer." <u>Coffee</u>, 113 F. Supp. 2d at 755.

### (iii)    <u>Location of Events Likely To Be At Issue</u>

The third <u>Platt</u> factor – the location of the events in issue – generally carries considerable weight.  <u>United States v. Alter</u>, 81 F.R.D. 524, 526 (S.D.N.Y. 1979) (transferring case when the "nerve center" of the criminal activity was located outside the district).  This important factor also weighs heavily in favor of transfer to Springfield because the crimes charged occurred, if at all, in the Hartford area (or in New York City), and more witnesses are located in the Hartford and New York City areas than all of Massachusetts combined.  A55.

The only alleged "crimes" were (a) Carpenter's reviewing and editing of certain documents and promotional materials and (b) Carpenter's investing the funds in stock options in accounts at Merrill Lynch or PaineWebber.  If the former, then the editing and reviewing occurred in Connecticut.  If the latter, the investments were all directed from Connecticut and were made in accounts at Merrill Lynch or PaineWebber in New York City.  <u>See</u> generally <u>Carpenter</u>, Dkt. No. 34 (superseding indictment).[5]  Therefore, if any crime was committed, it was committed in the District of Connecticut (or in the Southern District of New York).

---

[5]  Pursuant to recently-amended 1st Cir. L.R. 30(e), the superseding indictment is *not* included in the Appendix.

"[I]n truth the [defendant's] actions in connection with the crimes alleged in this Indictment all took place in the [Hartford] area." <u>Coffee</u>, 113 F. Supp. 2d at 756. Springfield is much closer to where the alleged crimes were committed than Boston.

### (iv) **Location of Documents**

All of Carpenter's documents are located in Simsbury, Connecticut. A12, A47. However, Carpenter is willing to transport his documents 30 miles to Springfield for trial. A47. If, as the government suggests, all of the documents are located in Massachusetts (A27, A50), the government will suffer no additional burden transporting them from the U.S. Attorney's office in Boston to the U.S. Attorney's office in Springfield.

### (v) **Disruption of Defendant's Business**

Carpenter manages several businesses from his office in Simsbury, Connecticut, which is just outside of Hartford. A12, A47. If the trial is held in Springfield, Carpenter will be able to attend to at least some of his work during the late afternoons and evenings. <u>Id.</u> He would be unable to do so if the trial were held in Boston. <u>Id.</u>

Furthermore, the government has no right under any circumstances to impose such harsh conditions on Carpenter's ability to keep his businesses running and to earn a living while defending himself. <u>See</u> <u>United States v. Herold</u>, 309 F.

Supp. 997, 998 (E.D. Wis. 1970) (transferring case from the Eastern District of Wisconsin to the Western District of Wisconsin *solely* because the defendant lived and worked there).

### (vi)    Expense to the Parties

Travel, accommodations, meals and related expenses to be incurred by Carpenter, his wife, his defense team and the vast majority of the witnesses in this case will present a major financial hardship to all non-governmental parties if this case is tried in Boston.  Carpenter himself will be forced to incur at least another $250,000 in expenses if the trial is held in Boston.  A47.  However, if trial were held in Springfield, those additional expenses would be eliminated.  Id.  On the other hand, "[t]he United States of America has, for all practical purposes, unlimited financial resources to bring to bear.  Unlike the [Carpenters], the Government can, and does, mint money."  Coffee, 113 F. Supp. 2d at 757.

### (vii)    Location of Counsel

Carpenter's civil attorney is located in Connecticut (A47), making a trial in Springfield much more convenient for him than one in Boston.  Due to the withdrawal of Carpenter's original criminal trial counsel on March 31, 2005 and the District Court's denial of a trial continuance beyond July 11, 2005 to allow Carpenter to retain and prepare successor criminal trial counsel, Carpenter

presently has no criminal trial counsel appearing in this case.[6]  A decision on new

lead criminal trial counsel is awaiting resolution of this petition.

The government's primary objection to transfer is that "[t]he prosecutors

assigned to this case work out of Boston, as does the [FBI] case agent."  A51.

However, little, if any, weight should be given "to whatever inconvenience th[ese]

particular Assistant United States Attorney[s] may suffer for spending a few weeks

in [Springfield]."  Coffee, 113 F. Supp. 2d at 758.

Moreover, because the United States Attorney for the District of

Massachusetts maintains an office in Room 310 of the Springfield courthouse

(A47-A48), the government should not be heard to complain on this factor.

### (viii)  Relative Accessibility of Place of Trial

While Carpenter conceded in the District Court that this was a neutral Platt

Factor, Springfield is far more accessible to Carpenter, most of the witnesses and

Carpenter's current attorneys than Boston.

---

[6]  Undersigned counsel (Attorney Robinson) appeared on Carpenter's behalf in the
District Court solely to file motions in light of the District Court's ruling on May 4,
2005 requiring that leave of Court be obtained prior to Carpenter filing any
motions on a *pro se* basis – the occurrence of which was caused by Carpenter's
current predicament involving representation.  See Carpenter, Dkt. No. 63.
However, to the extent the location of Attorney Robinson is relevant for purposes
of this Platt Factor, his location in Stamford, Connecticut is much closer to
Springfield than to Boston.  According to MapQuest (www.mapquest.com),
Stamford is 105 miles (and one hour, 45 minutes) from the Springfield courthouse,
but is 178 miles (and three hours) from the Boston courthouse.

### (ix)    Docket Condition of Each District

The District of Massachusetts has a far more crowded (and delay-plagued) criminal docket than the District of Connecticut.  According to the *2004 Federal Judicial Caseload Statistics* published by the Administrative Office of the U.S. Courts, as of March 31, 2004, the District of Connecticut impaneled *30% fewer* juries (civil and criminal) than the District of Massachusetts.  A14.  Furthermore, the Eastern Division of the District of Massachusetts in Boston is much busier than the Western Division in Springfield, by virtue of the simple fact that eleven non-senior district judges are assigned to the Eastern Division whereas only one non-senior district judge is assigned to the Western Division.  A48.

Chief Judge Young has recently lamented the crowded and over-worked criminal docket in the District of Massachusetts.  See United States v. Richardson, 324 F. Supp. 2d 339, 340 (D. Mass. 2004) ("This is a period of unprecedented trial activity in the United States District Court for the District of Massachusetts. **Criminal trials are up 100%**. . . . For three consecutive weeks in May-June 2004, the Court sitting in Boston impaneled five cases every Monday while handling two multi-week cases as well (one running eight weeks).  This activity has placed added strains on an already depleted corps of dedicated court reporters.  (We have already lost one of our very best to a court that is far less busy.)  There are other operational challenges as well.") (emphasis added).

Transfer of this case to Springfield would help alleviate the problems identified by Chief Judge Young.

### (x)    <u>Special Factors</u>

Carpenter did not file his motions to transfer simply as a mechanism to engage in "judge-shopping" or to circumvent the District Court's denial of his motion for a trial continuance beyond July 11th. In fact, Carpenter expressly proposed that if the case was transferred to Springfield, Judge O'Toole could continue presiding over the case and the trial could commence on July 11th as scheduled because there is an available courtroom in Springfield. A55.

Furthermore, Carpenter's FOIA case against the U.S. Department of Justice, <u>see</u> p. 11, <u>supra</u>, that was recently transferred from the District of Connecticut to the District of Massachusetts in Boston *solely* because the criminal case is pending in Boston, was docketed on May 12, 2005 and assigned to Senior District Judge Lasker in Boston. <u>See</u> <u>Carpenter v. U.S. Dept. of Justice</u>, No. 05-cv-11012-MEL (D. Mass.). Carpenter has recently filed a motion to transfer the FOIA case, for the same reasons he seeks transfer of the criminal case, to the Western Division in Springfield.[7]

---

[7] In its order transferring the FOIA case to the District of Massachusetts (A21-A25), the Connecticut district court ordered that the case be marked "related" to the criminal case. A24-A25. Clearly, a transfer of *both* the criminal and FOIA cases to the Western Division in Springfield will serve the interests of judicial economy.

### (xi)  Weighing the *Platt* Factors

At least eight of the ten Platt Factors overwhelmingly favor transfer. Moreover, not a single factor supports the government's position to keep this case in Boston.  Notwithstanding that the Platt Factors clearly favor transfer, the District Court's summary two-sentence order surprisingly states that Carpenter has "not shown that the balance of considerations . . . tips in favor of a transfer."  Ex. 1.

"[T]his really is not a close case . . . and indeed one wonders why the Government brought this prosecution in this district in the first place."  Coffee, 113 F. Supp. 2d at 759.  Although transfer to the District of Connecticut is clearly warranted under the Platt Factors, Carpenter is nevertheless willing to defend himself in Springfield.

Because the government has offered no reason (other than minor inconvenience to a couple of Assistant United States Attorneys and an FBI agent) why the case should not be transferred, the District Court committed a clear abuse of discretion and a clear error of law by failing to consider, weigh, balance and explain its application of the Platt Factors in its two-sentence transfer order.

### CONCLUSION

For all of the foregoing reasons, defendant–petitioner Daniel E. Carpenter respectfully requests that this Court, on an emergency basis, issue a writ of mandamus directing the District Court to **vacate** its May 17, 2005 two-sentence

order regarding transfer and to **consider, weigh, balance and explain** its

application of the <u>Platt</u> Factors regarding Carpenter's request to transfer this case

to the Western Division of the District Court in Springfield.


Dated:  May 20, 2005

                              Respectfully submitted,

                              DANIEL E. CARPENTER,
                              By his attorney,


                              **/s/ Jack E. Robinson**
                              Jack E. Robinson, Esq.
                              (BBO #559683; 1st Cir. #38097)
                              2187 Atlantic Street
                              Stamford, CT 06902
                              (203) 425-4500
                              robinsonesq@aol.com


*Of Counsel:*

Arthur R. Miller, Esq.
(BBO #554226; 1st Cir. #8098)
1563 Massachusetts Avenue
Cambridge, MA 02138
(617) 495-4111

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Fed. R. App. P. 21(a)(1), I hereby certify that on this 20th day of May, 2005, I caused a true and correct copy of the foregoing Petition (including the annexed exhibits) to be served on each of the following persons via hand-delivery:

Hon. George A. O'Toole, Jr.       Michael J. Pineault, Esq.
United States District Judge        Assistant U.S. Attorney
United States District Court        Office of the U.S. Attorney
1 Courthouse Way, Suite 2300    1 Courthouse Way, Suite 9200
Boston, MA 02210            Boston, MA 02210

**/s/ Jack E. Robinson**
Jack E. Robinson, Esq.

No. 05-1749

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

In re: DANIEL E. CARPENTER,

Petitioner.

_____

On Emergency Petition for a Writ of Mandamus to the United States
District Court for the District of Massachusetts
(Related to D. Mass. No. 04-cr-10029)

_____

PETITIONER'S REPLY

_____

Jack E. Robinson, Esq.
(BBO #559683; 1st Cir. #38097)
2187 Atlantic Street
Stamford, CT 06902
(203) 425-4500
robinsonesq@aol.com

*Attorney for Petitioner*

*Of Counsel:*

Arthur R. Miller, Esq.
(BBO #554226; 1st Cir. #8098)
1563 Massachusetts Avenue
Cambridge, MA 02138
(617) 495-4111

Dated:  May 31, 2005

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

**TABLE OF AUTHORITIES**                                          **3**

**INTRODUCTION**                                                 **5**

    **I.**    **The Government's Inconvenience Is Irrelevant**     **8**

    **II.**    **Inconvenience to Several Government Witnesses Is Outweighed By Interests of Most of the Witnesses**     **9**

    **III.**    **There Has Been No "Inexplicable" Delay**     **12**

**CONCLUSION**                                                   **13**

**CERTIFICATE OF SERVICE**                                       **15**

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

Cahaly v. Benistar Property Exchange Trust Co., Inc.,
    268 Conn. 264, 842 A.2d 1113 (2004)                     11

In re United States (United States v. Green),
    2005 WL 1119791 (1st Cir. May 12, 2005)                    6

Platt v. Minnesota Mining & Mfg. Co.,
    376 U.S. 240 (1964)                                       7, 13

United States v. Carpenter,
    No. 04-cr-10029 (D. Mass.)                                12

United States v. Coffee,
    113 F. Supp. 2d 751 (E.D. Pa. 2000)                       8

United States v. Gruberg,
    493 F. Supp. 234 (S.D.N.Y. 1979)                          7

United States v. Jessup,
    38 F.R.D. 42 (M.D. Tenn. 1965)                            8

United States v. Kattar,
    840 F.2d 118 (1st Cir. 1988)                              9

United States v. Lopez,
    343 F. Supp. 2d 824 (E.D. Mo. 2004)                       6

United States v. McDonald,
    740 F. Supp. 757 (D. Alaska 1990)                         7

United States v. Olen,
    183 F. Supp. 212 (S.D.N.Y. 1960)                          8

| **Rules** | **Page** |
|---|---|
| Fed. R. Crim. P. 15 | 10 |
| Fed. R. Crim. P. 21(b) | 5, 7 |
| Fed. R. Evid. 801(d)(2) | 9 |

**Internet Web Sites**

| | |
|---|---|
| www.usdoj.gov/usao/ma/crim/index.htm | 9 |

**INTRODUCTION**

Defendant-petitioner Daniel E. Carpenter ("Carpenter") respectfully submits this reply in further support of his Emergency Petition for a Writ of Mandamus to the United States District Court for the District of Massachusetts, Eastern Division (O'Toole, J.), dated May 20, 2005, and in response to the government's opposition dated May 31, 2005.[1]

The government also misconstrues the nature of a motion to transfer under Fed. R. Crim. P. 21(b).  See Gov. Br. 15-17.  The issue is *not* whether venue is proper in the District of Massachusetts, but whether – given proper venue <u>ab</u> <u>initio</u> – the case would be better off transferred to another district "for the convenience of the parties and witnesses and in the interest of justice."  Fed. R. Crim. P. 21(b).

---

[1]  In its unnecessarily prolix Opposition, the government blatantly misstates the key facts of the case.  **The indictment does _not_ accuse Carpenter of stealing or embezzling BPE client funds**.  <u>Compare</u> Gov. Br. 7 ("losses that [Carpenter] covered by systematically transferring additional BPE client funds into *his* trading accounts.") (emphasis added).  Rather, the indictment accuses Carpenter simply of transferring funds *from one BPE account to another* (*i.e.*, the funds were *always* held in the name of BPE – not Carpenter).  <u>See</u> Indictment ¶¶ 31, 44 ("Carpenter also opened up a second account at Merrill Lynch *in the name of BPE* . . . Carpenter opened two accounts at PaineWebber *in the name of BPE*.")  (emphasis added).  Also, BPE clients did not transmit "their money to Carpenter."  Gov. Br. 8.  Instead, they transferred their funds *directly to BPE's accounts* at Merrill Lynch or PaineWebber.  <u>See</u> Indictment ¶ 8 ("BPE provided Wire Transfer Instructions to its clients specifying the account into which clients were directed to transmit the funds *that BPE would be holding* in escrow.") (emphasis added).  The government's assertions that this is an embezzlement case fly in the face of the indictment.

See also United States v. Lopez, 343 F. Supp. 2d 824, 835 (E.D. Mo. 2004) ("It does not necessarily follow from the mere fact that venue is proper in this district that the trial of the case must necessarily be held in this district") (transferring trial to defendant's home district in Florida).  Consequently, there is no need for Carpenter to respond to the government's substantive venue arguments.[2]

Likewise, the government relies on outdated decisions and the novel assertion that mandamus does not lie for reviewing *denials* of motions to transfer as opposed to reviewing the granting of such motions.  Gov. Br. 9-12.  No such distinction exists in the case law, as the government was forced to admit.  Gov. Br. 10-11.  Clearly, this Court has jurisdiction to review on mandamus the granting of a motion to transfer as well as a denial of such a motion – so long as the requirements of In re United States (United States v. Green), 2005 WL 1119791 (1st Cir. May 12, 2005), are satisfied.  Carpenter has satisfied those requirements. See Pet. 15-16.

The government's primary argument against Carpenter's emergency petition for a writ of mandamus appears to be that transfer of this mail and wire fraud prosecution 90 miles and 90 minutes from the Boston courthouse to the Springfield

---

[2]  However, the government implicitly admits (as Carpenter argued in the District Court (A16-A17)) that substantive venue in the District of Massachusetts is obviously improper with respect to two counts in the indictment relating to transmissions sent from New Hampshire to Pennsylvania.  See Gov. Br. 15.

courthouse would be burdensome and inconvenient for (i) the Boston-based

prosecution team (Gov. Br. 22), even though the government's web site states that

Boston prosecutors occasionally try cases in Springfield; and (ii) several aged or ill

government witnesses who live in eastern Massachusetts.  Gov. Br. 20.  However,

"[t]he primary concern of Rule 21(b) is to minimize the inconvenience to *the*

*defense*," United States v. McDonald, 740 F. Supp. 757, 761 (D. Alaska 1990)

(emphasis added), *not* to the government.  See also United States v. Gruberg, 493

F. Supp. 234, 243 (S.D.N.Y. 1979) (government's convenience "is a factor given

little weight when other considerations of convenience suggest transfer of a trial

under Rule 21(b).").

    This is especially true given that Carpenter's petition shows that he has

easily satisfied *at least* 8 out of the 10 required Platt Factors, see Platt v. Minnesota

Mining & Manufacturing Co., 376 U.S. 240, 243-44 (1964), for transfer to the

*District of Connecticut*, let alone to the Western Division of the District of

Massachusetts in Springfield.  See Pet. 18-29.  On the other hand, the government

addresses the Platt Factors for the first time in this Court.  See Gov. Br. 18-26.[3]

---

[3]  Neither of the government's briefs in the District Court addressed the application
of the Platt Factors in the level of detail that the government now seeks to
accomplish in the first instance in this Court.  See A26-A29; A50-A52.  As a
result, the government failed to preserve these arguments and this Court should not
consider them.  If the writ is granted, the government will have ample opportunity
to convince the District Court anew that the Platt Factors do *not* favor transfer.

## I.    The Government's Inconvenience Is Irrelevant

Particularly where, as here, the government obviously knew early on that Carpenter resides in the Hartford suburb of Simsbury, Connecticut (A2, A7, Gov. Br. 18), most of the witnesses are located in the Simsbury area – including the government's sole immunized witness (A9, A54),[4] and Carpenter's alleged criminal conduct occurred in Simsbury (A10, A55, Gov. Br. 5-6), the government's claims regarding convenience are irrelevant.

As one court observed in a similar situation:

> All of the factors impelling me to grant the transfer must have been known to the Government very early in its investigation.  With knowledge of these factors it chose to continue the proceedings in this district.  Under the circumstances, the Government will not now be heard to complain . . . .

United States v. Olen, 183 F. Supp. 212, 220 (S.D.N.Y. 1960); accord United States v. Jessup, 38 F.R.D. 42, 48 (M.D. Tenn. 1965) (following Olen; "all of the factors militating in favor of transfer were, or should have been known to the Government when it chose to prosecute in this district . . ."). Accordingly, the inconvenience to the prosecution team is not a basis on which this Court should

---

[4]  Contrary to the government's assertion, Carpenter was not required to submit "detailed information regarding his alleged witnesses."  Gov. Br. 19.  See United States v. Coffee, 113 F. Supp. 2d 751, 755 n.5 (E.D. Pa. 2000) ("we cannot agree that our findings must be driven by affidavits or specific showings as to each witness regarding either their specific inability to be present for trial or the testimony they would give.").

deny Carpenter's petition, nor is it a proper reason for the District Court to have

denied the transfer motion.[5]

Furthermore, the government's own web site admits that it is normal for

Assistant United States Attorneys ("AUSAs") from the Boston office to try cases

in Springfield. "Occasionally, AUSAs in the Boston office will handle matters in

Springfield." http://www.usdoj.gov/usao/ma/crim/index.htm.[6]  The trial in this

case, with its heavy concentration in terms of the Platt Factors towards the

Hartford-Springfield area, should clearly be one of those occasions.

## II.    Inconvenience to Several Government Witnesses Is Outweighed By Interests of Most of the Witnesses

The government's other primary argument against the petition is that several

aged or ill government witnesses who live in eastern Massachusetts would also be

burdened or inconvenienced if the trial is transferred to Springfield.  Gov. Br. 20.

---

[5]  Since the District Court gave no reasons for its denial, there is no way to know on what basis the motion was denied – the government's attempts to guess at the District Court's rationale and offer excuses for the District Court's failure to describe its reasoning notwithstanding.  See Gov. Br. 26-28.  Indeed, this speculation and second-guessing by the government to fill in the holes left by the District Court makes clear why the writ should be granted.  The District Court should not have left Carpenter or the government guessing as to its rationale on this very important subject.

[6]  "[T]he federal government is a party-opponent of the defendant in criminal cases."  United States v. Kattar, 840 F.2d 118, 130 (1st Cir. 1988) (quotation omitted).  Consequently, the government's statement on its web site is admissible for all purposes as a binding admission of a party-opponent pursuant to Fed. R. Evid. 801(d)(2).

However, as already discussed in the petition, this concern is far outweighed by the

substantial inconvenience to most of the *total* witnesses (who reside in New York,

New Jersey and the Hartford area) if the case is *not* transferred.  Pet. 22-23.

Furthermore, the government overstates its claims regarding the burden

imposed on its aged or ill witnesses if they are required to travel to Springfield.

The videotaped deposition of the government's oldest witness (Mr. Byron Darling,

almost 90), pursuant to Fed. R. Crim. P. 15, was completed on May 5, 2005 – so

his trial testimony has been preserved.  A35.  The Rule 15 videotaped deposition of

the government's ill witness (Ms. Linda Jokinen (A34)) began on May 26, 2005

and will be completed in June 2005.[7]  The government's paraplegic witness (Mr.

Brian Fitzgerald) lives near Worcester and is essentially equidistant from the

Boston and Springfield courthouses.  A19.  And two of the government's other

eastern Massachusetts witnesses (Ronald and Gail Cahaly) have purposefully

availed themselves of administrative and judicial proceedings related to this case in

*Connecticut* (A19) – so traveling to Springfield would not be an inconvenience for

them at all.  In fact, in their Connecticut lawsuit against Carpenter, the Cahalys

sought and obtained prejudgment attachments against him (A19), which were

---

[7]  And with respect to the third Platt Factor, location of events at issue (Pet. 23-24),
Ms. Jokinen confirmed at her Rule 15 deposition that all of the investment
activities were directed by Carpenter from Connecticut.  See also Gov. Br. 5-6, 20-
21 (Carpenter's office located in Connecticut).

subsequently reversed and vacated by the Connecticut Supreme Court in a unanimous decision. <u>See</u> <u>Cahaly v. Benistar Property Exchange Trust Co., Inc.</u>, 268 Conn. 264, 842 A.2d 1113 (2004).

There are only seven exchangors in total (Indictment ¶ 58), and of these two have already settled their claims against Carpenter. A35. If the writ is granted and the case is transferred to Springfield, Carpenter is willing to conduct the videotaped Rule 15 depositions of *all* the exchangors in the government's offices at the government's convenience – as has already occurred with Mr. Darling and Ms. Jokinen. A35. Furthermore, in the related civil proceedings, *all* of the exchangors completed their entire trial testimony "within the space of two trial days." A10. Consequently, in the space of two days the parties can take the Rule 15 videotaped testimony of all of the alleged "victims" and this issue would no longer be a cause for concern by the government.

Consequently, the government's claims regarding inconvenience to several of its witnesses are outweighed by the substantial inconvenience to be suffered by most of the witnesses in this case. Pet. 22-23. Furthermore, the additional $250,000 cost to Carpenter if the trial occurs in Boston (Pet. 9, 20) far outweighs

the as yet undefined cost to the government if the trial is held in Springfield.  See

Gov. Br. 22.[8]

### III.    There Has Been No "Inexplicable" Delay

The government's final argument against the granting of the writ is its claim

that Carpenter engaged in an "inexplicable delay" (Gov. Br. 24) before filing his

motions in the District Court.  Carpenter has already addressed this concern both in

his motions in the District Court (A18, A48, A55) and in his Petition.  Pet. 29.

However, the government again misstates the posture of the case below.

Discovery is *not* "complete" (Gov. Br. 24) because, for example, the government

has failed to produce to the defense an original computer hard drive as ordered by

the District Court almost a month ago.  See United States v. Carpenter, No. 04-cr-

10029 (D. Mass. May 4, 2005) (Dkt. #63) (granting defendant's discovery motion).

---

[8]   The government's assertion that Carpenter's $250,000 additional cost estimate
to defend the case in Boston "appears grossly inflated" (Gov. Br. 22) is a matter for
the District Court to determine.  However, the trial is estimated to last at least a
month (A36) as opposed to three weeks (Gov. Br. 22), so the cost for the entire
defense team (various partners, associates, paralegals, IT and administrative
support staff all billing for a 12-hour day, as well as the Carpenter's expenses)
would average roughly $8,000 per day – not an unreasonable amount for a dozen
people (average of $667/person/day) given the high cost of Boston lodging.  A36.

More importantly, Carpenter filed his motion to transfer within a week of learning about his rights under Rule 21(b) from Judge Thompson's order in the FOIA case pending in the District of Connecticut (A15-A16), and only a month after losing his original lead trial counsel to the Khodorkovsky trial in Russia.  Pet. 13.  It is still well within a year since the superseding indictment was returned in September 2004.  Gov. Br. 3.

Furthermore, while the District Court has invested limited time and resources in the case, this is not a Platt Factor nor is it a bar to transfer.  And while the trial is currently scheduled to commence on July 11th, Carpenter filed his motions to transfer more than 60 days before the start of trial.  Compare Gov. Br. 24 (citing case denying transfer motion where trial was scheduled to occur in less than 45 days).

## CONCLUSION

For all of the foregoing reasons, petitioner Daniel E. Carpenter respectfully requests that this Court, on an emergency basis, issue the writ of mandamus as requested in Carpenter's petition and order the District Court to undertake the analysis of the Platt Factors.


Dated:  May 31, 2005

Respectfully submitted,

DANIEL E. CARPENTER,
By his attorney,


**/s/ Jack E. Robinson**
Jack E. Robinson, Esq.
(BBO #559683; 1st Cir. #38097)
2187 Atlantic Street
Stamford, CT 06902
Tel: (203) 425-4500
Fax: (203) 425-4555
robinsonesq@aol.com


*Of Counsel:*

Arthur R. Miller, Esq.
(BBO #554226; 1st Cir. #8098)
1563 Massachusetts Avenue
Cambridge, MA 02138
(617) 495-4111

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of May, 2005, I caused a true and correct copy of the foregoing Reply to be served on each of the following persons via Federal Express, overnight delivery:

Hon. George A. O'Toole, Jr.
United States District Judge
United States District Court
1 Courthouse Way, Suite 2300
Boston, MA 02210

Michael J. Pineault, Esq.
Assistant U.S. Attorney
Office of the U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210

Dina M. Chaitowitz, Esq.
Chief of Appeals
Assistant U.S. Attorney
Office of the U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210

**/s/ Jack E. Robinson**
Jack E. Robinson, Esq.