UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| DANIEL E. CARPENTER, )<br>Plaintiff, )<br> )<br>v. )<br> )<br>U.S. DEPARTMENT OF JUSTICE, )<br>and U.S. ATTORNEY FOR THE )<br>DISTRICT OF MASSACHUSETTS, )<br>Defendants. )<br>_____ ) | CIVIL ACTION<br>NO. 05-11012-MEL |

**CONSOLIDATED MEMORANDUM IN SUPPORT OF
GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO
PLAINTIFF'S "EMERGENCY" MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff is a defendant in a federal criminal case. His "emergency" motion for summary judgment in this FOIA action is not only an endeavor to circumvent proper criminal discovery in that case, but also one of many attempts to delay his criminal trial. For the reasons set forth below, this Court should deny plaintiff's motion for summary judgment and enter summary judgment in favor of the United States.

**FACTS**[1]

Plaintiff initiated his FOIA request with the United States Department of Justice ("DOJ") by letter and fax dated August 18, 2004. See Declaration of John F. Boseker at ¶ 6, Exhibit A.[2]

---

[1] The government incorporates herein its L.R. 56.1 statement and the Declaration of John F. Boseker and attached exhibits A-G, which is attached to this memorandum as Exhibit 1.

[2] The Boseker Declaration and attached exhibits will hereinafter be referred to as "Boseker Decl., Ex."

Richard S. Order, Esq., on behalf of Plaintiff, submitted the request seeking the following documents:

<blockquote>
a.     All documents, correspondence, records, or files provided by or obtained from John J. Koresko, V, Esq. that refer to, relate to, or reflect (a) Daniel E. Carpenter; (b) Benistar Property Exchange Trust Co., Inc.; (c) Benistar, Ltd.; (d) Benistar 419 Plan Services, Inc.; (e) Benistar 419 Plan; (f) Benistar Admin Services, Inc.; (g) the investigation leading to United States v. Carpenter, Criminal No. 04-10029-GAO; or (h) the case itself after the indictment issues.

b.     All documents that refer to, relate to, or reflect any conversation with John J. Koresko, V, Esq.
</blockquote>

Id. On or about September 23, 2004, Erin Boggs, Esq., on behalf of Plaintiff, inquired about the request with Mary Ellen Barrett who informed her that the office could not release the records without the written authorization of Plaintiff. See Plaintiff's Exhibit 2[3]. Subsequently, Plaintiff's counsel forwarded Plaintiff's signed consent form authorizing the office to release records pertaining to him. Id.

The Executive Office of United States Attorneys ("EOUSA") responded to Plaintiff's requests regarding documents relating to "Benistar Companies" in a letter dated October 13, 2005. (Boseker Decl. ¶ 9, Ex. C). EOUSA assigned the request number 04-3583. Id. In an October 15, 2005 letter, EOUSA, mistakenly believing that the documents requested pertained only to Plaintiff, denied the request for lack of Plaintiff's consent. (Boseker Decl. ¶ 8, Ex. B). Plaintiff responded by clarifying to the EOUSA that he had already consented to release of the documents. (Boseker Decl. ¶ 10, Ex. D). EOUSA then reopened the request and reassigned the request number 04-4511. (Boseker Decl. ¶ 11, Ex. E). EOUSA issued its final response on

---

[3] The Plaintiff's exhibits will hereinafter be referred to as "Plaintiff's Ex."

February 18, 2005.  (Boseker Decl. ¶ 12, Ex. F).  EOUSA admitted that it misinterpreted the first

request and that because the requests involved information regarding a third party, John J.

Koresko, it could not release any information about the records, including whether or not the

records existed.  Id.  The EOUSA relied on the Privacy Act and FOIA exemptions (b)(6) and

(b)(7)(C) in denying Plaintiff's request.  Id.

As of this date, Plaintiff has failed to furnish the consent of Mr. Koresko, even though he

admits that he requests documents relating to Mr. Koresko's communications with the DOJ

regarding the investigation and criminal indictment of Plaintiff.  (Boseker Decl. ¶ 14, Ex. G).

Plaintiff filed this FOIA claim in the District of Connecticut on January 28, 2005.  See FOIA

Docket 05-00172-AWT, # 1[4].  At approximately 4 p.m. on Friday June 17, 2005, Plaintiff filed

an "emergency" motion for summary judgment in this case.  See FOIA Docket 05-11012, # 19[5].

On the same day, Plaintiff also filed an "emergency" motion for discovery in the criminal matter,

requesting the same documents he requested in his FOIA.  See Criminal Docket, 04-10029, # 80.

## ARGUMENT

**I.    THE COURT SHOULD DISMISS THE UNITED STATES ATTORNEY AS THE DEPARTMENT OF JUSTICE IS THE ONLY PROPER DEFENDANT**

Congress vested the federal courts in FOIA actions with "jurisdiction to enjoin the

agency from withholding agency records improperly withheld from the complainant."  5 U.S.C.

§  552(a)(4)(B) (emphasis added).  Congress defined the term "agency" in the FOIA to include

---

[4] FOIA Docket 05-00172 will hereinafter be referred to as FOIA Docket A.

[5] FOIA Docket 05-11012 will hereinafter be referred to as FOIA Docket B.

"any executive department . . . or other establishment in the executive branch of the Government
(including the Executive Office of the President), or any independent regulatory agency."
5 U.S.C. § 552(f)(1).  Here, the Plaintiff has filed his FOIA complaint against  DOJ and the
United States Attorney for the District of Massachusetts.  Although DOJ is listed as an
"executive department" under 5 U.S.C. § 101, individuals, such as the U.S. Attorney are clearly
not within the definition of "agency" defined by FOIA.  Therefore, the Court should dismiss the
Plaintiff's complaint against the United States Attorney for the District of Massachusetts as he is
not a party to this suit.

## II.    DOJ PROPERLY DENIED PLAINTIFF'S FOIA REQUEST

### A.    Standard of Review

Most FOIA actions are resolved through summary judgment.  See Gillin v. IRS, 980 F.2d
819, 821 (1st Cir. 1992).  Motions for summary judgment are governed by Fed. R. Civ. P. 56,
and as long as there are no material facts at issue and no facts "susceptible to divergent
inferences bearing upon an issue critical to disposition of the case," summary judgment is
appropriate.  Alyeska Pipeline Serv. Co. v. EPA, 856 F.2d 309, 314 (D.C. Cir. 1988); see also
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Under FOIA, courts conduct de novo review to determine whether the government
properly withheld records under any of the FOIA's nine statutory exemptions.  5 U.S.C.
§ 552(a)(4)(B).  The government bears the burden of justifying non-disclosure.  Id; U.S. Dept. of
Justice v. Landano, 508 U.S. 165, 171 (1993); Church of Scientology International v. U.S. Dept.
of Justice, 30 F.3d 224, 228 (1st Cir. 1994).  It may satisfy that burden through submission of an

4

agency declaration that describes the reasons for non-disclosure.  See Campbell v. U.S. Dept. of Justice, 164 F.3d 20, 30 (D.C. Cir. 1998).  "Agency affidavits enjoy a presumption of good faith, which will withstand purely speculative claims about the existence and discoverability of other documents."  Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981).  As demonstrated below, the government properly declined to acknowledge the existence of the records in accordance with the Privacy Act and FOIA Exemption 6 and 7(C).

**B.     Plaintiff Cannot Seek Documents Under FOIA To Avoid Compliance With Discovery Rules**

Congress did not create FOIA to allow litigants to circumvent discovery rules.  John Doe Agency v. John Doe Corp., 493 U.S. 146, 153 (1989); see Jones v. FBI, 41 F.3d 238, 250 (6th Cir. 1994) ("FOIA's scheme of exemptions does not curtail a plaintiff's right to discovery in related non-FOIA litigation; but neither does that right entitle a FOIA plaintiff to circumvent the rules limiting release of documents under FOIA"); see also  Irons v. Bell, 596 F.2d 468, 475 & n.15 (1st Cir. 1979) (noting criminal defendant has more rights to receive information through discovery than under FOIA).  Here, Plaintiff seeks documents relating to the criminal investigation and indictment against him.  (Boseker Decl. ¶ 14).  Even though he submitted his FOIA request in August of 2004, he did not seek access to the documents through discovery motions in the criminal case until the June 17, 2005, the same day he filed an "emergency" motion for summary judgment in this case.[6]  Plaintiff should not be able to avoid proper criminal

_____

[6] Plaintiff's criminal trial is scheduled for July 11, 2005.  Plaintiff requested and received a continuance of the trial date from April 4 to July 11, (Crim. Docket # 55), but was denied a request for a continuance until November of 2005.  (Crim. Docket # 63).  Rather than filing his "emergency" motion well before the criminal trial, plaintiff waited until less than a month before his criminal trial and now urges the Court to resolve an issue in this civil case which is more properly dealt with in connection with criminal discovery before Judge O'Toole.  Plaintiff has

discovery requests by invoking FOIA.[7]

**C.    DOJ Properly Refused to Confirm or Deny the Existence of the Records Plaintiff Requested**

DOJ denied Plaintiff's FOIA requests because to respond otherwise would violate the Privacy Act, 5 U.S.C. § 552a, and FOIA Exemptions 6 and 7(C).  (Boseker Decl. ¶ 15-30). Specifically, DOJ properly responded to Plaintiff's requests for alleged law enforcement records allegedly obtained from a third party with a so-called Glomar response, refusing to confirm or deny whether it has records on an individual who is the target of a FOIA request.[8]  The response recognizes that sometimes even admitting the existence of records may cause an unwarranted invasion of the person's privacy.  Phillipi v. CIA, 546 F.2d 1009, 1013 (D.C. Cir. 1976); see also Hunt v. CIA, 981 F.2d 1116, 1118-21 (9th Cir. 1992) (approving CIA's refusal to confirm the

---

also exhibited similar delay tactics in the FOIA matter by refusing to file in the correct jurisdiction and then filing a frivolous motion to transfer this case to the Western Division of this Court. (FOIA Docket B, # 12, 14).  The Government should not be penalized for the any alleged "delay," which has been the result of plaintiff's own doing.

[7] In the alternative to summary judgment, the government requests that the Court stay Plaintiff's FOIA claim in order to allow for the issue to be resolved properly in the criminal case in front of Judge O'Toole.  The government will provide Judge O'Toole with a courtesy copy of this filing.

[8] The term "Glomar" derives from the case of Phillipi v. CIA, 546 F.2d 1009 (D.C. Cir. 1976).  The court upheld the CIA's refusal to confirm or deny the existence of certain records. Id at 1013.  The court, however, required the Agency to provide a public affidavit explaining in as much detail as possible why they could not confirm or deny the existence of the documents. Id at 1015.  Although the government in Phillipi relied on Exemption 1 (exempting matters of national security from disclosure), the premise is recognized in other cases.  See generally, Reporter's Committee, 489 U.S. at 772-773 ("in none of our cases construing FOIA have we found it appropriate to order a Government agency to honor a FOIA request for information pertaining to a particular private citizen).

existence or non-existence of documents pertaining to an individual and surveying cases)[9].

A Glomar response is appropriate in this case, where the admission that any responsive records exist would associate a third party with a criminal prosecution and, therefore, invade the third party's privacy.  Accord U.S. Dept. of Justice v. Reporter's Committee for Freedom of the Press, 489 U.S. 749, 772-773 (1989) (revealing the existence of a criminal law enforcement record implicates the privacy interest of a third parties about whom an agency receives a FOIA request).  Individuals have a "strong interest . . . in not being associated unwarrantedly with alleged criminal activity."  Fizgibbon v. CIA, 911 F.2d 755, 767 (D.C. Cir. 1990) (internal quotations omitted); see also Maynard v. CIA, 986 F.2d 547, 566 (1st Cir. 1993).  Those whose names may surface in an investigation, even if they are not targets, have a strong privacy interest: "[p]ersons involved in [criminal] investigations - even if they are not the subject of the investigation - have a substantial interest in seeing that their participation remains secret."  Quinon v. FBI, 86 F.3d 1222, 1230 (D.C. Cir. 1996) (internal citations omitted); see also e.g., Maynard, 986 F.2d at 566  (recognizing privacy interests of "FBI agents, support personnel, confidential sources, and investigatory targets" in not having names revealed).[10]  The third party

---

[9] The government did not supply a Vaughn Index because constructing it would require the government to confirm or deny the existence of the documents.  See Phillippi, 546 F.2d at 1013, n. 7 ("Since the document the Agency is currently asserting the right to withhold is confirmation or denial of the existence of the requested records, we stress that we are not requiring, at this stage, the Vaughn index requested by appellant").  Furthermore, although the government asserts that the information is protected under FOIA exemptions (b)(6) and (b)(7)(C), the government reserves the right to assert other exemptions if the Court should order a search of the requested documents.

[10] And see Irons v. FBI, 880 F.2d 1446, 1447 (1st Cir. 1979) ("FOIA's disclosure windows are open to every member of the public:  a rule of law that permits reputable historians to conduct historical research will permit, to the same extent, the most disreputable criminals to search out the identity and knowledge of those who inform against them.").

in this case, Mr. Koresko, has a strong privacy interest in not being implicated in the criminal prosecution of Plaintiff. (Boseker Decl. ¶ 16, 22). This case is unlike the government's position in <u>Phillipi</u>, where the refusal to admit the existence of certain documents was based on national security concerns, here, the government's reasoning for not disclosing the existence of the records is to avoid violating federal law and the rights of a third party. <u>Id</u>. The government's attached affidavit explaining this reasoning and the deficiencies in Plaintiff's claim support DOJ's denial of Plaintiff's FOIA request. (Boseker Decl. ¶ 15-30).

**C.    The Privacy Act Forbids DOJ From Granting Plaintiff's FOIA Request**

Acknowledging the existence of the records Plaintiff requests would violate Mr. Koresko's rights under the Privacy Act, 5 U.S.C. § 552a. The Privacy Act exempts dissemination of personally identifiable records without written consent of "the individual to whom the record pertains." 5 U.S.C. § 552a(b).[11] Congress enacted the Privacy Act to protect the rights of individuals against unwarranted invasions of their privacy in light of the federal government's need to compile and maintain information about them for various public purposes.[12] <u>See</u> <u>Reporter's Committee</u>, 489 U.S. at 766. In this case, Plaintiff has not obtained the written consent of Mr. Koresko in compliance with § 552a(b). (Boseker Decl. ¶ 16, 26).

---

[11] Although 5 U.S.C. § 552a(b)(2) excepts information "required under Section 552 of this title" (i.e. the FOIA) from the Privacy Act, here, FOIA exemptions apply to Privacy-Act-protected records. As explained below, the balance of interests under Exemption 7(C) and Exemption 6 weighs against disclosure under FOIA. <u>See</u>, <u>e.g.</u>, <u>U.S. Dept. of Defense v. FLRA</u>, 510 U.S. 487, 502 (1994) (home addresses of employees covered by FOIA Exemption 6 and thus prohibited by Privacy Act).

[12] The Privacy Act and Federal Regulations allow the government to restrict records such as the ones at issue in this case, i.e., records in criminal case files of the United States Attorney's Office. § 552a(j)(2); 28 C.F.R. § 16.81(a)(4).

Plaintiff argues that because he requests records obtained from Mr. Koresko pertaining to himself and the criminal indictment against him, his consent to release satisfies § 552a(b).  In fact, 552a(b) also protects Mr. Koresko's privacy rights as he is an "individual to whom the records pertain."  (Boseker Decl. 16).  As stated above, Mr. Koresko has a strong interest in not being implicated in Plaintiff's criminal investigation.  (Boseker Decl. ¶ 22).

### D.    The DOJ Properly Invoked Exemption 7(C)

In response to Plaintiff's requests for  records referencing documents obtained from Mr. Koresko, DOJ invoked FOIA Exemption 7(C).  5 U.S.C. 552(b)(7)(C); (Boseker Decl. ¶ 21-27). Exemption 7(C) protects from disclosure

> [r]ecords or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy. . . .

5 U.S.C. § 552(b)(7)(C).  This exemption is the law enforcement counterpart to Exemption 6, see infra, which exempts from disclosure "personal and medical files and similar files, the disclosure of which would constitute a *clearly* unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6)(C)(1994) (emphasis added).[13]

"Exemption 7(C) affords broad privacy rights to suspects, witnesses, and investigators." Safecard Services, Inc. v. SEC, 926 F.2d 1197, 1205 (D.C. Cir. 1991) (internal citations omitted); see also Maynard, 986 F.2d at 566 (noting importance of privacy rights for agents and their sources).  After all, "'the mention of an individual's name' in a law enforcement file will

---

[13] Exemption 7(C) establishes a lesser burden of proof to justify withholding than does Exemption 6.  See Reporter's Committee, 489 U.S. 749, 756 n.9 (1989); Providence Journal Co v. U.S. Dept. of the Army, 981 F.2d 552, 564 n.14, 567 n. 18 (1st Cir. 1992).

engender comment and speculation and carries a stigmatizing connotation." <u>Branch v. FBI</u>, 658

F.Supp. 204, 209 (D.D.C. 1987); <u>see also</u> <u>Quinon</u>, 86 F.3d at 1230.

    1.    **If the Records Exist, They Properly Fall Under Exemption 7(C)
Because They Would Be "Compiled For Law Enforcement Purposes"**

Exemption 7(C) exemption protects from disclosure "records or information compiled for

law enforcement purposes" to the extent that the disclosure of law enforcement records or

information "could reasonably be expected to constitute an unwarranted invasion of personal

privacy." 5 U.S.C. § 552(b)(7)(C).[14]  In this case, DOJ relied on Exemption 7(C) to withhold

revealing the existence of certain documents allegedly obtained from Mr. Koresko relating to

Plaintiff and the criminal indictment against him.  (Boseker Decl. ¶ 21-27).

Before determining whether confirming the existence of the requested records would

unwarrantedly invade a third party's privacy under Exemption 7(C), the Court must determine

whether the records were  "compiled for law enforcement purposes."  When an agency has a

clear law enforcement role, such as the United States Attorney's Office, the agency need only

establish a "rational nexus" between the "activities being investigated and violations of federal

law." <u>Irons v. Bell</u>, 596 F.2d at 472.  Plaintiff specifically requests documents that relate to the

federal indictment against him.  There is a rational nexus between any documents relating to the

investigation of Plaintiff's criminal activities from whatever source and the criminal indictment

against him.  (Boseker Decl. ¶ 21).  If documents existed from Mr. Koresko relating to the

---

[14] The Freedom of Information Reform Act of 1986 changed the language in this
exemption from "would constitute" to "could reasonably be expected to constitute."  The
amendment "represent[ed] a considered congressional effort to ease considerably a Federal law
enforcement agency's burden in invoking [Exemption 7]." <u>Reporter's Committee</u>, 489 U.S. at
756 n.9 (internal quotations omitted).

criminal indictment against Plaintiff, they would clearly fall within the "compiled for law

enforcement purposes." Id.

### 2. The Privacy Interests At Issue Outweigh the Purely Speculative Public Interest in Granting Plaintiff's Request

Under Exemption 7(C), any privacy interests are to be balanced against any public interest

in disclosure. Reporters Committee, 489 U.S. at 762; Maynard, 986 F.2d at 566. It has

consistently been recognized that individuals--whether they are suspects, witnesses, or

investigators--"all have significant privacy interests in not having their names revealed."

Maynard, 986 F.2d at 566 (citing cases); New England Apple Council v. Donovan, 725 F.2d 139,

142 (1st Cir. 1984).[15] In Reporters Committee, 489 U.S. at 773, the Supreme Court held that the

only cognizable "public interest" for purposes of FOIA is "the citizens' right to be informed about

`what their government is up to.'" "That purpose," said the Court, "is not fostered by disclosure

of information about private citizens that is accumulated in various governmental files but that

reveals little or nothing about an agency's own conduct." Id. at 773; see also Maynard, 986 F.2d

at 566; FLRA v. U.S. Dept. of Navy, 941 F.2d 49, 57 (1st Cir. 1991). Furthermore, without

stating an overriding public interest that would be served by disclosure, the requester cannot seek

access to documents to serve his own purposes. Burge v. Eastburn, 934 F.2d 577, 580 (5th Cir.

1991)

---

[15] Accordingly, Exemption 7(C) has routinely been applied to withhold references to government employees, persons of investigatory interest to criminal law enforcement agencies, and individuals who provide information to law enforcement agencies. See, e.g., Baez v. Dept. of Justice, 647 F.2d 1328, 1338 (D.C. Cir. 1980) (subjects of FBI investigation); Nix v. United States, 572 F.2d 998, 1005-6 (4th Cir. 1978) (FBI confidential sources protected even when some information already public); Cleary v. FBI, 811 F.2d 421, 424 (8th Cir. 1987) (FBI agents and sources); Simon v. Dept. of Justice, 752 F. Supp. 14, 19 (D.D.C. 1990) (FBI agents, other government employees, and third parties).

("[a] requester's need, however significant, does not warrant disclosure in the face of a plainly applicable exemption").  This interest is not necessarily defeated by the fact that the information may have been made public at some point in time.  Reporter's Committee, 489 U.S. at 771 ("the fact that an even is not wholly private does not mean that an individual has no interest in limiting disclosure").

The U.S. Supreme Court recently defined the burden borne by a FOIA plaintiff in establishing a public interest in disclosure under 7(C).  In Nat'l Archives and Records Admin. v. Favish, 541 U.S. 157 (2004), the Supreme Court stated that,

> "Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure.  First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake.  Second, the citizen must show the information is likely to advance that interest.  Otherwise, the invasion of privacy is unwarranted."

Id. at 172.

Plaintiff has failed to state a sufficient reason for disclosure.  Plaintiff has not claimed any public interest sought to be advanced, much less one that would override the private interest of Mr. Koresko in not having his name implicated in a criminal investigation.  (Boseker Decl. ¶ 25).  His failure to identify a public interest in disclosure suggests that the only reason Plaintiff seeks the documents is for his own purely private purpose.  "[S]omething, even a modest privacy interest, outweighs nothing every time."  Nat'l Ass'n of Retired Federal Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989).  Therefore, Mr. Koresko's privacy interest, even if considered minimal, outweighs Plaintiff's interest as he has failed to mention or produce evidence of any cognizable public interest in disclosure under Favish.  (Boseker Decl. ¶ 25).  Accordingly,

the DOJ properly refused to confirm or deny the existence of (or to release if in fact they do exist) the documents sought by Plaintiff.

### 3.    The Court Should Categorically Balance the Records Requested By Plaintiff

In <u>Reporters Committee</u>, the Supreme Court emphasized the desirability of establishing "categorical balancing" under Exemption 7(C) as a means of achieving "workable rules" for processing FOIA requests. <u>See</u> 489 U.S. at 776-80. In so doing, the Court recognized that entire categories of cases can properly receive uniform disposition "without regard to individual circumstances; the standard virtues of bright-line rules are thus present, and the difficulties attendant to ad hoc adjudication may be avoided." <u>Id</u>. at 780. Based on this reasoning and the traditional recognition of the strong privacy interest inherent in law enforcement records, the Court of Appeals for the District of Columbia Circuit has concluded that "categorical withholding" of personal information in law enforcement records will normally be appropriate under Exemption 7(C). <u>SafeCard</u>, 926 F.2d at 1205-06. Therefore, unless access to such personal information "is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." <u>Id</u>. at 1206; (Boseker Decl. ¶ 27, 30).

In light of the significant privacy interests at stake in this case and the permissibility of "categorical withholding" of personal information in law enforcement records in most instances, the Court should find that DOJ has properly invoked Exemption 7(C) here.

E.    **DOJ Properly Invoked Exemption 6**

DOJ also properly based its decisions on FOIA Exemption 6, which protects "personnel or medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); Boseker Decl. ¶ 28-29.[16] The Supreme Court has broadly read the definition of files "similar" to personnel or medical files to encompass any "information which applies to a particular individual." U.S. Dept. of State v. Washington Post Co., 456 U.S. 595, 602 (1982). The First Circuit has followed the Supreme Court's broad interpretation of "similar files." Aronson v. U.S. Dept. of Housing and Urban Dev., 822 F.2d 182, 185 (1st Cir. 1987) (categorizing financial information files as "similar files" to personnel and medical records); see also, e.g., Sherman v. U.S. Dept. of the Army, 244 F.3d 357, 366 (5th Cir. 2001) (social security numbers are "similar files"); New York Times Co. v. NASA, 920 F.2d 1002, 1005 (D.C. Cir. 1991) (en banc) (voice tapes from the shuttle Challenger held to be "similar files" because they identified crew members by the sounds and inflection of their voices).

Although the public interest to justify denial of disclosure under Exemption 6 need not be of the same magnitude as under Exemption 7(C) case,[17] once again, "something, even a modest

_____

[16] Since DOJ's actions were proper under FOIA Exemption 7(C), the Court need not reach this alternate justification. See Reporters Committee, 489 U.S. at 762 n.12 ("[b]ecause Exemption 7(C) covers this case, there is no occasion to address the application of Exemption 6").

[17] As the Supreme Court explained in U.S. Dept. of Defense v. FLRA, 510 U.S. 487 (1994), "Exemption 7(C) is more protective of privacy than Exemption 6. The former provision applies to any disclosure that 'could reasonably be expected to constitute' an invasion of privacy that is 'unwarranted,' while the latter bars any disclosure that 'would constitute' an invasion of privacy that is 'clearly unwarranted.'" Id. at 496 n.6; see also Reporters Committee, 489 U.S. at 756. Thus, "Exemptions 7(C) and 6 differ in the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions." U.S. Dept. of Defense,

(continued...)

privacy interest, outweighs nothing every time." Horner, 879 F.2d at 879; see also U.S. Dept. of the Navy, 941 F.2d at 57 (noting that "[w]hatever non-zero privacy interest at stake, under Reporters Committee, that interest cannot be outweighed by public interest in disclosure – whatever its weight or significance – that falls outside of the FOIA-cognizable public interest in permitting the people to know what their government is up to").

Plaintiff bears the burden of demonstrating that potential disclosure of criminal investigatory files would serve the public interest and would outweigh the already-established privacy interests of Mr. Koresko. See Maynard, 986 F.2d at 567 (noting plaintiff's failure "to point out how the withheld information would reveal anything significant about the State Department's performance of its statutory duties") (internal quotation marks and citations omitted); Carter v. Dept. of Commerce, 830 F.2d 388, 390-92 nn.8 & 13 (D.C. Cir. 1987).  The only relevant issue in the public interest inquiry is "the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government."  U.S. Dept. of Defense, 510 U.S. at 495 (internal quotation marks and citation omitted).  As discussed above, Plaintiff has adduced nothing to meet this burden.[18]  Boseker Decl. ¶ 25.   Accordingly, DOJ's denial of Plaintiff's requests was proper

---

[17](...continued)
510 U.S. at 496 n. 6.

[18] Plaintiff implies that the government failed to meet its burden of justifying the exemptions in its answer and in the prior administrative proceedings.  Although the government has the burden to justify its refusal to turn over alleged documents based on FOIA exemptions, that burden does not arise until the summary judgment stage of litigation.  5 U.S.C. § 552(a)(4)(B); see Iturralde v. Comptroller of Currency, 315 F.3d 311, 313 (D.C. Cir. 2003) ("[a]t the summary judgment stage, the agency has the burden of showing that it complied with the FOIA").  The Boseker Declaration amply meets the government's burden.

under Exemption 6, Exemption 7(C), and the Privacy Act.[19]

## CONCLUSION

For all of the above reasons, the government respectfully requests that this Court grant its motion for summary judgment and deny defendant's motion for summary judgment. The government also requests that this Court dismiss the United States Attorney for the District of Massachusetts as a defendant in this action.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

/s/Eugenia M. Carris
Eugenia M. Carris
Assistant United States Attorney
U.S. Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
Dated: July 1, 2005                    (617) 748-3376

## CERTIFICATE OF MAILING

This is to certify that a true copy of the foregoing was electronically noticed or sent by first class mail on July 1, 2005, to plaintiff's counsel of record, Richard S. Order, Esq., Axinn, Veltrop & Harkrider LLP, 90 State House Square, Hartford, CT 06103, and Jack E. Robinson, Esq., 187 Atlantic Street, Stamford, CT 06902.

/s/Eugenia M. Carris
Eugenia M. Carris

---

[19] Plaintiff's request for fees is premature. A plaintiff may be entitled to attorney's fees, but only if he "substantially prevails." 5 U.S.C. § 552(a)(4)(E).

16

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DANIEL E. CARPENTER,                     )
                    Plaintiff,           )
                                         )
        v.                               )        Civ. No. 05-cv-11012 -MEL
                                         )
UNITED STATES DEPARTMENT OF              )
    JUSTICE, et al..,                    )
                    Defendant.           )
_____ )

## DECLARATION OF JOHN F. BOSEKER

I, John F. Boseker, declare the following to be a true and correct statement of facts:

1)      I am an Attorney Advisor in the Executive Office for United States Attorneys

("EOUSA"), United States Department of Justice ("DOJ"). I am specifically assigned to the

component of EOUSA designated to administer the Freedom of Information Act ("FOIA"), 5

U.S.C. §552 (1988), and the Privacy Act of 1974, 5 U.S.C.§552a(1988).

2)      Due to the nature of my official duties, I am personally familiar with the FOIA/PA

request(s) made to EOUSA by Richard Order on behalf of his client, Daniel Carpenter, which

forms the basis for this litigation.

3)      My official duties include: having the authority to make final disclosure

determinations on records requested by an individual using the FOIA/PA, to assure compliance

with the provisions of the FOIA and PA and DOJ Regulation 28 CFR§16.3 et seq., and §16.40 et

seq., as well as to defend EOUSA's position in litigating challenges to EOUSA's actions.

4)      My official duties also include: acting as liaison between EOUSA and the

components within the DOJ regarding FOIA/PA requests; reviewing requests for records sought

from EOUSA and /or the 94 U.S. Attorneys offices ("USAO's"); reviewing request-related

correspondence; reviewing searches performed in response to requests; and reviewing responses

made to those requests.

     5)     The statements that follow are made on the basis of my review of EOUSA's

official files and records, my own personal knowledge, and the information I acquired in

performing my official duties.

## **BACKGROUND**

### **FOIA Nos. 04-3582 & 04-3583**

     6)     On September 21, 1004, EOUSA received a letter, addressed to the U.S. Attorneys

Office for the District of Massachusetts (USAO/DMA), dated August 18, 2004, from

Mr. Order. This letter sought, under the FOIA, the following:

> 1. All documents, correspondence, records, or files provided by or
> obtained from John J. Koresko, V, Esq. that refer to, relate to, or
> reflect (a) Daniel B. Carpenter; (b) Benistar Property Exchange Trust
> Co., Inc. (c) Benistar, Ltd.; (d) Benistar 419 Plan Services, Inc.;
> (e) Benistar 419 Plan; (f) Benistar Admin. Services, Inc.; (g) the
> investigation leading to <u>United States v. Carpenter</u>, Criminal No.
> 04-10029-GAO; or (h) the case itself after the indictment issued.
>
> 2. All documents that refer to, relate to, or reflect any conversation
> with John J. Koresko V, Esq.
> **Exhibit A attached.**

     7)     EOUSA opened two numbered FOIA files reflecting the two apparent subject

matters of this request letter: a) Daniel Carpenter, FOIA No. 04-3582; and b) Benistar

Companies, FOIA No. 04-3583. This separation of privacy-related materials from corporate

materials was done pursuant to EOUSA policy regarding the separation of searches.

2

8)      Respecting FOIA No. 04-3582 (Carpenter), EOUSA notified Mr. Order by letter dated October 15, 2004, that pursuant to the Privacy Act and privacy protection exemptions (b)(7)(C) and (b)(6) of the FOIA, it was categorically denying access to all records pertaining to Mr. Carpenter, a third party individual, since no authorization to release his records (or any other form of release justification) had accompanied the request. Mr. Order was advised that no search had been performed, and the existence of records was not to be assumed. Public records could be requested, if such existed, absent the authorization. Mr. Order was also advised of his right to appeal this determination to the Office of Information and Privacy (OIP), and at the same time, was sent a form authorizing release to be completed by Mr. Carpenter and returned to EOUSA This case was closed as the final determination by EOUSA on this subject. **Exhibit B attached.**

9)      Respecting FOIA No. 04-3583 (Benistar Companies), EOUSA sent a letter dated October 13, 2004, to Mr. Order acknowledging that the request letter had been received  and assigned the referenced number, and that the related search  pertained only to that portion of the request relating to Benistar Companies. **Exhibit C attached.**

**FOIA No. 04-4511**

10)     On or about October 27, 2004, EOUSA received a letter dated October 20, 2004, responding to both the October 13th and October 15th letters referenced above, and including a letter dated September 23, 2004 addressed to the USAO/DMA from or at the direction of Mr. Order, transmitting Mr. Carpenter's authorization to release information on himself to Mr. Order. **Exhibit D attached.**

11)     By letter dated December 15, 2004, EOUSA, in relevant part, acknowledged that it had opened a file on Mr. Carpenter and assigned it FOIA No. 04-4511. **Exhibit E attached.**

3

12)     Following the initiation of the above-captioned action in the U.S. District Court for

the District of Connecticut, EOUSA re-read the original request letter from Mr. Order and

determined that it had misread the subject: in actual fact, the subject of the request was for

documents provided by Mr. Koresko, a third party individual, to the USAO/DMA relating to the

enumerated items set forth in Exhibit A attached to this declaration, recited in paragraph 6 above.

As such, by letter dated February 18, 2005 (erroneously stamped "2004"), EOUSA notified Mr.

Order of this development, closing all still-open files and assigning FOIA No. 05-388 to this

identified subject matter (i.e., records concerning Mr. Koresko).  EOUSA stated its position with

respect to the subject matter of this request, in relevant part, to be as follows:

> EOUSA can neither confirm nor deny that such records
> exist.  If in fact, they did exist, all such records as you have
> requested cannot be released absent express authorization and
> consent of the third party, Mr. Koresko, proof that he is
> deceased, or a clear demonstration that the public interest
> and the significant public benefit would result from the
> disclosure of the requested records.  Since you have not
> furnished a release, death certificate, or public justification
> for release, the release of records concerning a third party,
> Mr. Koresko, would result in unwarranted invasion of
> personal privacy and would be in violation of the Privacy
> Act, 5 U.S.C.§552a.  These records are also categorically
> exempt from disclosure pursuant to sections (b)(6) and
> (b)(7)(C) of the Freedom of Information Act, 5 U.S.C. §552.
>
> We have not performed a search for records and, as stated
> above, you must not assume that the records you seek
> concerning Mr. Koresko exist.

**Exhibit F attached.**

13)     EOUSA also enclosed a release authorization form for completion by Mr. Koresko,

and advised Mr. Order of his right to appeal this determination to OIP within 30 days of the date

of this letter. **Id.**   Mr. Order has not provided Mr. Koresko's authorization to EOUSA.

4

14)     The EOUSA interpretation of Mr. Order's request has been supported by the

following submissions made to the U.S. District Court District of Connecticut of which the Court

now presented with adjudicating the present action can take judicial notice: "Plaintiff's

Memorandum in Opposition to Defendant's Motion to Transfer of Venue", in which is stated that

"Mr. Carpenter's FOIA request seeks documents and related notes containing what he believes to

be inaccurate information about him provided by a competitor of his to the Assistant U.S.

Attorney in the District of Massachusetts investigating his criminal case ...." and the complaint,

itself, paragraphs 17 and 18, in which the allegations are essentially the same. Finally, by letter

dated March 21, 2005, addressed to AUSA William Collier, (USAO/DCT) by Erin Boggs, Esq.,

and attached hereto as **Exhibit G**, the plaintiff specifically identifies the subject of the request to

be "...documents provided by or obtained from John J. Koresko, V that relate to Mr. Carpenter, a

number of businesses with which he is affiliated, the investigation leading to **United States v.**

**Carpenter**, Criminal No. 04-10029-GAO or the criminal matter itself. Mr. Carpenter has also

requested documents that reflect any conversations with Mr. Koresko."

## EOUSA'S DISCLOSURE DETERMINATION

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE PRIVACY ACT

15)     The Privacy Act, 5 U.S.C. §552a(b) states as follows:

> No agency shall disclose any record which is contained in a
> system of records by any means of communication to any
> person, or to another agency, except pursuant to a written
> request by, or with the prior written consent of, the individual
> to whom the record pertains [subject to 12 exceptions.]

16)     EOUSA is prohibited by this provision from disclosing any information of the

information sought by the plaintiff in this case, since as stated above, the information sought, if

5

such exists, pertains to and belongs to Mr. Koresko, a third party individual, who has provided no authorization to disclose this information to the plaintiff. Indeed, EOUSA is prohibited from disclosing the existence of such records or anything regarding the contents of such records absent this authorization. Since this is the case, EOUSA reiterates that no search was performed for such records, as even acknowledging their existence would violate the Privacy Act.

17) Assuming for the sake of argument that records sought exist, they would be located, per the information provided by the plaintiff, in either a criminal or civil system of records. The Criminal Case Files (Justice/USA-007) are part of the DOJ Privacy Act System of Records. The Attorney General has promulagated rules exempting these records from the PA's access provisions as authorized by 5 U.S.C.§552a(j)(2), which appears at 28 CFR §16.81. Subsection (j)(2) exempts from mandatory disclosure all records maintained by an agency or component performing as its principal function any activity pertaining to the enforcement of criminal laws. If such records were existing in such as system of records, the entire case file would necessarily pertain to a criminal prosecution, and be compiled for law enforcement purposes. Therefore, EOUSA would determine that if such responsive records existed, they would be withheld and not disclosable under the Privacy Act. Accordingly, the records would then reviewed under the provisions of the FOIA.

18) Similarly, should such records be located in a civil law enforcement proceeding, the Civil Case Files (Justice/USA-005) are also part of the DOJ Privacy Act System of Records. The Attorney General has promulgated rules exempting these records from the PA's access provisions authorized by 5 U.S.C.§552a(k)(2), which appears at 28 CFR §16.81. Subsection (k)(2) exempts from mandatory disclosure investigatory material compiled for law enforcement

6

purposes in other than criminal matters, which did not result in a loss of right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence. Again, should records be located in such a case file, the entire case file would pertain to a civil action or civil actions - or perhaps even be derived from the criminal prosecution, it would necessarily be compiled for law enforcement purposes. Therefore, EOUSA would again determine that the responsive records withheld were not disclosable under the PA. Accordingly, the records would then be reviewed in accordance with the provisions of the FOIA.

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

19)     EOUSA has taken the position that it can neither confirm nor deny the existence of the records sought by Mr. Order. In conjunction with this position, no search for records is warranted.

20)     Furthermore, it should be stated herein, that absent a search and review of any records that may be located, if they exist, all applicable FOIA exemptions cannot be asserted at this time. Indeed, the assertion of such exemptions, would themselves likely reveal information about Mr. Koresko, which is prohibited from disclosure. That said, EOUSA herein preserves the right to assert applicable exemptions to any records that might be located should a search be ordered by this Court in the course of this proceeding. As previously stated, however, EOUSA has taken categorical exemptions under the FOIA to protect all records identified to Mr. Koresko, as will be discussed below.

7

## EXEMPTION 5 U.S.C. §552(b)(7)(C)

21)    Exemption (b)(7)(C) protects the release of records or information compiled for law enforcement purposes if such release could reasonably be expected to constitute an unwarranted invasion of personal privacy.  All information at issue in this case, should any such information exist, was compiled for law enforcement purposes, according to the requester, himself, in order to investigate and/or prosecute Mr. Carpenter.

22)    This exemption would be applied to withhold the identities of and personal information about third party individuals, the release of which could subject such persons to an unwarranted invasion of their personal privacy.  Release of the identifying information could result in unwanted and even unlawful efforts to gain further access to such persons or to personal information about them.  It could also lead to harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences arising from their connection to the case.  In short, disclosure would be detrimental to the persons protected.

23)    Clearly from the nature and scope of the request at issue in this case, EOUSA could not segregate any of this material without disclosing information about Mr. Koresko, since the focus of the request is upon what Mr. Koresko is believed to have provided the USAO in the course of an investigation and/or prosecution.  Thus, it is EOUSA's position that the material being so inextricably intertwined, any attempt to segregate creates the risk of disclosing revealing privacy-protected information of the third party individual, as well as other persons who may be named in the records, as well..

24)    This exemption would  also be applied to withhold, should such appear in records, the identities of individuals such as special federal agents, other government employees, and local

8

law enforcement personnel all of whom participated in the investigation and prosecution of this case. Individual duties and assignments are not public and the publicity that would likely arise from disclosure would seriously impede, if not totally jeopardize, law enforcement effectiveness in subsequent cases, even subjecting these individuals to harassment or other harm. These persons have protected privacy interests in the conduct of law enforcement investigations.

25)     Furthermore, and it should be remarked that no assertion has been made by Mr. Order to this effect, EOUSA determined that there was no public interest in the information requested, if released, because its dissemination would not help to explain the activities and operations of the EOUSA. Furthermore, Mr. Carpenter's personal interest in information to challenge his prosecution does not raise a FOIA-recognized interest that should be weighed against the Mr. Koresko's privacy interest. (See, Thomas v. Office of the United States Attorney, 928 F.Supp. 245, 251 (E.D.N.Y. 1996). In short, no public interest would counterbalance the protected individual(s)' privacy right in the information withheld under this exemption.

26)     As stated, Mr. Order has provided EOUSA with no authorization or consents to release otherwise privacy protected materials from any of the third party individuals to whom this exemption was applied.

27)     Finally, it should be understood, that EOUSA categorically applied this exemption to the subject matter of the request, and by extension to all third party materials, in conjunction with exemption (b)(6) as set forth below.

## EXEMPTION 5 U.S.C. §552(b)(6)

28)     Exemption (b)(6) permits withholding personnel, medical, and similar files, which if disclosed would constitute a clearly unwarranted invasion of personal privacy. This

9

exemption has been interpreted broadly to qualify all information pertaining to a particular

individual. In particular this exemption would be applied to prevent disclosure of such

information as social security number, address, telephone number, and other highly personal

material.

29)     Where names and identifying information pertaining to persons whose right to

personal privacy outweighs the public's right to know, that information would either withheld in

full or deleted from the document released. Release of this information would be determined to

constitute a clearly unwarranted invasion of personal privacy of other third party individuals in a

manner that could subject these persons to harassment.

30)     As stated, EOUSA categorically applied this exemption in conjunction with

exemption (b)(7)(C) to all records requested, which by its language, pertained to a third party

individual (and possibly to others), to protect their personal privacy interests. The categorical

application was appropriate because no consent or authorization to release this information was

provided by Mr. Order to EOUSA in connection with his request.

31)     Each step in the handling of Mr. Order's request has been consistent

with the EOUSA and the USAO's procedures adopted to insure an equitable response to all

persons seeking access to records under the FOIA/PA.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 29 , 2005.

JOHN F. BOSEKER
Attorney Advisor, EOUSA

10

# EXHIBIT A

**AXINN,**
**VELTROP &**
**HARKRIDER LLP**

90 STATE HOUSE SQUARE
HARTFORD, CONNECTICUT O6IO3-37O2
—
TEL:(86O)275-8IOO
FAX:(86O)275-8IOI

RICHARD S. ORDER
(86O) 275-8140
RSO@AVHLAW.COM

1370 AVENUE OF THE AMERICAS
NEW YORK, NY 10019
TEL: (212) 728-2200
FAX: (212) 728-2201
—
1801 K STREET, N.W. SUITE 411
WASHINGTON, D.C. 20006
TEL: (202) 912-4700
FAX: (202) 912-4701

August 18, 2004

<u>VIA FACSIMILE (617-748-3965) AND FIRST-CLASS MAIL</u>

Hon. Michael J. Sullivan
U.S. Attorney for the District of Massachusetts
United States Courthouse, Suite 9200
One Courthouse Way
Boston, MA 02210

   Re:  <u>Freedom of Information Request</u>

Dear United States Attorney Sullivan:

   This letter constitutes a request under the Freedom of Information Act, 5 U.S.C. §552 ("FOIA"). Pursuant to FOIA, we hereby request a copy of:

   1.  All documents, correspondence, records, or files provided by or obtained from John J. Koresko, V, Esq. that refer to, relate to, or reflect (a) Daniel E. Carpenter; (b) Benistar Property Exchange Trust Co., Inc.; (c) Benistar, Ltd.; (d) Benistar 419 Plan Services, Inc.; (e) Benistar 419 Plan; (f) Benistar Admin Services, Inc.; (g) the investigation leading to <u>United States v. Carpenter</u>, Criminal No. 04-10029-GAO; or (h) the case itself after the indictment issued.

   2.  All documents that refer to, relate to, or reflect any conversation with John J. Koresko, V, Esq.

   We look forward to your timely response within 20 business days as required by 5 U.S.C. § 552(a)(6)(A)(i).

        Sincerely,

        Richard S. Order

RSO/pas

CTDOCS:12380.1

# EXHIBIT B

**U.S. Departme⁀ ⁀f Justice**

*Executive Office for United States Attorneys*
*Freedom of Information/Privacy Act Unit*
*600 E Street, N.W., Room 7300*
*Washington, D.C. 20530*
*202-616-6757  Fax 202-616-6478*

OCT 1 5

Request Number: <u>04-3582</u>    Date of Receipt: <u>September 21, 2004</u>

Requester: <u>Richard Order</u>

Subject of Request: <u>Daniel Carpenter</u>

Dear Requester:

The Executive Office for United States Attorneys has received your Freedom of Information Act request and assigned the above number to the request.

You have requested records concerning a third party (or third parties). Records pertaining to a third party generally cannot be released absent express authorization and consent of the third party, proof that the subject of your request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records. Since you have not furnished a release, death certificate, or public justification for release, the release of records concerning a third party would result in an unwarranted invasion of personal privacy and would be in violation of the Privacy Act, 5 U.S.C.§552a. These records are also generally exempt from disclosure pursuant to sections (b)(6) and (b)(7)(C) of the Freedom of Information Act, 5 U.S.C. §552.

We have not performed a search for records and you must not assume that records concerning the third party exist. We will release, if requested, any public records maintained in our files, such as court records and news clippings, without the express of authorization of the third party, a death certificate, or public justification for release. If you desire to obtain public records, if public records exist in our files, please submit a new request for public documents.

Should you obtain the written authorization and consent of the third party for release of the records please submit a new request for the documents accompanied by the written authorization. A form is enclosed to assist you in providing us the authorization and consent of the subject of your request. The authorization must be notarized or signed under penalty of perjury pursuant to 18 U.S.C. §1001.

(Page 1 of 2)
Form 006 - 6/02

This is a final determination and your request for information will be closed.  You may appeal my decision in this matter by writing within 60 days, to:

Office of Information and Privacy
United States Department of Justice
Flag Building, Suite 570
Washington, D.C.  20530

Both the envelope and the letter of appeal must be clearly marked "Freedom of Information Act/Privacy Act Appeal."

After the appeal has been decided, you may have judicial review by filing a complaint in the United States District Court for the judicial district in which you reside or have your principal place of business; the judicial district in which the requested records, if any, are located; or in the District of Columbia.

Sincerely,

Marie A. O'Rourke
Assistant Director

Enclosure

(Page 2 of 2)
Form No. 006 - 6/02

U.S. Department of Justice

# Certification of Identity



**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Failure to furnish this information will result in no action being taken on the request. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to Director, Facilities and Administrative Services Staff, Justice Management Division, U.S. Department of Justice, Washington, DC 20530 and the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1] _____

Citizenship Status [2] _____ Social Security Number [3] _____

Current Address _____

Date of Birth _____ Place of Birth _____

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature [4]** _____ **Date** _____

## OPTIONAL: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

_____
**Print or Type Name**

[1] Name of individual who is the subject of the record sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

# EXHIBIT C



**U.S. Departme   )f Justice**

*Executive Office for United States Attorneys*
*Freedom of Information/Privacy Act Unit*
*600 E Street, N.W., Room 7300*
*Washington, D.C. 20530*
*202-616-6757  Fax 202-616-6478*

Request Number: 04-3583

Subject: Benistar Companies                          OCT  1 3 2004

Requester:  Richard Order

Dear Requester:

    The Executive Office for United States Attorneys (EOUSA) has received your Freedom of Information Act/Privacy Act (FOIA/PA) request. It has been assigned the above number. Please give us this number if you write about your request. If we need additional information, we will contact you within two weeks.

    Your request will be placed in the order in which it was received for processing, unless it is a very large request (Project Request). Then, it will be placed in a separate group of Project Requests, which are also processed in the order received.

    EOUSA makes every effort to process most requests within a month (20 working days). There are some exceptions, for example, Project Requests take approximately nine months to process. Requests for "all information about myself in criminal case files" are usually Project Requests. If you have made such a request, you may either write us and narrow your request for specific items, or you may expect that the processing of your request may take nine months from the date of this letter.

    By making a FOIA/PA request, you have agreed to pay fees up to $25, as stated in 28 CFR §16.3(c), unless you have requested a fee waiver. Please note that pursuant to 28 C.F.R. 16.11, we are required to charge fees for time used to search for the documents you have requested and for duplication of all pages released to you. Normally, search time is charged at a rate of $28 per hour after the first two hours which are free, and duplication fees are $0.10 per page after the first 100 pages which are free. Please do not send any payment at this time! If we anticipate that fees will exceed $25 or the amount you have stated in your letter (if greater than $25), we will normally notify you of our estimate of fees. After we have received your agreement to pay for the expected fees (or you have narrowed your request to reduce fees) and we have processed your request, we will require payment for the accumulated charges before we release documents to you. Without such payment, your request file will be closed without further action.

                                 Sincerely,

                                 *Marie A. O'Rourke*

                                 Marie A. O'Rourke
                                 Assistant Director

                                                 Form No. 001 - 9/03

# EXHIBIT D

# AXINN, VELTROP & HARKRIDER LLP

RICHARD S. ORDER<br>
(860) 275-8140<br>
RSO@AVHLAW.COM

90 STATE HOUSE SQUARE
HARTFORD, CONNECTICUT 06103-3702

TEL: (860) 275-8100
FAX: (860) 275-8101
www.avhlaw.com

1370 AVENUE OF THE AMERICAS<br>
NEW YORK, NY 10019<br>
TEL: (212) 728-2200<br>
FAX: (212) 728-2201<br>
<br>
1801 K STREET, NW, SUITE 411<br>
WASHINGTON, D.C. 20006<br>
TEL: (202) 912-4700<br>
FAX: (202) 912-4701

October 20, 2004

<u>VIA FACSIMILE (202-616-6478) AND U.S. MAIL</u>

Marie A. O'Rourke
Assistant Director
U.S. Department of Justice
Freedom of Information/Privacy Act Unit
600 E Street, NW, Room 7300
Washington, DC 20530

Re:    <u>Freedom of Information Request No. 04-3583</u>

Dear Ms. O'Rourke:

We recently received your correspondence of October 13, 2004, notifying us of the receipt of our Freedom of Information Act (FOIA) Request. We separately received an October 15, 2004 notice stating that our request lacks the authorization necessary to release third-party information. Please find enclosed my letter dated September 23, 2004, to Mary Ellen Barrett of the Boston Office of the U.S. Attorney (OUSA). This letter transmitted an authorization from our client, Daniel Carpenter, permitting the OUSA to release any relevant information regarding him. We trust that this will satisfy the requirements of your office and there will be no further delays in complying with our request.

We have been surprised, disappointed, and frustrated by the delay of over two months since we submitted our FOIA request and the continuing failure of the government to provide any substantive response. We submitted our request to the Boston OUSA on August 18, 2004. After receiving no word from the Boston office for more than 20 days after our initial submission, we contacted Mary Ellen Barrett of that office to check on its status. She informed us that we needed to provide a signed authorization from our client in order for the Office of the U.S. Attorney to respond to our inquiry. We provided such an authorization on September 23rd. Now, more than 18 business days after providing the authorization and 38 business days after our original inquiry, we still have not received the requested documents and it appears that you were unaware of Mr. Carpenter's authorization.

Please let me know whether the authorization I previously submitted is satisfactory for your purposes.

CTDOCS:12783.1

Marie A. O'Rourke
October 20, 2004
Page 2

     We understand that your office deals with a great number of FOIA requests, but we simply wanted to make you fully aware of the background of this particular inquiry.   If there are any other reasons responding to our request might be delayed, please do not hesitate to contact me.

                  Sincerely,

                  Richard S. Order

RSO/pas
Enc.

cc:    Daniel E. Carpenter (w/enc.)
       Mary Ellen Barrett, Esq. (w/enc.)

## Authorization

Daniel E. Carpenter hereby authorizes the Office of the U.S. Attorney to release to the

law firm of Axinn, Veltrop & Harkrider any documents responsive to their Freedom of

Information Request of August 18, 2004.

_____
Daniel E. Carpenter

Sworn to and subscribed before me,
this 2 ℓ day of September, 2004.

_____
Commissioner of the Superior Court
Notary Public
My commission expires:

AMY L. WHALEN
*NOTARY PUBLIC*
MY COMMISSION EXPIRES OCT. 31, 200?

CTDOCS:12622.1CTDOCS:12622.1

# EXHIBIT E



**U.S. Departme ₃f Justice**

*Executive Office for United States Attorneys*
*Freedom of Information/Privacy Act Unit*
*600 E Street, N.W., Room 7300*
*Washington, D.C. 20530*
*202-616-6757  Fax 202-616-6478*

Request Number: 04-4511

Subject: DANIEL CARPENTER/DMA

Requester: RICHARD ORDER

Dear Requester:

    The Executive Office for United States Attorneys (EOUSA) has received your Freedom of Information Act/Privacy Act (FOIA/PA) request. It has been assigned the above number. Please give us this number if you write about your request. If we need additional information, we will contact you within two weeks.

    Your request will be placed in the order in which it was received for processing, unless it is a very large request (Project Request). Then, it will be placed in a separate group of Project Requests, which are also processed in the order received.

    EOUSA makes every effort to process most requests within a month (20 working days). There are some exceptions, for example, Project Requests take approximately nine months to process. Requests for "all information about myself in criminal case files" are usually Project Requests. If you have made such a request, you may either write us and narrow your request for specific items, or you may expect that the processing of your request may take nine months from the date of this letter.

    By making a FOIA/PA request, you have agreed to pay fees up to $25, as stated in 28 CFR §16.3(c), unless you have requested a fee waiver. Please note that pursuant to 28 C.F.R. 16.11, we are required to charge fees for time used to search for the documents you have requested and for duplication of all pages released to you. Normally, search time is charged at a rate of $28 per hour after the first two hours which are free, and duplication fees are $0.10 per page after the first 100 pages which are free. Please do not send any payment at this time! If we anticipate that fees will exceed $25 or the amount you have stated in your letter (if greater than $25), we will normally notify you of our estimate of fees. After we have received your agreement to pay for the expected fees (or you have narrowed your request to reduce fees) and we have processed your request, we will require payment for the accumulated charges before we release documents to you. Without such payment, your request file will be closed without further action.

    Sincerely,

*Marie A. O'...*

Marie A. O'Rourke
Assistant Director

Form No. 001 - 9/03

Note: Your request for records on Daniel Carpenter is being expedited.  We are sorry for the delay.  We can not guarantee that records will be released within the statutory time limits.

# EXHIBIT F



**U.S. Departmc  )f Justice**

*Executive Office for United States Attorneys*
*Freedom of Information/Privacy Act Unit*
*600 E Street, N.W., Room 7300*
*Washington, D.C. 20530*
*202-616-6757  Fax 202-616-6478*

FEB 1 8 2004

Request Number: __05-388_____   Date of Receipt: __9/24/04_____

Requester: __Richard S. Order_____

Subject of Request: __John J. Koresko V, Esq. etc._____

Dear Mr. Order:

   The Executive Office for United States Attorneys ("EOUSA") has previously advised you that it received your Freedom of Information Act ("FOIA") request.  The request was assigned numbers 04-3582, 04-3593, and 04-4511, respectively reflecting EOUSA's initial reading of the subjects identified by your letter: Daniel Carpenter (categorical denial as a third party absent authorization), Banistar companies, and Daniel Carpenter (authorization provided, new file opened).  Upon re-reading your request, EOUSA is revising the previous replies, closing all presently open files, and assigning the above referenced new number to the request, which is concerning Mr. John J. Koresko V, Esq..  This letter constitutes the reply and position of EOUSA regarding your request under the FOIA.

   You have requested records concerning a third party, John J. Koresko V, Esq. and "all documents, correspondence, records, or files provided by or obtained from" him "that refer to, relate to, or reflect" subject items set forth as (a)-(h) of your letter, and "all documents" of "any conversation" with Mr. Koresko.  EOUSA can neither confirm nor deny that such records exist. If in fact, they did exist, all such records as you have requested cannot be released absent express authorization and consent of the third party, Mr. Koresko, proof that the he is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records.  Since you have not furnished a release, death certificate, or public justification for release, the release of records concerning the third party, Mr. Koresko, would result in an unwarranted invasion of personal privacy and would be in violation of the Privacy Act, 5 U.S.C.§552a.  These records are also categorically exempt from disclosure pursuant to sections (b)(6) and (b)(7)(C) of the Freedom of Information Act, 5 U.S.C. §552.

   We have not performed a search for records and, as stated above, you must not assume that the records you seek concerning Mr. Koresko exist.

Should you obtain the written authorization and consent of the third party, Mr. Koresko, for release of the subject records please submit a new request for the documents accompanied by the written authorization. A form is enclosed to assist you in providing us the authorization and consent of the subject of your request. The authorization must be notarized or signed under penalty of perjury pursuant to 18 U.S.C. §1001.

This is a final determination and your request for information will be closed. You may appeal my decision in this matter by writing within 60 days, to:

Office of Information and Privacy
United States Department of Justice
Flag Building, Suite 570
Washington, D.C.  20530

Both the envelope and the letter of appeal must be clearly marked "Freedom of Information Act/Privacy Act Appeal."

After the appeal has been decided, you may have judicial review by filing a complaint in the United States District Court for the judicial district in which you reside or have your principal place of business; the judicial district in which the requested records, if any, are located; or in the District of Columbia.

Sincerely,

Marie A. O'Rourke
Assistant Director

Enclosure

4-694a (Rev. 12-4-86)

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b) (1)  (A)  specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

(b) (2)  related solely to the internal personnel rules and practices of an agency;

(b) (3)  specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b) (4)  trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b) (5)  inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b) (6)  personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b) (7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life of physical safety of any individual;

b) (8)  contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

b) (9)  geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

d) (5)  information compiled in reasonable anticipation of a civil action proceeding;

j) (2)  material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals, except records of arrest;

k) (1)  information which is currently and properly classified pursuant to Executive Order 12356 in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

k) (2)  investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

k) (3)  material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

k) (4)  required by statute to be maintained and used solely as statistical records;

k) (5)  investigatory material compiled solely for the purpose of determining suitability eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his identity would be held in confidence;

k) (6)  testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

k) (7)  material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his identity would be held in confidence.

FBI/DOJ

# EXHIBIT G

# AXINN, VELTROP & HARKRIDER LLP

90 STATE HOUSE SQUARE

HARTFORD, CONNECTICUT 06103-3702

TEL:(860) 275-8100
FAX:(860) 275-8101
www.avhlaw.com

1370 AVENUE OF THE AMERICAS
NEW YORK, NY 10019
TEL: (212) 728-2200
FAX: (212) 728-2201

1801 K STREET, NW, SUITE 411
WASHINGTON, D.C. 20006
TEL: (202) 912-4700
FAX: (202) 912-4701

March 21, 2005

**BY FAX**

William Collier, Esq.
Assistant U.S. Attorney
450 Main Street, Rm. 328
Hartford, CT 06103

> Re:    Carpenter v. U.S. Department of Justice, et al.,
>          Civil Action No. 3:05 CV 172 (AWT)

Dear Bill:

I am writing to follow up on our conversation of March 15, 2005 regarding the government's Answer and Affirmative Defenses of March 10, 2005 and its potential defenses to Mr. Carpenter's Freedom of Information (FOIA) Complaint. As we discussed, the "Glomar defense" and FOIA exemptions 4 and 7 are simply inapplicable to this case.

The government has improperly refused to confirm or deny the existence of the requested documents, Answer ¶¶ 2 and 18, based on what you told me was a desire to preserve the ability to raise a "Glomar defense." According to the Department of Justice FOIA Update Vol. VII, No. 1, Winter 1986 at 1, a Glomar defense is used to protect documents requested by a third party that would reveal that the subject of the request has been investigated by the government. (As you know, FOIA Updates are available at http://www.usdoj.gov/oip/foia_updates). Such documents must be protected, it is reasoned, because by simply revealing that a person is the subject of a law enforcement investigation a government agency has invaded that person's privacy in violation of FOIA exemption 7(C).

Here, Mr. Carpenter has requested documents provided by or obtained from John J. Koresko, V that relate to Mr. Carpenter, a number of businesses with which he is affiliated, the investigation leading to United States v. Carpenter, Criminal No. 04-10029-GAO or the criminal matter itself. Mr. Carpenter has also requested documents that reflect any conversations with Mr. Koresko.

CTDOCS:13787.1

William Collier, Esq., AUSA
March 21, 2005
Page 2

Because the investigation of Mr. Carpenter has been made public through his indictment and he has authorized the release of the requested information, it appears that the only conceivable application of the Glomar defense would be to protect information gathered as part of an investigation of Mr. Koresko. To the extent that Mr. Carpenter's FOIA request can be contorted to ask for documents pertaining to an investigation of Mr. Koresko, Mr. Carpenter hereby expressly excludes such documents from his FOIA request. Such a clarification should alleviate any possible, legitimate concerns of the government and eliminate the need to be evasive about the existence of the documents sought by Mr. Carpenter, thereby rendering the Glomar defense inapplicable.

During our phone conversation of March 15th you also alluded to the possibility that the government would seek to withhold any responsive documents pursuant to FOIA Exemption 4, which protects (1) trade secrets and (2) information that is (a) commercial or financial, and (b) obtained from a person, and (c) privileged or confidential. The term "trade secret" is narrowly applied in FOIA jurisprudence and is not applicable to the documents Mr. Carpenter seeks. The phrase "privileged or confidential" has been defined as information likely to "(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." Department of Justice FOIA Guide, 2004, Exemption 4 available at http://www.usdoj.gov/oip/exemption4.html. The information Mr. Carpenter seeks, however, clearly involves allegations about his own businesses and therefore cannot be properly withheld under Exemption 4.

Mr. Koresko is a competitor of Mr. Carpenter's in the benefit plan administration business. We know that Mr. Koresko has sent documents to the U.S. Attorney's Office because in several lawsuits he has made references to such deliveries and to sending documents to other government officials, including Congressmen, Department of Labor officials, and district court judges. The materials he has sent them contain defamatory statements about Mr. Carpenter. It is clear that Mr. Koresko has been taking advantage of this unfortunate indictment to denigrate Mr. Carpenter with respect to matters completely irrelevant to the indictment.

Over seven months have passed since Mr. Carpenter made his original request under the Freedom of Information Act. During that time, the government has engaged in highly questionable foot-dragging, stonewalling, and double-talk that offend and undermine the very purpose of the Act. The government perpetuates this behavior, which is unbecoming of a free, open democratic society. As made clear above, the Glomar defense and FOIA exemptions 4 and 7 are simply inapplicable here, and the government's approach is bordering on a Rule 11 violation.

William Collier, Esq., AUSA
March 21, 2005
Page 3

We request that the government honor the spirit and letter of FOIA and respect the rights of its citizens to production of documents about them in the government's files. As I told you before, Mr. Carpenter is willing to withdraw his legitimate claim for attorney's fees if the documents are produced immediately. At this point, he will do so if the requested documents are produced to and received by us on or before Monday, March 28, 2005.

Sincerely,

Erin M. Boggs, Esq.

EMB/pas

cc: Daniel E. Carpenter
Richard S. Order, Esq.

CTDOCS:13787.1

3