UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                         )
DANIEL E. CARPENTER,                     )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )     No. 05-cv-11012-MEL
                                         )
UNITED STATES DEPARTMENT OF              )
JUSTICE and THE UNITED STATES            )
ATTORNEY FOR THE DISTRICT OF             )
MASSACHUSETTS,                           )
                                         )
        Defendants.                      )
                                         )
```

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO GOVERNMENT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff Daniel E. Carpenter, by his undersigned counsel, respectfully submits this memorandum of law in opposition to the Government's Cross-Motion for Summary Judgment dated July 1, 2005. As previously explained in Plaintiff's Emergency Motion for Summary Judgment dated June 17, 2005 ("Emergency Motion"), the Government has refused to produce documents properly requested by plaintiff under the Freedom of Information Act ("FOIA") without conducting any search for the requested documents, producing a *Vaughn* Index, or acknowledging whether the requested documents even exist. Nothing put forth by the Government in its Consolidated Memorandum in Support of Government's Motion for Summary Judgment And in Opposition to Plaintiff's "Emergency" Motion for Summary Judgment dated July 1, 2005 ("Consolidated Brief") alters the conclusion that, under the facts presented in this case, plaintiff is entitled to summary judgment in its favor.

The Government rests its cross-motion for summary judgment on the argument, raised in this action for the first time, that the release of records requested by plaintiff is prohibited by the

Privacy Act, 5 U.S.C. § 552a, and, therefore, exempt from production under FOIA, 5 U.S.C. §§ 552(b)(6) and (b)(7)(C), based on the erroneous assertion that the subject of the requested documents is non-party John Koresko. See Consolidated Brief at 3. In actuality, however, plaintiff's FOIA request specifically seeks documents pertaining only to **plaintiff**, not Mr. Koresko. See Plaintiff's L.R. 56.1 Statement of Material Facts dated June 17, 2005 ¶ 1; Emergency Motion at 8.

The Government also raises for the first time in its Consolidated Brief the bizarre and highly improper argument that a *Glomar* response is appropriate in this case, and, therefore, the Government is not required to conduct a search for the requested documents or even confirm whether such documents exist. See Consolidated Brief at 6. As explained below, this argument cannot hold water.

Furthermore, with regard to the Government's request at page 3 of its Consolidated Brief that the Office of the United States Attorney be dismissed as a defendant in this action, the Government errs yet again by arguing that jurisdiction under FOIA does not extend to the U.S. Attorney's office. To the contrary, the U.S. Attorney's Office is clearly an agency for the purposes of FOIA as defined in 5 U.S.C. §§ 551(1) and 552(f)(1) and is, therefore, a proper party to this action.

The Government's cross-motion for summary judgment should, therefore, be denied, and the plaintiff's emergency motion for summary judgment should be granted.

## FACTS

Plaintiff incorporates herein its L.R. 56.1 Statement of Material Facts of Record dated June 17, 2005 as well as the "Facts" portion of its Emergency Motion for Summary Judgment dated June 17, 2005, pages 2-5.

2

Additionally, on February 6, 2004, The Boston Globe published an article explaining that

the U.S. Attorney's office had recently been criticized by a federal district court judge for

improperly focusing on guns and drug cases rather than white collar crime and political graft.

See "Judge Wolf Raps Focus on Guns, Drugs in U.S. Docket," The Boston Globe (Feb. 6, 2004),

a copy of which is attached hereto as **Exhibit A**.

## ARGUMENT

## POINT I

### THE GOVERNMENT IMPROPERLY RELIES ON CONCLUSORY ALLEGATIONS FOR ITS IMPROPER REFUSAL TO CONDUCT A FOIA SEARCH, PRODUCE A VAUGHN INDEX OR REDACT DOCUMENTS

In order to prevail in its refusal to comply with plaintiff's FOIA request, the Government

must prove that each requested document has either been produced, is unidentifiable, or is

wholly exempt from production under FOIA. See Conservation Law Foundation of New

England, Inc. v. Dep't of the Air Force, 1986 U.S. Dist. LEXIS 27293, *11 (D. Mass. Apr. 2,

1986) (citing National Cable Television Ass'n v. FCC, 479 F.2d 183, 186 (D.C. Cir. 1973)). The

Government must sustain its burden by submitting detailed affidavits that identify the documents

at issue and that explain why they fall under the claimed exemptions. See U.S. Dep't of Justice

v. Landano, 508 U.S. 165, 176-80 (1993); Church of Scientology Int'l v. U.S. Dep't of Justice,

30 F.3d 224, 233-35 (1st Cir. 1994). Conclusory declarations, such as those relied on by the

Government in this case, are insufficient to sustain this burden.

For example, the First Circuit in Church of Scientology, supra, found that it could not

meaningfully evaluate the Government's assertion of FOIA exemptions where

[t]he declarations submitted with the [Vaughn] index contain only **general and conclusory assertions** concerning the documents. For example, with respect to documents claimed to be exempt under the privacy provision, Exemption 7(C) . . .

3

, the Boseker[1] declaration first describes the types of information to which the exemption applies, and then states categorically that "there was no public interest in the release of this information nor any interest which would counterbalance the individual's privacy in the information withheld under this exemption."

Id. at 231 (emphasis added). The court further found that the Government's declarations

> treat the documents within various exemption categories as a group, **without referring to specific documents**, and make **broad statements** essentially explaining that the documents were withheld because they contain the type of information generally protected by that particular exemption. The statements regarding segregability are **wholly conclusory**, providing no information that would enable a requester to evaluate the agency's decisions. Thus, none of the functions of the index identified in Maynard are served: the declarations do not demonstrate careful analysis of each document by the government; the **court has not been assisted in its duty of ruling on the applicability of an exemption**; and the adversary system has not been visibly strengthened.

Id. (emphasis added).

As in Church of Scientology, the Government in this action has offered only conclusory

declarations for its determination that the requested documents are exempt from production

under FOIA. For example, the Declaration of John F. Boseker dated June 29, 2005 ("Boseker

Decl."), submitted with the Government's cross-motion for summary judgment, states merely

that:

> 16) EOUSA is prohibited by [the Privacy Act] from disclosing any information of the information sought by the plaintiff in this case, since as stated above, the information sought, if such exists, pertains to and belongs to Mr. Koresko, a third party individual, who has provided no authorization for disclosing this information to the plaintiff. Indeed, EOUSA is prohibited from disclosing the existence of such records or anything regarding the contents of such records absent this authorization. Since this is the case, EOUSA reiterates **that no search was performed for such records**, as even acknowledging their existence would violate the Privacy Act.
>
> . . . .
> . . . .

---

[1] Apparently, Mr. Boseker has also been involved for at least the past decade in cases where the Executive Office for United States Attorneys has resisted FOIA requests and has not learned from the First Circuit's admonition in Church of Scientology.

4

19) EOUSA has taken the position that it can **neither confirm nor deny the existence of the records** sought by Mr. Order. In conjunction with this position, no search for records is warranted.

Boseker Decl. ¶¶ 16, 19 (emphasis added).

The Government in this case has not conducted any kind of search for the requested documents, much less provided an index of available documents sufficient to enable the Court to evaluate the Government's conclusory assertion that the requested documents are exempt under the Privacy Act. Furthermore, the Government has offered no indication "why privacy concerns could not be met simply by deleting identifying information" and providing redacted documents. Church of Scientology, 30 F.3d at 232. Under 5 U.S.C. § 552(b), the Government is required to provide "[a]ny reasonably segregable portion of a record . . . to any person requesting such record after deletion of the portions which are exempt under this subsection." See also Paterson v. IRS, 56 F.3d 832 (7th Cir. 1995) (where government contended that Exemption 7(c) applied, it was under obligation to release redacted material); Terkel v. Kelly, 599 F.2d 214 (7th Cir. 1979) (where government alleged that Privacy Act barred disclosure, it was obligated to redact identifying data and disclose remainder of the documents). The Government has failed to meet any of these FOIA requirements.

## POINT II

### THE GOVERNMENT MAY NOT MAKE A *GLOMAR* RESPONSE WHERE DISCLOSURE DOES NOT IMPACT NATIONAL SECURITY AND REQUESTED MATERIALS DO NOT CONTAIN CLASSIFIED INFORMATION

The Government argues for the first time in its cross-motion that its continued refusal to confirm or deny the existence of the requested documents is justified under the so-called *Glomar* response. See Consolidated Brief at 6. FOIA permits the Government to make a *Glomar* response when inferences from *Vaughn* indexes or selective disclosure could reveal classified

5

sources or methods of obtaining foreign intelligence. Only in the limited circumstance where "the Agency can demonstrate... that release of the requested information can reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods" may the Government refuse to confirm or deny the existence of records. Phillippi v. CIA, 546 F.2d 1009, 1015 (D.C. Cir. 1976). See also Bassiouni v. CIA, 392 F.3d 244, 246 (7th Cir. 2004) ("Every appellate court to address the issue has held that the FOIA permits the [agency] to make a '*Glomar* response' when it fears that inferences from *Vaughn* indexes or selective disclosure could reveal classified sources or methods of obtaining foreign intelligence.").

The Government has admitted that the disclosure of documents requested by plaintiff in this case implicates no national security concerns. On page 8 of its Consolidated Brief, the Government states that its "reasoning for not disclosing the existence of records is to avoid violating federal law and the rights of a third party," not to avoid endangering national security. The Government accurately admits that "this case is **unlike** the government's position in Phillipi [sic], where the refusal to admit the existence of certain documents was based on national security concerns." Consolidated Brief at 8 (emphasis added). In Phillippi, supra, the plaintiff sought information about the Hughes Glomar Explorer, "a ship built (we now know) to recover a sunken Soviet submarine, but disguised as a private vessel for mining manganese nodules from the ocean floor." Bassiouni, 392 F.3d at 246. The information sought by Phillippi clearly affected national security, unlike the information sought by plaintiff in the instant action.

In contrast to Phillippi, the Government asserts only a nebulous third-party privacy interest in not being associated with a criminal prosecution for its refusal to search for and produce documents, relying "generally" on U.S. Dept. of Justice v. Reporters' Committee for Freedom of the Press, 489 U.S. 749 (1989), a case which concerns privacy and the disclosure of

6

criminal records. Consolidated Brief at 7. What the Government fails to mention, however, is that Reporters' Committee did not actually involve a *Glomar* response. The Court in Reporters' Committee **did not even comment** on the Government's ability to make a *Glomar* response. Rather, the Reporters' Committee decision revolved around a refusal by the Department of Justice to say whether or not a third party had a criminal record in response to a FOIA request that hinged entirely on just such an admission or denial.

The Government also mistakenly relies on Hunt v. CIA, 981 F.2d 1116 (9th Cir. 1992). As discussed above in the context of Phillippi, however, Hunt stands only for the proposition that a *Glomar* response may be given when the materials requested contain classified information or the release of documents affects national security. See Hunt, supra, at 1116. See also CIA v. Sims, 471 U.S. 159 (1985); Miller v. Casey, 730 F.2d 773 (D.C. Cir. 1984); Gardels v. CIA, 689 F.2d 1100, 1105 (D.C. Cir. 1982). In the undisputed absence of such circumstances in the instant action, not a single case supports the Government's contention that it may arrogate unto itself the right to "decline" to confirm or deny the existence of the records, conduct an adequate search, or produce a *Vaughn* index.

## POINT III

### THE GOVERNMENT'S RELIANCE ON PRIVACY ACT AS AN APPLICABLE FOIA EXEMPTION IS MISPLACED

## A. The Privacy Act Does Not Prohibit the Production of Documents in This Case, as Plaintiff Has Requested Documents That Pertain Only to Himself and His Companies

The Privacy Act expressly shields a record from dissemination without the written consent of "the individual to whom the record pertains." 5 U.S.C. § 552a(b). In arguing that the Privacy Act exempts from production those documents requested in plaintiff's FOIA request, the Government relies on the contorted argument that plaintiff has requested documents "pertaining

to" third-party John J. Koresko, V. However, in order for a document to qualify as a "record" under the Privacy Act, the document "must reflect some quality or characteristic of the individual involved." Boyd v. Secretary of the Navy, 709 F.2d 684, 686 (11th Cir. 1983) (citing S. Rep. No. 1183, 93d Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Ad. News 6916, 6926-28, 6966); see also American Federation of Gov't Emp. v. N.A.S.A., 482 F. Supp. 281, 283 (D.C. Tex. 1980) (Congress was "preoccupied with information that is substantively, i.e., in and of itself, reflective of some quality or characteristic of an individual."); Houston v. United States Dept. of Treasury, 494 F. Supp. 24, 27-29 (D.D.C. 1979) (showing that Act was intended to protect only personal information, not all information in the hands of government officials).

Under this explanation of the types of records protected by the Privacy Act, the Government's exemption argument cannot stand. Plaintiff has not requested documents reflecting some personal quality or characteristic of Mr. Koresko, but only documents pertaining to plaintiff himself and plaintiff's companies. See Plaintiff's L.R. 56.1 Statement of Material Facts dated June 17, 2005 ¶ 1; Emergency Motion at 8.

Furthermore, the Government's reliance on the decision in Reporters' Committee for its assertion of a privacy exemption in this case is misplaced. The Court in Reporters' Committee did not establish that an individual has a privacy interest in information he or she supplies **about someone else** to a government agency. Rather, the Reporters' Committee Court held only that individuals have a privacy interest in their **own** criminal records. 489 U.S. at 751. The Government's bald assertions that "Mr. Koresko has a strong interest in not being implicated in Plaintiff's criminal investigation" and that he is an "individual to whom the records pertain," Consolidated Brief at 9, are, therefore, absurd and unsupported by any case law or canon of statutory construction. Mr. Koresko has no privacy right to shield from disclosure documents

8

about Mr. Carpenter that Mr. Koresko volunteered to the Government.[2]  Therefore, the

Government's insistence that Mr. Carpenter furnish it with authorization from Mr. Koresko for

the disclosure of the requested documents defies logic, violates FOIA, and constitutes

impermissible stonewalling.

**B.      FOIA Exemption 7(C) Does Not Apply to Plaintiff's Request**

The statutory exemption contained within 5 U.S.C. § 552(b)(7)(C) protects from

disclosure "records or information compiled for law enforcement purposes, but only to the extent

that the production of such law enforcement records or information . . . could reasonably

constitute an unwarranted invasion of personal privacy."  The Government relies on this FOIA

exemption as grounds for refusing to search for or produce those documents requested by

plaintiff.  Consolidation Brief at 9-13.  However, none of the cases cited by the Government in

support of its argument are applicable to the instant action.

First, the documents covered by exemption 7(C) in the Government's cited cases of

Maynard, Fitzgibbon, Quinon and Branch "pertained to" the actual individual whose privacy

rights were affected.  In contrast to these four cases, the FOIA request in the instant action does

not call for the production of such personal information regarding a third party as to implicate

privacy rights.

---

[2]  In an affidavit filed by Mr. Koresko on May 5, 2004 in an unrelated case in the United States District Court for the Eastern District of Pennsylvania, Chao v. Koresko, Case No. 04:MC:00074 (MAM) ("Koresko Affidavit"), Mr. Koresko **voluntarily disclosed** the fact that he had assisted Assistant U.S. Attorney Michael Pineault in the U.S. Attorney's investigation of Mr. Carpenter.  As stated in a letter dated February 25, 2004 from Congressman Jim Gerlach to the Department of Labor Regional Director, attached to the Koresko Affidavit as Exhibit A, "Mr. Koresko has been of assistance to your office, the Boston office of DOL/EBSA and Assistant U.S. Attorney Michael Pineault in the Boston office of the United States Attorney."  Emergency Motion at 7-8; Plaintiff's L.R. 56.1 Statement of Materials Facts of Record dated June 17, 2005 ¶ 17.  The Koresko Affidavit and Exhibit A thereto are attached hereto as **Exhibit B**.

Second, whereas the privacy concern in <u>Maynard</u>, <u>Fitzgibbon</u>, <u>Quinon</u> and <u>Branch</u> revolved around a reputable individual becoming "associated unwarrantedly with alleged criminal activity," <u>Fitzgibbon v. CIA</u>, 911 F.2d 755, 766 (D.C. Cir. 1990), such is not the case in the instant action.  In contrast to the situations in <u>Branch</u> and <u>Fitzgibbon</u> where the mere revelation of an individual's name in an FBI file would, in the view of the court, "engender comment and speculation and carry a stigmatizing condition," <u>Fitzgibbon</u>, <u>supra</u>, at 766, and unlike <u>Quinon</u> where the plaintiffs, without "a single speck of evidence," accused the chief judge of the Eleventh Circuit of wrongdoing, <u>Quinon v. FBI</u>, 86 F.3d 1222, 1231 (D.C. Cir. 1996), the plaintiff in this action seeks only information from the Government implicating **himself**, not Mr. Koresko.

Furthermore, Mr. Koresko's privacy interest in the requested documents does not even rise to the level of that in the last of the cases cited by the Government, <u>Maynard v. CIA</u>, 986 F.2d 547, 566 (1st Cir. 1993), in which the interest of FBI agents, witnesses, and subjects in keeping their names and identifying data private was held to be a mere "non-zero privacy interest."  Plaintiff has not requested Mr. Koresko's name or identifying data, nor has the Government alleged that there is a potential for Mr. Koresko to be branded a criminal if the requested information is revealed.  Therefore, the only privacy interest Mr. Koresko could possibly possess in the requested documents revolves around the revelation of the fact that he was a government informant in the criminal investigation against plaintiff.  Koresko has, however, already voluntarily made this information public.  <u>See</u> footnote 2, above.

Therefore, because Mr. Koresko has already made public the fact that he acted as an informant in the U.S. Attorney's investigation of Mr. Carpenter, Mr. Koresko no longer has valid privacy rights in that information   <u>See</u>, <u>e.g.</u>, <u>Detroit Free Press, Inc. v. DOJ</u>, 73 F.3d 93 (6th Cir.

10

1996) (individuals' privacy rights in the release of their mug shots not implicated because their names had already been divulged to the public). Therefore, the privacy exemption of 5 U.S.C. § 552(b)(7)(C) does not provide a valid defense to plaintiff's FOIA request.

**C.    Any Minimal Privacy Interest Held By Mr. Koresko in the Requested Documents Is Outweighed by the Public Interest in Disclosure**

As part of its argument for the application of Exemption 7(C) to the documents requested by plaintiff in this action, the Government mistakenly asserts that the only interest in disclosure of the requested documents is a purely private interest on plaintiff's part and cites for this proposition plaintiff's failure thus far to assert any public interest in disclosure. See Consolidated Brief at 12. The Government's reliance on plaintiff's failure to articulate a public interest before now is misplaced, however, in light of the fact that, until the filing of its cross-motion for summary judgment, the Government never asserted a valid FOIA exemption in this action. See Answer ¶¶ 1-30. Therefore, until a FOIA exemption was asserted, no balancing of private versus public interests was feasible, and it was not incumbent on plaintiff to assert a public interest justification. After all, the FOIA statute does not require a requester to explain why he seeks the requested documents. See 5 U.S.C. § 552(a)(4)(B).[3]

**1.    There Is a Strong Public Interest in Disclosure of the Requested Documents**

In any event, there is clearly a strong public interest in the disclosure of the requested documents in this case. As the Government itself notes, a cognizable public interest for the purposes of FOIA is "the citizens' right to be informed about 'what their government is up to.'"

---

[3]  The Government also falsely asserts that plaintiff engaged in dilatory conduct by "refusing to file in the correct jurisdiction." Consolidated Brief at 5-6 n.6. However, FOIA's venue provision permits filing in the district where the requester resides or works. See 5 U.S.C. § 552. Therefore, it is not the plaintiff, but the **Government** that has improperly delayed this action by moving for a change of venue from the district of plaintiff's residence and office after refusing for five months to comply with plaintiff's FOIA request.

11

Consolidation Brief at 11 (quoting Reporters' Committee, 489 U.S. at 773). The "crystal clear" objective of FOIA is to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted). Even information concerning individual citizens may well shed light on government inaction, error or misconduct. See, e.g., Detroit Free Press v. DOJ, 73 F.3d 93, 97-98 (6th Cir. 1996) (finding, e.g., that "release of a photograph of a defendant can more clearly reveal the government's glaring error in detaining the wrong person for an offense" and holding, therefore, that disclosure of mug shots of indicted individuals was in public interest); O'Neill, Lysaght & Sun v. DEA, 951 F. Supp. 1413, 1423-24 (C.D. Cal. 1996) (holding that disclosure of DEA file regarding confidential informant was warranted by public interest in, e.g., exposing the implications of the government dealing with untrustworthy paid informants).

As the Government repeatedly reminds the Court in this case, plaintiff's FOIA request seeks information relating to a criminal case pending against him.[4] Plaintiff seeks to obtain information concerning the Government's criminal investigation, including its reliance on an untrustworthy informant, Mr. Koresko. Such a purpose is clearly within the public interest identified in Reporters' Committee, Rose, Detroit Free Press and O'Neill, above. It is, after all, in every citizen's interest to ensure that the criminal justice system, where an accused's actual liberty is at stake, works fairly and is not abused. Where, as in O'Neill, a plaintiff has a good faith basis to believe that a confidential informant has provided inaccurate information to the

---

[4] The Government, for some inexplicable reason, seems to feel that plaintiff's involvement in a separate criminal trial has some bearing on whether plaintiff is entitled to the requested documents under FOIA, arguing, for example, at pages 5-6 of its Consolidation Brief that "[p]laintiff should not be able to avoid proper criminal discovery requests by invoking FOIA." Plaintiff's involvement in a separate criminal trial is irrelevant, however, to the instant action. Plaintiff is as entitled to make a FOIA request and seek to "open agency action to the light of public scrutiny" as any other individual. Reporters' Committee, 489 U.S. at 742. In any event, on June 30, 2005, a day before defendants filed their cross-motion, Judge O'Toole ordered the Government in the criminal case to produce the requested materials for his in camera inspection. See **Exhibit C**, attached.

12

Government, the plaintiff's status as a criminal defendant should work in **favor** of, not against, the public's interest in disclosure.

Finally, as further support for the conclusion that disclosure of information regarding the Government's criminal investigation of plaintiff will serve the public interest, plaintiff directs the Court's attention to a February 6, 2004 article in The Boston Globe entitled "Judge Wolf Raps Focus on Guns, Drugs in U.S. Docket," attached hereto as **Exhibit A**, which reports on criticism leveled at U.S. Attorney Michael Sullivan by District Court Judge Wolf, accusing the U.S. Attorney of improperly focusing on guns and drug cases rather than white collar crime and political graft. Significantly, within days of Judge Wolf's criticism, plaintiff was indicted on mail and wire fraud charges. Such a series of events clearly raises suspicions of unfair selective prosecution of plaintiff by the U.S. Attorney in an attempt to respond to Judge Wolf's criticism. Plaintiff believes that the U.S. Attorney's office was improperly influenced in its decision to prosecute him by irrelevant materials submitted by Mr. Koresko, a business competitor of plaintiff who has waged a negative publicity and litigation campaign against him. Plaintiff is, therefore, entitled under FOIA to documents that can help to shed light on possible Government misconduct. Consequently, it is in the public interest to grant disclosure of the requested documents.

## 2.    The Government Errs in Arguing That Mr. Koresko's Privacy Interests Warrant Categorical Balancing Regarding the Requested Documents

The Government's argument at page 13 of its Consolidated Brief that "categorical withholding" of the requested documents is necessary in light of Mr. Koresko's privacy interests is nonsensical and relies on an erroneous description of SafeCard Services, Inc. v. SEC, 926 F.2d 1197 (D.C. Cir. 1991). Whereas the Government argues that the holding in SafeCard requires that "personal information in law enforcement records" be "categorically withh[eld]" under

13

Exemption 7(C), Consolidated Brief at 13, the full holding in SafeCard actually reads more narrowly:

> We now hold categorically that, unless access to the **names and addresses** of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure.

926 F.2d at 1206 (emphasis added).

Plaintiff in this action does not seek the names and addresses of any private individuals in law enforcement files. Therefore, the narrow holding of SafeCard does not warrant a blanket denial of his FOIA request. Furthermore, plaintiff has no objection to any legitimate redaction by the Government of any such protected information that may be contained within the requested documents. In any event, as discussed above, Mr. Koresko has no significant privacy interests in the requested documents sufficient to satisfy the standards of the Privacy Act, and Exemption 7(C) does not, therefore, apply.

**D.    FOIA Exemption 6 Does Not Apply to Plaintiff's Request**

The Court should reject the Government's argument based on 5 U.S.C. § 552(b)(6) for the same reasons as discussed with regard to § 552(b)(7)(C). Furthermore, where the basis of non-disclosure is a "similar files" exemption alleged in concert with Exemption 7, "Exemption 6 affords [the Government] far less protection against compelled disclosure." Providence Journal Company v. United States Dep't of Army, 981 F.2d 552, 567 n.18. (1st Cir. 1992).

## POINT IV

### THE UNITED STATES ATTORNEY IS A PROPER DEFENDANT AND SHOULD NOT BE DISMISSED

The Government's argument at pages 3-4 of its Consolidated Brief that the U.S. Attorney for the District of Massachusetts is not an "agency" subject to federal court jurisdiction in FOIA

14

actions is preposterous. As the Government itself states, an "agency" for purposes of FOIA is defined to include "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (**including the Executive Office of the President**), or any independent regulatory agency." 5 U.S.C. § 552(f)(1) (emphasis added). It is clear from this definition that FOIA "agencies" are not limited to executive departments alone, but may include even the Office of the President himself. Therefore, the Government's bald assertion that "individuals, such as the U.S. Attorney" cannot qualify as agencies under FOIA is nonsensical. Consolidated Brief at 4.

Furthermore, merely because the Department of Justice is an executive department, and thus an agency for purposes of FOIA, does not mean that another agency under its control is not a proper FOIA defendant. See, e.g., Gutman v. United States DOJ, 238 F. Supp. 2d 284, 288 (D.D.C. 2003) (noting that U.S. Attorney's office is a division of the DOJ). As defined in 5 U.S.C. § 551(1), an "agency" includes "each authority of the Government of the United States, **whether or not it is within or subject to review by another agency**." Emphasis added. Moreover, none of the exceptions set forth in § 551(1) apply to the office of the United States Attorney for the District of Massachusetts.

Finally, the Government's contention that the U.S. Attorney is an individual and not, therefore, a viable FOIA defendant, despite the pendency of competing summary judgment motions, is ludicrous and apparently stems from political motivations and the Government's concerns about possible publicity surrounding this case. The statutory language of 5 U.S.C. §§ 551(1) and 552(f)(1) clearly does not immunize the U.S. Attorney from party status in this FOIA action, and the Government's request that the U.S. Attorney be dismissed from this case should, therefore, be denied.

15

## CONCLUSION

For the foregoing reasons, the Court should deny the Government's Cross-Motion for

Summary Judgment and its request for the dismissal of defendant U.S. Attorney for the District

of Massachusetts and, instead, grant Plaintiff's Emergency Motion for Summary Judgment.

Dated:  July 12, 2005                         PLAINTIFF,
                                              DANIEL E. CARPENTER,

                                      By:  /s/ Jack E. Robinson____
                                           Jack E. Robinson, Esq.
                                           (BBO #559683)
                                           2187 Atlantic Street
                                           Stamford, CT 06902
                                           Tel.:  (203) 425-4500
                                           Fax:  (203) 425-4555
                                           E-mail: Robinsonesq@aol.com

                                           Richard S. Order, Esq.
                                           Axinn, Veltrop & Harkrider LLP
                                           90 State House Square
                                           Hartford, CT 06103
                                           Tel.:  (860) 275-8100
                                           Fax:  (860) 275-8101
                                           E-mail: rso@avhlaw.com

A

FOCUS - 1 of 1 DOCUMENT

Copyright 2004 Globe Newspaper Company
The Boston Globe

February 6, 2004, Friday ,THIRD EDITION

**SECTION:** METRO/REGION; Pg. A27

**LENGTH:** 1114 words

**HEADLINE:** JUDGE WOLF RAPS FOCUS ON GUNS, DRUGS IN US DOCKET

**BYLINE:** By Shelley Murphy, Globe Staff

**BODY:**

A federal judge yesterday accused the US attorney's office in Massachusetts of spending too much time on drug and gun cases that belong in state court, instead of focusing on federal crimes such as public corruption and white-collar offenses that he said would have a greater impact on society.

US District Judge Mark L. Wolf, in an unusually frank discussion with reporters, said his fundamental problem is with the type of cases being brought by federal prosecutors under US Attorney Michael J. Sullivan "and the fact that they are being brought, in my view, at the expense of important federal cases that it would take a lot of hard work to develop."

Wolf, who made his remarks during a monthly session sponsored by Chief US District Judge William G. Young and in a follow-up interview, said US District Court in Boston is flooded with cases that have been developed by state and local police but are brought in federal court, where defendants face longer prison terms if convicted.

"When federal prosecutors are preoccupied with presenting cases that have been investigated by state and local agencies, there's a real opportunity cost, and it means they're not doing the longer term, grand jury-type investigations which are likely to get the bigger and morally more culpable people," Wolf said.

Although Wolf just finished presiding over the carjacking and murder trial of Gary Lee Sampson, who became the first person in Massachusetts sentenced to die under the federal death penalty, he repeatedly stressed that he wasn't talking about the Sampson case and that his criticism wasn't related to that case.

Stung by Wolf's criticism, Sullivan said that the judge is "simply wrong" and should focus on his own job, instead of worrying about Sullivan's.

"He obviously believes that he could do a much better job managing the office," Sullivan said. "But the fact of the matter is that's not his job, it's mine.

"I would disagree with his characterization of the office," the US attorney said. "He just doesn't have accurate information."

It was not the first time that Wolf and Sullivan have sparred over how the US attorney's office is run.

In November 2002, Wolf ordered Sullivan to appear in his courtroom to respond to allegations that prosecutors had either failed to turn over evidence to defense lawyers in criminal cases or had belatedly done so.

Wolf is the only federal judge in Boston to order the US attorney to appear before him. He has done so three times, with Sullivan and two of his predecessors.

The Boston Globe, February 6, 2004

In the 2002 case, Sullivan was miffed because he was at the dentist when he learned that Wolf had ordered his presence in his courtroom an hour later. Wolf threatened to hold Sullivan in contempt when he didn't show up. He did appear the following week.

Yesterday, Wolf said his comments were not directed solely at Sullivan, who was appointed US attorney by Attorney General John D. Ashcroft in the fall of 2001. Wolf acknowledged that federal prosecutors first started bringing state drug and gun cases into federal courts in the late 1980s, as part of a national initiative to target urban violence.

But Wolf said the trend has become a problem as it has escalated in recent years, with more cases involving low-level drug dealers.

"Drug crimes are very serious; they destroy the lives of individuals, families, and communities," he said. "I'm not suggesting that these crimes are unimportant. But it's never been the case in this country that people felt that every case that was important should be a federal case, and the federal courts have limited resources."

Wolf, a deputy US attorney and chief of the public corruption unit under US Attorney William F. Weld from 1981 to 1985, said he decided to go public with his concerns because he has a reverence for the US Department of Justice and because he believes it should do better.

He worked in Washington for the Justice Department in the 1970s, first as special assistant to the US deputy attorney general and then as special assistant to the US attorney general.

Wolf said he was upset that federal judges have been portrayed as "soft on crime," leading to the Feeney Amendment, which Congress passed last year to require the US Sentencing Commission to keep records of judges who sentence defendants to less time than called for under federal sentencing guidelines.

"The federal judges are not soft on crime, but there are a lot of federal judges who know what a real federal crime is," said Wolf. "We deal with the cases that are brought to us."

In January, Wolf said he sentenced a Cape Cod woman convicted of heroin charges to two years in prison, three months less than called for under sentencing guidelines, because she suffered from bipolar disorder, was a heroin addict, and had a history of other problems. He said he was disturbed that a Rhode Island man who supplied heroin to the Cape Cod ring was not indicted, even though he had been identified.

At that sentencing, Wolf said: "It's entirely up to the Department of Justice to decide how to devote its limited resources. But it's up to every citizen to make a judgment as to whether those choices are being made in a way that really serves the public interest."

Now, because of the Feeney Amendment and the Justice Department's aggressive strategy in appealing sentences in which the judge departed from federal sentencing guidelines, Wolf said it is possible that a federal prosecutor will spend time appealing a three-month sentencing disparity, instead of chasing the drug ring's supplier.

Sullivan said no decision has been made on whether to appeal the heroin addict's sentence.

Sullivan said the crime-fighting strategy employed by federal prosecutors today is much different from what it was when Wolf worked in the US attorney's office 20 years ago. He said Ashcroft has asked all of the nation's US attorneys to develop strategies to reduce gun violence in their districts, an approach they believe has helped reduce violent crime.

"We can't turn our backs on neighborhoods because a judge believes we shouldn't be prosecuting these cases," Sullivan said. "Congress decides what conduct is a federal crime. We decide which cases we're going to bring federally."

Sullivan also insisted that his office's efforts in targeting drugs and guns have not kept his prosecutors from bringing significant organized crime, white collar, and antiterrorism cases. He noted that the office's health-care fraud unit is nationally acclaimed.

Sullivan said he doesn't criticize the federal judiciary, even though he believes there are things the court could do differently and "much more efficiently."

**GRAPHIC:** PHOTO, JUDGE MARK L. WOLF Unusually frank discussion

**LOAD-DATE:** February 6, 2004

**B**

JAN-12-05  18:55  From:DEPT OF LABOR - SOL PBSD          2026935810          T-019  P.02    Job-540

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

FILED MAY _ 5 .004

| | |
|---|---|
| ELAINE CHAO, SECRETARY OF LABOR,<br>U.S. DEPARTMENT OF LABOR,<br><br>Petitioner,<br><br>- vs. -<br><br>JOHN J. KORESKO, V;<br>REGIONAL EMPLOYERS' ASSURANCE<br>LEAGUES;<br>DELAWARE VALLEY LEAGUE;<br>PENN-MONT BENEFIT SERVICES, INC.;<br>and KORESKO & ASSOCIATES.<br><br>Respondents. | Case No.: .04:MC:00074 (MAM) |

### AFFIDAVIT OF JOHN J. KORESKO, V, ESQUIRE

#### IN SUPPORT OF
LAWYER RESPONDENTS'[1] AND ADMINISTRATIVE RESPONDENTS'[2] RESPONSE TO
THE DEPARTMENT OF LABOR'S PETITION TO ENFORCE ADMINISTRATIVE
SUBPOENA IN AN INVESTIGATION/ADVERSARY PROCEEDING TO JOHN J.
KORESKO, V, ESQUIRE; REGIONAL EMPLOYERS' ASSURANCE LEAGUES;
DELAWARE VALLEY LEAGUE; PENN-MONT BENEFIT SERVICES, INC; and THE
LAW FIRM OF KORESKO & ASSOCIATES. P.C.

COMMONWEALTH OF PENNSYLVANIA      :
                                  : SS
COUNTY OF MONTGOMERY              :

I, JOHN J. KORESKO, V, ESQUIRE, being duly sworn, depose and state the following:

1. I am an attorney at law (since 1984) and certified public accountant (since 1981),
licensed to practice both professions in Pennsylvania and Florida.

---

[1] JOHN J. KORESKO, V. ("ATTORNEY KORESKO"); KORESKO & ASSOCIATES, P.C. ("KAPC")
(collectively "LAWYER RESPONDENTS")
[2] PENN-MONT BENEFIT SERVICES, INC. ("PENN-MONT"); REGIONAL EMPLOYERS' ASSURANCE
LEAGUES; DELAWARE VALLEY LEAGUE ("DVL") (collectively "ADMINISTRATIVE
RESPONDENTS")

2. I enjoy a reputation for honesty, integrity, and competency in my profession throughout the United States in taxation and ERISA matters, and have regularly acted to assist Members of Congress and the Department of Labor on issues involving welfare benefit plans. See attached Ex. A, Letter from Congressman Jim Gerlach (PA – 6th); Ex. B, Professional Biography.

3. I wrote the plan and trust documents for the Delaware Valley Leagues ("DVL") VEBA Trust ("DVL VEBA") and the Regional Employer Assurance Leagues ("REA") Voluntary Employees Beneficiary Association ("REAL VEBA").

4. Both DVL and REAL are unincorporated, loose associations of those employers who with to provide benefits; however neither the employers who joined nor their employees control DVL and REAL.

5. My brother and I are the only persons who have signed documents or taken actions on behalf of DVL and REAL, and we report to no superiors in that regard.

6. Neither DVL nor REAL is an employee benefit plan.

7. I applied for and received determination letters from the IRS that the forms of plan used by DVL VEBA qualified as section 501(c)(9) VEBAs.

8. REAL VEBA was constructed in all relevant respects identically to DVL VEBA, but needed to be amended in 1995 to reflect the requirements of its successor trustee.

9. In the plan documents of DVL VEBA and REAL VEBA, my law firm was given power of attorney by each participant to represent them with respect to tax and other matters concerning DVL and REAL VEBA.

10. My law firm also has power of attorney from the present trustee of REAL VEBA.

11. I am on the Plan Committee of each employee benefit structure under DVL VEBA and REAL VEBA, and have power to act for the Committee.

12. The Plan Committee has no authority but to review and authorize the initial purchase of insurance contracts while a plan administrator is in office.

13. I am the sole shareholder of Koresko & Associates, PC (KAPC) the entity through which I practice law.

14. PennMont Benefit Services, Inc. (PM) is a corporate affiliate of KAPC that was set up so that my brother could have an equity participation, since he is not a lawyer.

15. PM has no employees and no physical assets; and PM functions like a division of KAPC on the premises of KAPC.

16. All persons who perform administrative functions for REAL VEBA are employees of KAPC, use assets of KAPC, and are instructed as to the mandates of attorney-client privilege.

17. All files of DVL VEBA and REAL VEBA are owned by and in the possession of the law firm KAPC.

18. REAL VEBA and DVL VEBA were constructed as Internal Revenue Code § 419A(f)(6) arrangements.

19. I constructed these plans knowing that IRS had an adverse opinion of them, as demonstrated in the Tax Court cases of *Schneider v. Com'r* (1992) and *Moser v. Com'r* (1988) and *Wellons v. Com'r* (1992).

20. The adverse litigation position of IRS and its intention to litigate against § 419A(f)(6) plans was publicized in the Internal Revenue Bulletin, in Notice 95-34, issued June 5, 1995.

21. Each client who adopted DVL and REAL VEBA was made aware of IRS' position from the materials we disseminated and my book, "The VEBA -- Understanding Multiple Employer Voluntary Employees Beneficiary Associations."

22. In fact, IRS audited the deductions of two clients, including Sidney Charles Markets ("SCM").

23. To date, as a result of our skilled representation for over six years, SCM has not been forced to pay an additional tax as a result of its deductions; in fact, I persuaded IRS Appeals Officer Michael Kopytko to recommend no change in tax to his superiors.

24. It is my belief, as a result of my direct knowledge of the circumstances surrounding each implementation of REAL VEBA and DVL VEBA, that ALL DOCUMENTS prepared in connection with REAL VEBA and DVL VEBA were prepared under threat of imminent litigation.

25. DVL and DVL VEBA no longer function, as all eligible employers joined REAL VEBA; and the only one who did not, SCM, was involuntarily terminated for reasons described in various court documents involving litigation with them.

26. In 1998 (I believe), IRS attempted to obtain client data from my firm and served me with administrative subpoenas regarding DVL VEBA and REAL VEBA.

27. I successfully resisted the administrative subpoenas on the basis of attorney-client privilege and work product doctrine; and to date, I have not given IRS any confidential data regarding participants and employers in DVL VEBA and REAL VEBA.

28. I have consistently treated KAPC, PM, REAL, REAL VEBA, DVL, and DVL VEBA records as privileged.

29. I asserted privilege in litigation started by SCM; and in the District of New Jersey I refused to testify regarding privileged information despite threats made against me by U.S. Magistrate Judge Hedges.

30. My claims of privilege regarding the information and files of DVL, DVL VEBA, REAL, REAL VEBA, PM, and KAPC have not been overruled by any court of competent jurisdiction.

31. There are over 500 files involved with REAL VEBA and the DVL VEBA, and the files contain thousands of documents.

32. On or about mid-February, 2004, I received subpoenas from the DOL. Even though I believed the subpoenas to be misdirected and inappropriate, I responded and provided information in a manner which comports with my obligations as counsel for the Trust. See Ex. "C" and "D", correspondence to DOL Investigator Bindu George.

33. It would cost thousands of dollars in time and materials to reproduce the documents requested by DOL in their subpoenas; and it would work a substantial hardship on our small firm because of the expense and diversion of personnel that would be required from normal service of our clients.

34. I am aware of no complaint to the DOL about the operations of DVL VEBA or REAL VEBA other than that lodged by SCM after litigation resulted in rulings adverse to it.

35. Neither I, my firm, nor my employees or associates have committed any violation of any law or breached our fiduciary duties; and especially, we have not violated ERISA.

36. I believe the DOL's actions in this matter are purely vindictive and not in good faith, and not on any reasonable basis, especially given the negative and unresponsive comments delivered to me from Investigator Bindu George and Attorney Natalie Appetta of the Department of Labor.

FURTHER AFFIANT SAYETH NAUGHT.

JOHN J. KORESKO, V, ESQUIRE

SUBSCRIBED AND SWORN
BEFORE ME THIS _4/2_
DAY OF MAY, 2004.

_Michelle F Sullivan_
NOTARY PUBLIC
COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MICHELLE FOGEL SULLIVAN, Notary Public
Norristown Boro., Montgomery County
My Commission Expires September 30, 2007
MY COMMISSION EXPIRES:
_9 - 30 - 07_

JAN-12-05  10:56  From:DEPT OF LABOR – SOL PBSD          2026935910          T-018  P.06/13  Job=540

**JIM GERLACH**
6TH DISTRICT, PENNSYLVANIA

COMMITTEES:
TRANSPORTATION AND INFRASTRUCTURE
SMALL BUSINESS

1641 LONGWORTH HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-
(202) 225-6315
FAX (202) 225-8440

## Congress of the United States
## House of Representatives
### Washington, DC 20515-3806

February 25, 2004

Ms. Mabel Capolongo
Regional Director-Philadelphia Region
U.S. Department of Labor
Employee Benefits Security Administration
The Curtis Center-Suite 870 West
170 S. Independence Mall West
Philadelphia, PA  19106

Dear Ms. Capolongo:

I am writing in reference to John J. Koresko, Esquire, a constituent who has provided my office with tax advice on various pieces of legislation and is head of the law firm Koresko & Associates, PC representing PennMont Benefit Services, Inc. and Regional Employers Assurance Leagues VEBA trusts (REAL VEBA).

Mr. Koresko's expertise in tax and ERISA matters are well-known and respected and he has participated in numerous Congressional proceedings and activities to further legislation that promotes employer use of welfare benefit plans. Included among the legislators who have benefited from Mr. Koresko's expertise have been U.S. Senator Rick Santorum, Congressman Phil English and the staffs of the House Ways and Means Committee and the Senate Finance Committee.

I also understand that Mr. Koresko has been of assistance to your office, the Boston office of DOL/EBSA and Assistant U.S. Attorney Michael Pineault in the Boston office of the United States Attorney.

In short, Mr. Koresko has been of great assistance to me and other Members of Congress on important tax, ERISA and welfare benefit plan issues and I look forward to his continuing advice and counsel as these issues continue to be reviewed and debated.

I hope you have the opportunity to take benefit of Mr. Koresko's expertise and advice on matters that come before your office. His services could most useful.

Sincerely,

Jim Gerlach
Member of Congress

JG:rnw
Cc: Hon. Elaine Chao, Secretary, U.S. Department of Labor
Howard Radzely, Solicitor, U.S. Department of Labor
Tom Donnelly, Jefferson Government Relations
John J. Koresko, Esquire

— DISTRICT OFFICES —

**BERKS COUNTY**
501 NORTH PARK ROAD
WYOMISSING, PA 19610
(610) 376-7630
FAX (610) 376-7603

**CHESTER COUNTY**
1330 POTTSTOWN PIKE, SUITE 4
GLENMOORE PA 19343
(610) 415-6016
FAX (610) 486-8269

EX. A

**MONTGOMERY COUNTY**
180 MAIN STREET, SUITE 4
TRAPPE, PA 19426
(610) 409-2781
FAX (610) 409-7638

**Timkovich, Elizabeth T.**

**From:**    ECFnotice@mad.uscourts.gov
**Sent:**    Friday, July 01, 2005 8:29 AM
**To:**    CourtCopy@mad.uscourts.gov
**Subject:** Activity in Case 1:04-cr-10029-GAO USA v. Carpenter "Order on Motion to Inspect"

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

### United States District Court

### District of Massachusetts

Notice of Electronic Filing

The following transaction was received from Lyness, Paul entered on 7/1/2005 at 8:29 AM EDT and filed on 6/30/2005
**Case Name:**    USA v. Carpenter
**Case Number:**    1:04-cr-10029
**Filer:**
**Document Number:**

**Docket Text:**
Judge George A. O'Toole Jr.: Electronic ORDER entered Final PreTrial Conference held. after hearing on the several pending motion and for the reasons stated on the record, the court makes the following orders: granting [78] Motion to Inspect as to Daniel E. Carpenter (1); denying [79] Motion to Dismiss for Speedy Trial as to Daniel E. Carpenter (1); reserving ruling on [80] Motion for Discovery as to Daniel E. Carpenter. The government is to submit the disputed documents to the Court for in camera review (1); denying [82] Motion in Limine as to Daniel E. Carpenter the Court will not categorically exclude the evidence but will consider objections to individual pieces of evidence during the trial (1); denying [83] Motion in Limine as to Daniel E. Carpenter (1); denying [84] Motion in Limine as to Daniel E. Carpenter (1); granting [85] Motion in Limine as to Daniel E. Carpenter (1); reserving ruling on [86] Motion in Limine as to Daniel E. Carpenter (1); reserving ruling on [8! 7] Motion in Limine as to Daniel E. Carpenter (1); denying [88] Motion in Limine as to Daniel E. Carpenter. The Court will not categorically exclude the evidence but will consider objections to individual pieces of evidence during the trial (1); reserving ruling on [89] Motion in Limine as to Daniel E. Carpenter (1); reserving ruling on [90] Motion in Limine as to Daniel E. Carpenter (1); denying [91] Motion in Limine as to Daniel E. Carpenter. The Court will not categorically exclude the evidence but will consider objections to individual pieces of evidence during the trial (1); denying [92] Motion in Limine as to Daniel E. Carpenter (1); reserving ruling on [93] Motion in Limine as to Daniel E. Carpenter (1); reserving ruling on [94] Motion to Strike as to Daniel E. Carpenter (1); denying [101] Motion to Continue as to Daniel E. Carpenter (1)In addition, the defendant's oral motion to stay the action was denied. the parties are to submit to the Court by 7/8/05 a proposed ! description of the case to be read to the jury. (Lyness, Paul)

The following document(s) are associated with this transaction:

**1:04-cr-10029-1 Notice will be electronically mailed to:**

Evan Georgopoulos    georgopoulose@gtlaw.com, kaikaia@gtlaw.com

Jonathan F. Mitchell    jonathan.mitchell@usdoj.gov

Michael J. Pineault    michael.pineault@usdoj.gov

Jack E. Robinson    robinsonesq@aol.com

**1:04-cr-10029-1 Notice will not be electronically mailed to:**

Alan M. Dershowitz
Harvard Law
1575 Massachusetts Avenue
Hauser 520
Cambridge, MA 02138

Edward A. McDonald
Dechert LLP
30 Rockefeller Plaza
New York, NY 10112-2200

Richard S. Order
Axinn, Velterop & Harkrider
90 Statehouse Square
Hartford, CT 06103-3702

7/11/2005